# MEMORANDUM

**TO:**        All members of filter team

**FROM:**      Prosecution AUSA Bryan Fields
                  Filter AUSA Jane Bobet

**CC:**          All members of prosecution team

**DATE:**      **March 2, 2022**

**RE:**         Filter Team Instructions for *United States v. Michael Aaron Tew, et al.*, (D. Colo. Case No. 20-cr-305-DDD

---

## I.    <u>BACKGROUND</u>

### A.       Summary of Conduct Relating to Charges

The following summary is not intended to be comprehensive but to provide sufficient background to briefly explain the facts related to the need for a filter team. Detailed information is contained in an affidavit supporting a July 2020 criminal complaint charging Michael Tew with conspiracy to commit money laundering. **[Attachment 1]**.

This case concerns the prosecution of three individuals, Michael Tew, Kimberley Tew (nee Vertanen), and Jonathan K. Yioulos for, *inter alia*, a scheme to defraud National Air Cargo (NAC), a company that does business, in part, in New York and Florida. The case number is 20-cr-305-DDD and is currently pending in the United States District Court for the District of Colorado. In general terms, the

1

three defendants are alleged to have conspired to execute a scheme to defraud by wire. This scheme was accomplished through the submission and payment of fraudulent invoices to NAC for services not rendered to NAC. Mr. Tew is the former Chief Financial Officer of NAC, Ms. Tew previously provided some contract services to NAC, and until July 2020, Mr. Yioulos served variously as NAC's Director of Finance and Controller. Michael Tew and Kimberley Tew are married.

**B.    Post-Arrest Acquisition of Evidence and Representations by Prior Defense Counsel**

For ease of reference, additional relevant facts related to the history of the defendants' representation by legal counsel and the acquisition of evidence are outlined in bullet points below.

- **July 8, 2020**. Mr. and Ms. Tew are arrested on a Criminal Complaint.

- **July 9, 2020**. Mr. Tew's first lawyer, Michael Sheehan, reaches out to schedule an interview pursuant to a proffer agreement.

- **July 15, 2020**. Mr. Tew voluntarily submits to an interview in the presence of his lawyer, Michael Sheehan, pursuant to the terms of a proffer agreement.

- **July 24, 2020**. Eric M. Creizman and Melissa Madrigal contact the government to assert that they are now representing Mr. Tew.

- **July 28, 2020**. Mr. Tew submits to a second proffer interview in the presence of his new attorneys. During that interview, he consents to a review of text communications between him and Ms. Tew relating to the crimes under investigation.

- **July 29, 2020.** Mr. Tew consents to an extraction of his phone.

2

- **August 3, 2020**.  Eric Creizman alerts the government that he intends to withdraw his representation the next day.

- **August 20, 2020.**  Edward Harris, Mr. Tew's third attorney, enters an appearance.

- **September 22, 2020**.  Agents apply for and receive a warrant to obtain information from Apple associated with the Apple ID kley@me.com, belonging to Ms. Tew.

- **October 2, 2020**.  Edward Harris communicates his client's consent to review (1) text messages between Mr. Tew and alleged co-conspirator Jonathan Yioulos, (2) text messages between Mr. Tew and another suspected co-conspirator, Larry Ward, and (3) all pictures and recordings on the phone up to, but not including, the day of arrest (July 8, 2020).  Harris also communicates his agreement that he will review the materials dated after the arrest and identify the items that are not privileged.  **[Attachment 2]** The resulting filtered phone extraction is **Item 5**.

- **October 21, 2020**.  Edward Harris moves to withdraw as Mr. Tew's attorney.

- **October 22, 2020**.  Thomas Richard Ward enters his appearance as Mr. Tew's attorney.

- **October 23, 2020**.  Ms. Tew submits to an interview in the presence of her attorney, Jamie Hubbard, pursuant to the terms of a proffer agreement.

- **November 24, 2020**.  AUSA Hetal Doshi requests that the FBI Cybercrime lab process the return from the kley@me.com search warrant.  The return includes both encrypted and unencrypted data.

- **December 2, 2020**.  AUSA Hetal Doshi requests that the cybercrime lab filter out undated communications and communications that were undated or dated on or after July 8, 2020.

- **December 14, 2020**.  FBI Digital Operations Specialist Nicholas Hanggi reports that he has completed a filter of the unencrypted kley@me.com return.  This filtered return, which includes only communications dated July 7, 2020 or earlier, is provided to the prosecution team.  **[Item 1]**

- **December 23, 2020**.  Agents apply for and receive a warrant to obtain information from google associated with three accounts: chrisrncn@gmail.com; meyersconsultinggroupinc@gmail.com; and political.media.wdc@gmail.com **[Items 2-4, respectively**)

- **February 3, 2021**.  The Grand Jury returns the indictment in this case.

- **February 25, 2021**. Tor Ekeland enters his appearance for both Mr. and Ms. Tew.

- **March 21, 2021**.  FBI Senior Digital Investigative Analyst Kristen Scott reports that she has completed a filter of the encrypted portion of the kley@me.com return.  This filtered return, which includes only communications dated July 7, 2020 or earlier, is provided to the prosecution team.  **[Item 1]**

- **December 27, 2021**. Tor Ekeland moves to withdraw as counsel for Mr. and Ms. Tew.

- **February 25, 2022**.  Peter Bornstein enters his appearance for both Mr. and Ms. Tew.

## C.    Summary of Electronic Repositories of Evidence

For additional ease of reference, the chart below identifies the items obtained

in the investigation, referenced above, that will be the subject of this filter review:

| Item | Description | Case Number |
|------|-------------|-------------|
| 1 | Unencrypted and Encrypted Portions of Return for Search Warrant executed on Apple for information associated with Apple ID kley@me.com filtered to exclude undated items and items dated on or after July 8, 2020 ("Item 1") | 20-sw-01115 **[Attachment 3]** |
| 2 | Return of Search Warrant executed on Google for information associated with the account chrisrncn@gmail.com ("Item 2") | 20-sw-01522 **[Attachment 4]** |
| 3 | Return of Search Warrant executed on Google for information associated with the account meyersconsultinggroupinc@gmail.com ("Item 3") | 20-sw-01532 **[Attachment 5]** |

| Item | Description | Case Number |
|------|-------------|-------------|
| 4 | Return of Search Warrant executed on Google for information associated with the account political.media.wdc@gmail.com ("Item 4") | 20-sw-01533 **[Attachment 6]** |
| 5 | July 29, 2020 consent extraction of two iPhones for phone numbers ending in 1312 and 7473 with serial numbers F17CN3YWPMFJ and C39Y25QBKPFR used by Michael Tew[1] and filtered pursuant to prior agreements with defense counsel ("Item 5") | N/A |

### D.   Correspondence with Defense Counsel from Tor Ekeland Law PLLC

Michael Tew and Kimberley Tew were jointly represented by the same counsel, Tor Ekeland, Michael Hassard, and Xuan Zhou between February 25, 2021 and February 25, 2022.

The prosecution team at the time had been in contact with counsel for Mr. Tew and Mrs. Tew about the precautions taken to date regarding filtering out materials subject to the attorney-client and work product privilege for Item 1.  That background is laid out in multiple letters listed below and attached here for reference:

---

[1] Defendant Michael Tew's prior attorneys previously provided search terms — the names of attorneys previously representing Tew — as part of the consent search process and those terms have already been applied.  Nevertheless, out of an abundance of caution and to maintain consistency in the filter process, this consent phone extraction is also being submitted for additional filter review consistent with the terms of this memorandum.   This indiscriminate phone extraction is broader than the much more targeted voluntary disclosure of specific text messages made by Michael Tew on July 28, 2020 and is submitted for filter review on that basis, in addition to items 1-4.

1. July 7, 2021 Letter from Government to Counsel for Mr. Tew and Mrs. Tew regarding further filtering of search warrant return for kley@me.com [**Attachment 7**];

2. July 9, 2021 Response from Counsel for Mr. Tew and Mrs. Tew to Government [**Attachment 8**];

3. July 23, 2021 Letter from Counsel for Mr. Tew and Mrs. Tew to Government regarding the same ([**Attachment 9**];

4. July 29, 2021 Response from Government to Counsel for Mr. and Mrs. Tew [**Attachment 10**];

5. September 10, 2021 Response from Counsel for Mr. and Mrs. Tew to Government [**Attachment 11**];

6. September 16, 2021 Letter from Counsel for Mr. and Mrs. Tew to Government [**Attachment 12**];

7. September 17, 2021 Email Response from Government to Counsel for Mr. and Mrs. Tew [**Attachment 13**].

### E.    Prosecution Team Members

The AUSAs on the prosecution team have included Hetal Doshi, Matthew Kirsch, Andrea Surratt and Bryan Fields.  None of these attorneys have been exposed to information identified by defense counsel as potentially protected by an attorney-client privilege.  The FBI case agent is Special Agent Sarah Anderson. There is also no reason to believe she has been exposed to information identified by defense counsel as potentially subject to an attorney-client privilege.

The IRS-CI case agent is Special Agent Lisa Palmer.  SA Palmer took the lead in the review of Item 1.  After Item 1 was released to the prosecution team in

December following its initial filtering to exclude undated items and items dated July 8, 2020 or later, she conducted a very focused review to determine whether specific communications between the defendants or between the defendants and suspected co-conspirators could be seized pursuant to the warrant. Those identified communications did not involve attorneys and were clearly not protected by an attorney client privilege. As outlined in the letter dated July 7, 2021, Special Agent Palmer resumed her review of Item 1 in July and, on July 5, identified communications that appeared to include one or more attorneys. She immediately notified the assigned AUSAs and stopped her review. **[Attachment 7]**. There is no reason to believe that she actually reviewed any content of such communications. However, out of an abundance of caution, she is not currently an active member of the prosecution team, pending a review by the assigned Filter Attorney.

## II.    SCOPE OF REQUEST FOR FILTER REVIEW

### A. Rationale for Filter Review of Items 1-5

Current counsel for Mr. and Ms. Tew has asserted that Items 1-4 contain materials that may be subject to the attorney-client privilege. However, current counsel has refused to provide a list of prior defense attorneys, other search terms, a specific log of privilege claims, or to clearly identify the scope of any attorney-client relationship. Based on the correspondence to date and SA Palmer's notification that even after the initial filtering, Item 1 still contains possibly privileged

material, the prosecution team advises that Item 1 is an appropriate item for additional filter review, as outlined in this memorandum.

Defense counsel's September 16, 2021 letter asked the government to halt its review of "all" discovery returned under search warrants in this matter.  The letter asserts that "all the discovery seized under the search warrants is irreparably tainted."  **[Attachment 12]**.  Without conceding any requirement that it do so, the government voluntarily agreed to stop review until a meeting with defense counsel on October 12, 2021. The previous AUSAs assigned to this matter — Hetal Doshi and Andrea Surratt —met with counsel for Mr. Tew and Ms. Tew on October 12, 2021.  There was no resolution to date on the issue of further filtering.

There is no reason to believe that items 2-4 contain privileged material. Those items were the subject of 2703(d) orders providing non-substantive information about the correspondents in those accounts.  No attorneys were identified.  Current counsel for Mr. and Ms. Tew has not provided a list of attorneys or otherwise specifically elaborated on the claim that these items contain privileged materials.  Furthermore, without review, it is unknown whether either defendant actually used those accounts or otherwise has standing to challenge the warrants justifying their seizure or manner of review.

Item number 5 has already been filtered pursuant to a negotiated agreement with Michael Tew's prior lawyer, which involved filtering via search terms and permission to view specific categories of items. **[Attachment 2]**.

In sum, only item 1 is known to contain potentially protected materials. While items 2-4 are not known to have any potentially protected materials, the prosecution team acknowledges the defendant's assertion that they do and (1) assumes, without conceding, that one of the defendants has standing to challenge any search related to those accounts and (2) assumes, without conceding, that the defendants are the holders of any privilege protecting information in those account. Item 5 has already been filtered pursuant to conversations with prior defense counsel. While Item 1 is thus the only item clearly warranting filter review, the prosecution team nevertheless also submits items 2-5 for filter review out of an abundance of caution.

### B.    Items Specifically Excluded From Filter Review

Defense counsel's letter of September 16, 2021, **Attachment 12**, requests that the government halt a review of "all" materials obtained pursuant to search warrants on the basis of objections to filter reviews. But this request is overbroad. Without conceding that it must, the government has nevertheless voluntarily stopped its review of the return from search warrant executed on AT&T for telephone numbers associated with Michael Tew, docketed at 20-sw-0733, because

the initial review suggested that AT&T did not provide the correct records.[2] That item is, therefore, excluded from this filter review. A search warrant executed at the defendants' home on July 31, 2020 and docketed at 20-sw-00896 yielded only physical evidence — two bank bags — and therefore requires no filter review.

Defense counsel's letter of September 16, 2021 does not reference other repositories of evidence obtained through other methods.  Nevertheless, out of an abundance of caution, the prosecution evaluated whether to submit those repositories for further review.  Items in this category include photographs of specific text messages on Michael Tew's telephone taken in the presence of his counsel during a proffer session on July 28, 2020, and electronic devices obtained from co-defendant Jonathan Yioulos.  The prosecution team has concluded that neither of these items should be submitted to filter review.  Each of them comprises information obtained via clear consent obtained with approval from an independent defense attorney.  They could not possibly contain privileged material.

## III.   PURPOSE OF FILTER REVIEW OF ITEMS 1-5

_____

[2] As documented by FBI Special Agent Sarah Anderson in an FD-302 entered into the file on August 17, 2020 (SW_0039675), the FBI received a return from AT&T on July 27, 2020. However, when SA Anderson began reviewing the provided materials she became concerned that the records provided related to other telephone numbers or that they were otherwise not responsive to the warrant. She stopped her review and contacted AT&T.  An FD-302 dated September 11, 2020, (INV_004958), notes that AT&T has not provided any responsive content.

10

The purpose of these instructions is to protect any applicable attorney-client and work-product privileges held by defendants Michael Tew and Kimberley Tew. These instructions are further designed to prevent the disclosure of privileged and/or otherwise constitutionally protected attorney-client information to case agents, investigators, and prosecutors assigned to the investigation, and to ensure that the government effectively documents its efforts to do so.

## A. Glossary of Terms Used In These Instructions

As used in these instructions, the terms below are defined as follows:

1. **Prosecution team** - All AUSAs, SAUSAs, Agents/Officers and Staff assigned to work on any aspect of the case other than the filter team.

2. **Filter team** - a team of AUSA(s) and/or investigator(s), who are separated from the prosecution team in order to protect the defendant's constitutional and statutory rights by ensuring that the prosecution team is not exposed to privileged information.

3. **Privileged information** – information protected by the attorney-client privilege and/or the work product rule.

4. **Presumptively protected materials** – any communications between (1) a lawyer or staff member or agent of a lawyer and (2) a defendant/target/subject or another lawyer or staff member or agent of a lawyer, or materials that otherwise appear to contain the work product of a lawyer.

5. **Potentially protected materials** – any materials identified in a Filter Agent's initial review as possibly containing communications as defined in "presumptively protected materials" or materials that appear to have been generated by a lawyer or otherwise contain the work product of a lawyer.

11

6.    **Non-protected materials** – any materials that do not involve communications with a lawyer and do not appear to have been generated by a lawyer.

**B.     General Overview of Safeguards to Protect Potentially Protected Materials**

To prevent such disclosure and the potential taint of investigators and prosecutors assigned to the case, the Federal Bureau of Investigation and/or IRS-Criminal Investigation and the United States Department of Justice have designated separate agents and Assistant United States Attorney(s) (collectively, the "filter team") to review items 1-5 to determine whether they contain any potentially protected materials.  The filter team serves a privilege screening function only; they will not review information for discoverability under criminal discovery rules and case law.  Filter team members will not be involved with the primary investigation, in any way, and may not have any further role in the investigation or prosecution of this case, unless some further privilege issue arises requiring additional review.  Members of the filter team are prohibited from discussing with any member of the prosecution team, including investigators and prosecutors assigned to the case, or any other person not assigned to the filter team, any protected information they learn as a result of their assignment to this filter team.

Filter team members must be familiar with the indictment in this matter, the warrants, the applications for the warrants, and all affidavits or attachments thereto.  All of these documents have been separately provided to you.

13

**[Attachments 3-6]**.  Members of the filter team and the prosecution team must also review and understand these instructions and the list of the attorneys and/or law firms that are known or believed to represent or have represented Mr. Tew or Ms. Tew.  If you have any questions about these instructions at any time during this process, you should ask the filter AUSA[3] before you proceed further.

This memo and the instructions below relate to the process and procedure to identify and remove protected materials contained in the items seized.  This memo and the instructions below are in addition to the procedures outlined in the search warrants.  The filter team should be familiar with and, where applicable, follow both the instructions contained in this memo and the procedure in the search warrant.

IV.    **INSTRUCTIONS TO THE FILTER TEAM**

   A. **Filter Team Members and Roles**

1.    The FBI and IRS have, respectively, designated Special Agents Kristen Varel and Marc Lane as Filter Agents who will analyze the items and information seized in the execution of the search warrants related to this case, and who will then remove all presumptively protected information and identify potentially protected and non-protected information.

---

[3] Although this policy often uses the singular terms "AUSA" and "investigator" or "Special Agent" in referring to members of filter teams, there may be more than one AUSA and agent on any filter team.

14

2.      The United States Department of Justice has designated Assistant United States Attorney Jane Bobet as the Filter AUSA who will review materials identified by the Filter Agent as containing potentially protected or non-protected materials.  The Filter AUSA will further ensure that all presumptively protected items are removed, not reviewed by the filter team, except as necessary to make the determination the item is presumptively protected, and are returned to the privilege-holder or counsel for the privilege-holder as soon as reasonably practical.

3.      Support staff designated by the respective agencies may also be assigned to assist the Filter Agents and Filter AUSA in administrative tasks as necessary to accomplish their duties.  Currently, Legal Administrative Specialist Joshua Graber is maintaining Items 1-5 in a secure database accessible only to Mr. Graber, the Filter AUSA, and members of the U.S. Attorney's Office IT/litigation support staff.

4.      Filter team members may not reveal or discuss the contents of any document, file or item determined to contain presumptively protected or potentially protected material to any other person except the Filter Team Coordinator or employees of the Professional Responsibility Advisory Office at DOJ, or counsel for the appropriate defendant, unless otherwise ordered by the court.  Attached to these instructions is a list of investigative agents and prosecutors to prevent any inadvertent disclosure.

15

**B.      Review by the Filter Team**

5.      Investigative agents have executed the search warrants, or obtained information via consent, and have taken possession of the digital information outlined in the warrants or subject to the terms of the consent.  Before the investigative agents continue their review[4] of the items identified in the chart above, they will be reviewed by the Filter Agents, who will remove all presumptively protected information and identify potentially protected and non-protected information.

6.      In all instances, in making the interim determination as to whether a document or item contains protected material, the Filter Agent and Filter AUSA should err on the side of caution by treating any questionable item as potentially protected material and complying with these instructions.

**C.      Filter Agent Review Using Search Terms**

7.      The Filter Agents will utilize search terms to conduct an initial review of the information in items 1-5 above to determine whether they contain

---

[4] As noted in the July 7, 2021 Letter from Government**, Attachment 7**, the government has already prophylactically filtered out materials in Item 1 that were either undated or dated on or after July 8, 2020 (the date of Mr. and Ms. Tews's arrest) and began a review of the remaining information. However, that review was immediately stopped when there was a reasonable possibility that the item might still contain potentially privileged information.

16

presumptively protected material, potentially protected material, or non-protected material.

       a.    After a forensic image or copy of any of the items is created and placed into a reviewing platform, in order to identify protected communications, the Filter Agent may then access the items and conduct a keyword search of any electronic media, specifically looking for information associated with attorneys or legal staff known to represent Mr. Tew or Ms. Tew.

       b. Here, because Items 1 and 5 — the iCloud account associated with kley@me.com and the consent extraction of Mr. Tew's phone — have already been filtered, the process discussed below will be a secondary process consisting of applying additional filters to the already filtered items. Access to the materials should be restricted to the Filter Agents, Filter AUSA, and assigned Filter AUSA support staff.  The items should be inaccessible to the investigative team until reviewed by the Filter Agent and marked as non-protected, as discussed below.  Any more specific protocols used in any particular case must by recorded by the Filter AUSA.

       8.    As the Filter Agents review the materials on the media using keyword searches, the Filter Agents will sort the material as follows: presumptively protected, potentially protected or clearly non-protected.

a. If an item is presumptively protected the identifying Filter Agent should not review the item, except as necessary to make the initial determination, and should identify the item as presumptively protected. Presumptively protected materials must be electronically flagged so that they are hidden from and inaccessible to investigative agents and members of the prosecution team. The identifying Filter Agent will notify the Filter AUSA that the above procedures have been followed and arrange for the Filter AUSA's later review consistent with these instructions, specifically and solely as necessary to confirm that the materials are presumptively protected.

b. If an item appears to contain protected material but the identifying Filter Agent is not certain, the Filter Agent should electronically flag it as potentially protected and notify the Filter AUSA in the manner described in paragraph 9(c) below.

c. If an item does not contain any protected material, the identifying Filter Agent should identify the item as non-protected. Those items must also be forwarded to the Filter AUSA for review and separately designated as containing non-protected material.

d. The Filter Agent must maintain a log of all potentially protected material identified, indicating the material by type, date, sender and

recipient (if applicable), and the location of and digital device on which the item was located, (i.e. cellular phone, email account, etc.).

### D.  Review by the Filter AUSA

9.    The Filter AUSA will receive all documents, tangible items, and digital or electronic data forwarded by the identifying Filter Agent.

a.    If information has been identified as presumptively protected by the Filter Agent, the Filter AUSA will not review those items, except as necessary to confirm they are presumptively protected.  After taking any necessary steps to confirm that such items are presumptively protected, the Filter AUSA, working with filter support staff, shall maintain any information found to be protected in a digital medium that is not accessible to anyone outside the Filter Team and return them to the privilege holder or counsel for the privilege holder as soon as reasonably practical.

b.    If any contents of a digital device have been identified as presumptively protected by the identifying Filter Agent, the Filter AUSA will not review those items, except as necessary to confirm that they are presumptively protected and to arrange with reasonable promptness to make the material available for inspection by the privilege holder or counsel for the privilege holder.

c.      If documents, items or information have been identified as potentially protected by the filter agent, the Filter AUSA will review that information further to determine if the material is protected.

d.      If the Filter AUSA determines that a document or item designated as potentially protected is in fact protected and not subject to disclosure, the Filter AUSA will place the document or item in a medium not accessible to anyone outside the Filter Team and return it to the privilege holder or privilege holder's counsel as soon as reasonably practical.

e.      If the Filter AUSA determines that the contents of any digital device designated as potentially protected is in fact protected and not subject to disclosure, he/she should arrange for review of the material by the privilege holder or by counsel for the privilege holder with reasonable promptness in the manner and in the time frame described in paragraph 9 (a) above.

f.      If the Filter AUSA determines that a tangible document or item from a digital device designated as potentially protected is not protected, the Filter AUSA may designate the document or item as not protected. If the Filter AUSA is uncertain the item is protected, the Filter AUSA will confer with counsel for the privilege holder and if no agreement can be reached submit the material under seal to the court for a final determination as to whether the material is protected.

g.      If the Filter AUSA believes that potentially protected material is not protected due to waiver or other exception to the privilege, the Filter AUSA will confer with counsel for the privilege holder and if no agreement can be reached, submit the material under seal to the court for a final determination.  The Filter AUSA will not forward any potentially protected material to investigative agents or prosecutors without either agreement of counsel for the privilege holder or the court's prior approval.

h.      If items or information have been identified as not protected by the identifying Filter Agent, the Filter AUSA will review those items using search terms and other reasonable due diligence to confirm this designation.

i.      The Filter AUSA will maintain a log of all potentially protected documents and items received from the Filter Agent.  The log will identify the material received by type, date, sender and recipient (if applicable), and subject matter.  The Filter AUSA will furnish to the privilege holder a list of potentially protected material submitted to the court for review with reasonable promptness in the manner and in the timeframe described in paragraph 10(a) above.

j.      The Filter AUSA may forward or direct the Filter Agents to forward items or documents to investigating agents and prosecutors only after one of the following conditions is met, consistent with these instructions:  (a) they have been designated by the Filter AUSA in writing as non-protected by the filter review

21

process, (b) after conferral with and the agreement of counsel for the privilege-holder, or (c) pursuant to a court order.

10.    After the Filter Team's review is complete, the Filter Agent will make non-protected items available to investigative agents and prosecutors. A copy of the electronic media preserving the electronic flags and steps taken to render the protected material hidden from and inaccessible to investigative agents and the prosecution team will be preserved consistent with forensic standards. The Filter Agent will prepare a report documenting steps taken during the review process and provide it to the Filter AUSA.  This report will also be provided to the investigative agents and prosecutors assigned to this case.

11.    If, despite the procedures outlined in these instructions, an investigative agent or prosecutor finds in the items provided by the Filter Agents or Filter AUSA any tangible, documentary, or electronic data that appears to contain protected or potentially protected information, they will not examine it further and will immediately notify the Filter Agents, one of whom will take custody of the material in question, notify the Filter AUSA.  The Filter AUSA will then notify the privilege holder of such an occurrence.

### E.      Rule of Caution Regarding Potential Privilege Claims

12.      In reviewing items pursuant to these instructions, the Filter Agents and Filter AUSA should err on the side of caution and treat any questionable items as potentially protected.  In addition:

♦          Unless otherwise advised by the Filter AUSA, the Filter Agents should treat as presumptively protected any letter, text, e-mail, memorandum, or other document containing a communication between any subject/defendant or one of his/her attorneys, staff members or agents, on the one hand; and one of his/her attorneys, staff members or agents, on the other hand.

♦          Filter team members should know and refer to any lists of attorneys and/or law firms known or believed to have represented the identified defendants, attached to these instructions or later provided by an attorney for a defendant.

♦          Filter team members should treat as presumptively protected all materials prepared by attorneys, their staff or an agent of the attorney during the course of or in preparation for litigation in either a criminal investigation into the defendants or any civil litigation in which Mr. Tew or Mrs. Tew was involved.

### F.      The Attorney-Client Privilege

13.      Filter team members should also be familiar with the legal elements of the attorney-client privilege and the attorney work product doctrine.  While these instructions take an expansive view of what constitutes protected material, particular care should be given to material that falls within the attorney-client privilege and work product doctrines, set forth below.  If the Filter Agents have any

23

legal questions about may or may not qualify as presumptively or potentially protected, they should consult with the Filter AUSA.

14.     The attorney-client privilege applies to "confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (quoting *In re Grand Jury Subpoena Duces Tecum Issued on June 9, 1982,* 697 F.2d 277, 278 (10th Cir.1983) (internal quotation marks and citation omitted)).  "A party claiming the attorney-client privilege must prove its applicability, which is narrowly construed." *United States v. Merida*, 828 F.3d 1203, 1209 (10th Cir. 2016) (quoting *Foster v. Hill (In re Foster*), 188 F.3d 1259, 1264 (10th Cir. 1999)).

15.     In the case of corporate counsel, "[a]ny privilege resulting from communications between corporate officers and corporate attorneys concerning matters within the scope of the corporation's affairs and the officer's duties *belongs to the corporation and not to the officer.*" *Id.* at 1210, (quoting *Intervenor v. United States (In re Grand Jury Subpoenas*), 144 F.3d 653, 658 (10th Cir. 1998) (emphasis added)).  If corporate officers want to extend the attorney-client privilege to communications they had with corporate counsel *in their individual capacities,* they must satisfy the following five elements:

> First, they must show they approached counsel for the purpose of seeking legal advice.  Second, they must demonstrate that when they approached counsel they made it clear that they were seeking legal advice in their individual rather than in their representative capacities.  Third, they must demonstrate that the counsel saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise.  Fourth, they must prove that their conversations with counsel were confidential.  And, fifth, they must show that the substance of their conversations with counsel did not concern matters within the company or the general affairs of the company.

*Id.* (citing *Intervenor* at 659 (quoting *In re Bevill, Bresler & Schulman Asset Management Corp.*, 805 F.2d 120, 123 (3d Cir. 1986)).

16.     "[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege."  *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (quoting *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550–51 (10th Cir. 1995)). Instead, the attorney-client privilege is "narrowly construed" such that a privileged "communication between a lawyer and client must relate to legal advice or strategy *sought by the client*" where "the 'client' is the actual recipient of the services." *Merida* at 1209 (quoting *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir.1998) (emphasis added)); *see also In re Grand Jury Proceedings* at 1182 (quoting *Johnston*)).

17.     Attorney-client privilege will be "lost if the client discloses the substance of an otherwise privileged communication to a third party." *United*

25

*States v. Ary*, 518 F.3d 775, 782 (10th Cir. 2008) (citing *In re Qwest Commc'n Int'l.*

*Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (quotation omitted)).

### G.    The Attorney Work Product Doctrine

18.    The work product doctrine, codified in Federal Rule of Civil Procedure

26(b)(3), protects from discovery "documents and tangible things . . . prepared by a

party or his representative in anticipation of litigation." *In re Qwest* at 1186

(quoting Fed. R. Civ. P. 26(b)(3)). The work product doctrine is narrower than the

attorney-client privilege, and is more akin to a limited or qualified privilege.

Documents protected as work product may still be discoverable, but only upon a

showing of substantial need for the materials and undue hardship in obtaining their

substantial equivalent by other means.  *Id.*

19.    The work product doctrine "extends to the production of material

assembled by an attorney in preparation for impending litigation."  *Ary*, 518 F.3d at

783 (citing *Thompson v. United States (In re September 1975 Grand Jury Term,* 532

F.2d 734, 738 (10th Cir.1976) (quotation omitted)).  "The protection also applies to

materials prepared by an attorney's agent, if that agent acts at the attorney's

direction in creating the documents."  *Id.* at 783 (citing *United States v. Nobles*, 422

U.S. 225, 238-39 (1975)).

20.    The work product doctrine does not apply to documents that appear to

have been prepared in the regular course of business, and the party claiming this

protection bears the burden of demonstrating that each document was in fact prepared in anticipation of litigation. *In re Grand Jury Proceedings*, 156 F.3d 1038, 1042 (10th Cir. 1998).  In sum, "[t]he party asserting work product privilege has the burden of showing the applicability of the doctrine." *Id.* (citing *Barclaysamerican Corp. v. Kane,* 746 F.2d 653, 656 (10th Cir. 1984)).

21.     The mental impressions or opinions of any of the defendants' lawyers are particularly important in reviewing potentially protected work product.  In fact, even where work product may otherwise be discoverable, Rule 26(b)(3) requires the court to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."  Thus, any document or file which contains the thoughts or opinions of an attorney about actual or anticipated criminal or civil litigation must be protected from disclosure to investigating agents and prosecutors.

### H.     Consultation With Investigative Agents or Prosecutors

During the review process, the Filter Agent or Filter AUSA may consult with the investigative agents or prosecutors concerning the facts of the investigation, the legal elements of the attorney-client privilege or work product doctrine, the scope of the warrants, the appropriateness of the seizure of any document, file, or item, or any other factual or legal question.  However, no member of the filter team should disclose the substance of any presumptively or potentially protected item to any

investigative agent or prosecutor unless the item is finally determined not to be protected, consistent with these instructions, and may otherwise be disclosed to the investigative agents or prosecutor.

# APPENDIX I

**LIST OF ATTORNEYS AND LAW FIRMS KNOWN OR SUSPECTED TO BE ASSOCIATED WITH SUBJECTS/DEFENDANTS/PRIVILEGE HOLDERS**

1. <u>**Attorneys for Defendant #1 Michael Tew**</u>

   **A. Attorneys previously identified by prior counsel for Mr. Tew**

   This list of attorneys and contact information were provided by Eric Creizman and Melissa Madrigal, prior counsel for Mr. Tew.  We received no additional supplementation from subsequent counsel Ed Harris and later, Tom Ward and Tor Ekeland:

   NAME:      Eric Creizman
   FIRM:      Armstrong Teasdale LLP
   PHONE:     917.494.5881
   EMAILS:    ecreizman@atllp.com
              ecreiz@icloud.com

   NAME:      Melissa Madrigal
   FIRM:      Armstrong Teasdale LLP
   PHONE:     786.543.1877
   EMAIL:     mmadrigal@atllp.com

   NAME:      Michael Sheehan
   FIRM:      Sheehan Law Denver
   PHONE:     719.660.7366
   EMAIL:     michael.sheehan.esq@gmail.com

   NAME:      Nichole Galvin
   FIRM:      Galvin Law
   PHONE:     410.336.0166
   EMAIL:     ngalvin@galvinlawllc.com

   NAME:      Terrell Smith
   FIRM:      Michael Best & Friedrich LLP
   PHONE:     801.231.2716
   EMAIL:     twsmith@michaelbest.com

   NAME:      David Kaplan
   FIRM:      Haddon, Morgan, and Foreman P.C.
   PHONE:     303.489.9686
   EMAIL:     dkaplan@hmflaw.com

i

NAME:        Kathryn Stimson
FIRM:         Stimson Stancil LaBranche Hubbard, LLC
PHONE:     Unknown
EMAIL:      stimson@sslhlaw.com

In connection with the consent privilege segregation process negotiated by the prosecution team and confirmed with prior counsel for Mr. Tew, the prosecution team provided the following additional parameters to the relevant forensic analysts who are assisting with the application of the filters: (1) inclusion of common nicknames of "Mike Sheehan for Michael Sheehan, "Dave Kaplan" for David Kaplan, and "Kate Stimson" for Kathryn Stimson; (2) separate searches for each of the law firms identified, each of the phone numbers listed above, and each of the email addresses listed above; (3) removing the LLP/P.C./LLC in searches for firm names; (4) no additional searches.

## B. Additional Attorneys Identified During Proceedings

Since the time this list was developed with Mr. Creizman and Ms. Madrigal, prior lawyers for Mr. Tew, Mr. Tew has been represented by the following additional attorneys:

NAME:        Edward Harris
FIRM:         Office of the Federal Public Defender
ADDRESS:  633 17th Street, Suite 1000
               Denver, CO 80202
PHONES:   303.294.7002
               303.748.2484
EMAIL:      Edward_Harris@fd.org

NAME:        Thomas Ward
FIRM:         McDermott Stuart & Ward LLP
ADDRESS:  140 East 19th Avenue
               Suite 300
               Denver, CO 80203
PHONES:   303-832-8888
               303-863-8888 (fax)
               720-280-7506 (mobile
EMAIL:      tward@mswdenver.com

As noted in this memorandum, the defendant Michael Tew was represented by Tor Ekeland, Michael Hassard, and Xuan Zhou between February 25, 2021 and February 25, 2022. There is no evidence of any attorney-client relationship in the

ii

period before the items that are being reviewed were seized.  He is currently represented by attorney Peter Bornstein.

## 2.     Attorneys for Defendant #2 Kimberley Tew

The prosecution team is not aware of what attorney-client relationships, if any, Mrs. Tew had *prior to* July 8, 2020.[5]  Based on the correspondence described above in the Introduction, we add the following potential attorney-client relationships out of an abundance of caution:

> NAME:       Eric Creizman
> FIRM:       Armstrong Teasdale LLP
> PHONE:      917.494.5881
> EMAILS:     ecreizman@atllp.com
>             ecreiz@icloud.com

> NAME:       Melissa Madrigal
> FIRM:       Armstrong Teasdale LLP
> PHONE:      786.543.1877
> EMAIL:      mmadrigal@atllp.com

> NAME:       Lauren Tew

Lauren Tew is defendant Kimberley Tew's sister.  Based on a Google search, it appears she is a lawyer.  The prosecution team does not have enough information to determine whether communications with Lauren Tew were personal or made for the purpose of obtaining legal advice as part of an attorney-client relationship. However, out of an abundance of caution, the filter team should identity further contact information for Lauren Tew and use keyword searches to mark communications with her as presumptively or potentially protected.

> NAME:       Unknown ("Lawyer 3")
> PHONE:      (949) 204-7468

As explained in the July 7, 2021 Letter from Government to Counsel for Mr. Tew and Mrs. Tew regarding further filtering of search warrant return for kley@me.com, one of the agents conducting the prior review noted the existence of a

---

[5] As noted in the correspondence referenced in the Introduction, the prosecution team requested that forensic analysts identify and remove from the search warrant return for kley@me.com items that were (1) dated July 8, 2020 or after; or (2) undated.  Any additional filtering that the filter team deems appropriate consistent with this memorandum for the search warrant return for kley@me.com will be performed against the already filtered materials.

contact named "Lawyer 3" but did not review anything of substance.  The Filter team should further identify Lawyer 3 and use keyword searches to mark communications with this lawyer as presumptively or potentially protected.

> NAME:      Jamie Hubbard
> FIRM:       Stimson Stancil LaBranche Hubbard
> ADDRESS: 1652 N Downing Street
>            Denver, CO, 80218
> PHONES:  720.689.8909
>           720.985.5184
> EMAIL:     hubbard@sslhlaw.com

The prior AUSAs on the matter reported that they became aware that Mrs. Tew retained Jamie Hubbard, a lawyer in Denver, more than a month after Mr. Tew's arrest.  In an abundance of caution given that all materials dated on or after July 8, 2020 or are undated have summarily been filtered out of the search warrant return for kley@me.com, Ms. Hubbard is nevertheless included here.

As noted in this memorandum, the defendant Kimberley Tew was represented by Tor Ekeland, Michael Hassard, and Xuan Zhou between February 25, 2021 and February 25, 2022. There is no evidence of any attorney-client relationship in the period before the items that are being reviewed were seized.  She is currently represented by attorney Peter Bornstein.

## LIST OF PROSECUTORS AND AGENTS ASSIGNED TO INVESTIGATE AND PROSECUTE THIS CASE – THE PROSECUTION TEAM

### United States Attorney's Office
> Bryan Fields, AUSA
> Karl Schock, AUSA
> Martha Paluch, AUSA
> JD Rowell, Chief, Criminal Division
> Matthew T. Kirsch, Acting U.S. Attorney
> Danielle Storinsky, Contract Legal Assistant
> Portia Peter, Contract Legal Assistant
> Veronica Ortiz, Legal Administrative Specialist
> Michael Price, Legal Administrative Specialist
> Margaret M. Bowdouris, Supervisory Legal Administrative Specialist

### Federal Bureau of Investigation
> Sarah Anderson, Special Agent
> John Maglosky, Special Agent
> Matthew Morgan, Financial Analyst
> Dana McMahon, Financial Analyst

**<u>IRS-Criminal Investigation</u>**
>Lisa Palmer, Special Agent
>Melinda Wilgus, Special Agent
>Ben Hopping, Special Agent
>Tony Romero, Special Agent