IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

　　　　Plaintiff,

v.

　　1. **MICHAEL AARON TEW, and**
　　2. **KIMBERLEY ANN TEW,** a/k/a Kimberley Vertanen,

　　　　Defendants.

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT KIMBERLEY ANN TEW'S MOTION FOR SEVERANCE [ECF NO. 218]

　　　　There is no reason to proceed on one trial against one conspirator and then proceed on a different trial with identical evidence against the other conspirator. The defendant's speculation about an unspecified and unarticulated *Bruton* violation is insufficient to overcome the strong presumption in favor of joint trials. Her motion for Severance ("Def's Severance Mot."), ECF No. 218, should be denied.

　　　　1.　　The defendant is correct that the court has wide discretion over how to manage its docket and whether to grant a severance. But that works both ways: a decision to take advantage of the considerable efficiencies that come from having the same evidence of a conspiracy presented once, instead of twice, is extremely unlikely to be second-guessed on appeal. Our court system presumes that joint trials "serve the interests of justice by avoiding inconsistent verdicts and enabling

1

more accurate assessment of relative culpability." *Richardson v. Marsh*, 481 U.S. 200, 209 (1987). The Federal Rules of Criminal Procedure broadly permit joinder where parties are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8.  And the rule is "construed broadly to allow liberal joinder to enhance the efficiency of the judicial system." *United States v. Janus Indus.*, 48 F.3d 1548, 1557 (10th Cir. 1995) (quotations and citation omitted).

     2.     The defendant does not identify which statements she thinks are subject to *Bruton v United States*, 391 U.S. 123 (1968).  The government has asked defense counsel to identify them.  He responded, "I believe that pretext calls from Yioulos to Tew have Bruton problems." This "belief" is a far cry from the affirmative assertion needed to warrant the heavy costs of two trials.  And the defendant's response cites calls lasting many minutes, without any specific reference to what in those calls actually creates a *Bruton* issue.  Speculation about a possible *Bruton* issue based on "belief" — but not, apparently, on any detailed analysis of those calls identifying specific statements — is insufficient for relief here.  If the defendant does identify specific statements in those calls, the government will work with defense counsel on any necessary redactions to comply with the rule.  *Richardson*, 481 U.S. at 211 ("We hold that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the

defendant's name, but any reference to his or her existence.").

3. The defendant also stated in the email that "the proffer of each Tew cannot be used against that person, but can be used against the other person," apparently referencing proffer interviews provided by each defendant in the presence of counsel. During those interviews, each defendant admitted to the charged crimes. But the government cannot use those proffer statements unless the defendants breach the underlying proffer agreements by offering evidence that contradicts what each defendant told the government. If defense counsel does not breach the proffer agreements, there is no issue. If he does, then the statements can be redacted. But the bigger problem, if the defendants intentionally breach the proffer agreements, is that defense counsel and the defendants would be either offering knowingly false statements to the court during trial, or admitting to offering false statements to the government — a position that is completely untenable. See *United States v. Barrow*, , 400 F.3d 109, 117 (2d Cir. 2005); *United States v. Velez*, 354 F.3d 190, 195-97 (2d Cir. 2004); *United States v. Parra*, 302 F. Supp. 2d 226, 235-40 (S.D.N.Y. 2004); *United States v. Chan*, 185 F. Supp. 2d 305, 308 (S.D.N.Y. 2002); *United States v. Chaparro,* 181 F. Supp. 2d 323, 334 (S.D.N.Y. 2002) (explaining that there is "no unfairness to [the defendant] in allowing use of his statements during proffer sessions once he has opened the door to their use by his arguments and evidence," because the "design of the [Proffer] Agreement provides any defendant who decides to speak with the Government strong

incentives to speak truthfully, and discourages anyone from speaking at all if she intends to lie . . . .").

4. None of the other stated grounds for severance justify having two trials in this matter.

    a. The defendant cites no case — and the government is aware of none — justifying severance simply due to the "sheer number of counts" against one defendant. The "number of counts" is not a particularly helpful heuristic for deciding complexity where the unit of charging consists of specific wires or financial transactions that are simply specific examples of overt acts or executions of a scheme: the jury can easily determine which defendant initiated an ACH transaction or went to the bank.

    b. The defendant asserts that evidence admissible on the counts against Michael Tew would somehow prejudice Kimberley Tew but provides no examples of items of evidence that would come in during a joint trial, but not in a single trial. Because the Tews are co-conspirators responsible for one another's actions in furtherance of the conspiracy, the evidence in this case overlaps almost entirely. Even if Kimberley Tew is severed, evidence of her husband's actions would nevertheless be admissible to show the existence, scope, and nature of the charged conspiracy.

    c. The defendant asserts — again without citation to any authority — that there is "special prejudice" when conspirators are married. There is no basis

for this assertion. The government has no intention — and has never had any intention — to make inference about "pillow talk." The government will absolutely not make any arguments that husbands and wives are responsible for, or know about, all of their actions and rejects the idea that such a thing is "natural" as potentially sexist. Instead, the government will present known evidence in the form of testimony from co-conspirators, victims, and witnesses who observed the Tews fleecing their once current and then former employer. The jury should not engage in inferences the parties do not ask them to make and if the defendant is particularly concerned on this point, the government can work with her to craft an appropriate jury instruction.

        d.       The government does intend to present evidence that Michael Tew and his wife had conversations about and with co-conspirator Jonathan Yioulos. Conspirators will often compartmentalize tasks associated with carrying out the conspiracy so as to maximize comparative advantages. Michael Tew was the one who had most of the conversations with Yioulos, but it is not accurate to say that this means the evidence against Ms. Tew is "far less." It simply means that Ms. Tew's position in the conspiracy was more insulated. All of the evidence showing the existence of the conspiracy can be used against Ms. Tew, who directly and actively profited from it. Even if the evidence against Ms. Tew is somehow "far less," this is still an insufficient basis for severance. A defendant making a motion to sever bears the "heavy burden" of showing "real" prejudice: "serious risk that a

joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993); *United States v. Martin* 18 F.3d 1515, 1518 (10th Cir. 1994). The Tenth Circuit has explained that "[t]he mere fact that one co-defendant is less culpable than the remaining co-defendants is not alone [a] sufficient ground" to overturn a district court that decides to try defendants together. *United States v. Williams*, 45 F.3d 1481, 1484 (10th Cir. 1995). "It would be normal and usual to assume one of two or more co-defendants would be more or less culpable than the others." *United States v. Youngpeter*, 986 F.2d 349, 354 (10th Cir. 1993).

Finally, the defendant's reliance on a 34-year-old case from the Ninth Circuit referencing even older studies about the abilities of juries, is misplaced. Def. Severance Mot. at 4 (citing *United States v. Lewis*, 787 F.2d 1318, 1321 (9th Cir. 1986). The Tenth Circuit has never used, analyzed, or cited that case for purposes of a severance motion. Indeed, its legally binding position is the exact opposite of the one the defendant asserts in brief: juries are presumed to be able to follow, and to actually follow, their instructions. *United States v. Tucker*, 502 F. App'x 720, 726 (10th Cir. 2012) ("We underscore that a central assumption of our jurisprudence is that juries follow the instructions they receive. Consequently, with confidence, we conclude that these jury instructions were sufficient to cure any prejudice that [the defendant] may have received from having all of his crimes tried together."). *United*

6

*States v. Pinto*, 838 F.2d 426, 434 (10th Cir. 1988) ("Throughout the trial, the court admonished the jury to consider certain evidence only as to Lambert. As a result, the jury was able to compartmentalize the evidence as to each of the defendants and to properly apply it as the court instructed."); *United States v. Lane*, 883 F.2d 1484, 1498–99 (10th Cir. 1989) (providing illustration of how limiting instruction mitigates prejudice and affirming convictions in joint trial where some evidence was admitted against some, but not other, defendants). This is especially true when the defendant cannot be bothered to actually provide examples of evidence that actually raise concerns about the ability of juries to analyze evidence against each defendant. No statement by one co-defendant against another in this case is testimonial, which means that delivering a limiting instruction will ensure a fair, orderly, and efficient joint trial. *United States v. Zapata*, 546 F.3d 1179, 1191–92 (10th Cir. 2009) (noting that "spill-over" can be solved with a limiting instruction).

For all of these reasons, the defendant's motion should be denied.

                                        COLE FINEGAN
                                        United States Attorney

By: */s/ Bryan Fields*                  By: */s/ Albert Buchman*
Bryan Fields                                Albert Buchman
Assistant United States Attorney      Assistant United States Attorney
U.S. Attorney's Office                    U.S. Attorney's Office
1801 California St. Suite 1600        1801 California St. Suite 1600
Denver, CO 80202                       Denver, CO 80202
(303) 454-0100                              (303) 454-0100
Bryan.Fields3@usdoj.gov              Al.Buchman@usdoj.gov
Attorney for the Government          Attorney for the Government

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Albert Buchman*
Albert Buchman

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because any resolution of it will be within the already-granted ends-of-justice continuance granted on May 12, 2022, ECF No. 198.

*/s/ Albert Buchman*
Albert Buchman

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on August 9, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which system automatically provides a copy to defense counsel of record.

      */s/ Albert Buchman*
Albert Buchman
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Phone: (303) 454-0100
Fax: (303) 454-0403
E-mail: Al.Buchman@usdoj.gov
Attorney for the United States