IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

    1.  **MICHAEL AARON TEW, and**
    2.  **KIMBERLY ANN TEW,** a/k/a Kimberley Vertanen,

     Defendants.

---

**GOVERNMENT'S MOTION FOR RECONSIDERATION OF ORDER
GRANTING DEFENSE COUNSEL'S MOTION TO WITHDRAW OR, IN THE
ALTERNATIVE, MOTION FOR EXPEDITED APPOINTMENT AND
EXTENSION OF DEADLINES**

---

The government respectfully moves the court to reconsider its order granting defense counsel's Motion to Withdraw, ECF No. 273, which was entered before the government was invited to respond and before the 14-day deadline for responses that have been typically permitted in this matter. *See, e.g.,* ECF No. 241 (giving government 14 days to respond to pretrial motions).  In the alternative, the government moves the Court to hold a hearing at the earliest possible time to collect financial affidavits and appoint new counsel, and also to reset the current deadlines to ensure orderly conduct of litigation that will not unnecessarily consume judicial resources.

1

Michael Tew was arrested in July 2020. His criminal liability has remained an issue before this Court for almost two years due to instability and uncertainty regarding his — and later, his wife Kimberley's — representation. Each of the many withdrawals thus far has meant a different defense approach that the government has had to necessarily confront:  early counsel previously made decisions substantially curtailing the ability to mount subsequent defenses by later counsel; other counsel have taken far-reaching positions litigating filter review of evidence, which has delayed review of that evidence for over a year; and still later counsel have filed motions with certain theories that have now been rejected. All these actions have naturally delayed the case, which in turn has prejudiced the government and the public.

Now, Mr. Peter Bornstein is the *fifth* attorney to represent Michael Tew and the third to represent Kimberley Tew, and, as all predecessors have, has sought withdrawal.  He was surely aware when he took the matter that the case would present certain difficulties. To date, he has had almost a year to evaluate the complicated evidence and, having sifted through it with sufficient diligence to file multiple pre-trial motions and conduct a day-long hearing, is surely in the best position to advance this case without any more delay. The government opposes withdrawal in this matter because (1) the defendants are represented by competent and effective counsel with whom they have no conflict and (2) such a withdrawal would cause yet another continuance in this long-pending matter, resulting in

2

substantial prejudice to the government, the defendants, the public, and the interests of justice.

## I. Legal Standard

### A. The Court should reconsider so that it can evaluate governing local rules and relevant precedent.

The rules of criminal procedure do not provide for motions for reconsideration. Whether to entertain such a motion is left to the sound discretion of the court, which can consider analogous rules from the civil realm. *United States v. Baraja-Chavez*, 358 F.3d 1263, 1266 (10th Cir. 2004). In civil cases, motions for reconsideration are granted when there has been an "intervening change in the law," the discovery of "new evidence previously unavailable," or something necessary to "correct clear error or prevent manifest injustice." S*ervants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). The basis for reconsideration here is for clear error and manifest injustice: the defendant's motion does not address the local rule requiring "good cause" for withdrawal or the court's precedents in evaluating that standard, set forth below. Appointing counsel new counsel will cause delays and other harm to the court, the government, the defendant, and the public.

### B. The Law Requires "Good Cause" For Withdrawal

The Court's local rules require a showing of "good cause" for withdrawal of counsel of record.  D.C.COLO.L.R.Atty.R. 5(b).  This is consistent with the Tenth Circuit's unambiguous standards regarding substitution of counsel: "To warrant a

substitution of counsel, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." *United States v. Blaze*, 143 F.3d 585, 593 (10th Cir. 1998) (quoting *United States v. Padilla*, 819 F.2d 952, 955 (10th Cir. 1987)). Refusal to pay fees can constitute "good cause" but only where it is part of a pattern of failure to cooperate with counsel. "Non-payment of legal fees, without more, is not usually a sufficient basis to permit an attorney to withdraw from representation," and simply drawing down a retainer is not evidence of a client's deliberate violation of a fee agreement. *United States v. Parker*, 439 F.3d 81, 104 (2d Cir. 2006).

## II. There is no good cause for withdrawal here

Defense counsel has not alleged any conflict of interest or a breakdown of communications. As a threshold matter, then, defense counsel has clearly failed to show "good cause." If the issue is really just money, as Mr. Bornstein alleges, then there is an easy fix: Mr. Bornstein can be appointed as counsel pursuant to the Criminal Justice Act (CJA) and paid accordingly. 18 U.S.C. § 3006A(c). If Mr. Bornstein is not on the CJA panel, then that problem, too, is surmountable: the CJA panel for this court allows appointment of an attorney who is not on the panel in "extraordinary circumstances." U.S. Dist. Ct., District of Colorado, CJA Plan, VII.D.

"Extraordinary circumstances" are not defined, but case law points to three

factors for evaluating them:  (1) the merits of the claims at issue, (2) the nature and complexity of the factual and legal issues, and (3) the litigant's ability to investigate the facts and present claims.  *Cf. Hill v. SmitKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004).

The merits issue in the larger sense is the most consequential in our legal system: whether the defendants are guilty of charged crimes. Of course, no one doubts that the defendants are entitled to representation under the Sixth Amendment, and the Court has asked the defendants to submit affidavits showing their entitlement to court-appointed counsel. The issue, in the more specific sense then, is whether extraordinary circumstances permit the use of CJA funds to pay Mr. Bornstein in particular, instead of a different lawyer with no familiarity with the proceedings. They do.

*First*, Mr. Bornstein has had the case since March of 2022.  In that time, he has explained that the case presents extraordinarily complicated issues that can only be resolved after reviewing thousands of pages of discovery. A ruling that would force the Tews to get a new attorney would further delays these proceedings by several or more months.  Yet another delay in this matter is not in the interests of the witnesses, the court, or the public.  It also creates a clear problem of incentives related to manipulation of the justice system. *Cf. United States v. Beers*, 189 F.3d 1297, 1302 (10th Cir. 1999) (noting that "there must be some limit to the defendant's ability to manipulate the judicial system," and expressing concern

where defendant had already received substitute counsel and further substitution would "would have seriously delayed proceedings, confused the jury, and prejudiced the prosecution"); *see Rophaiel v. Alken Murray Corp.*, 1996 WL 306457, at *2 (S.D.N.Y. 1996) ("It would be too easy for a defendant to stall proceedings by inducing the withdrawal of its attorney by non-payment of fees. I do not say that the defendants at bar are engaged in that tactic. I only say that the present record is insufficient to allow the withdrawal of the firm.")

*Second*, any substitute attorney will have the disadvantage of inheriting a matter that has already been litigated using certain arguments and theories, all without the benefit of knowing the long-term strategy or shorter-term tactical positions that Mr. Bornstein planned to use to advance his clients' interests. Appointment of yet another attorney risks prejudice to the defendants. *See Parker*, 439 F.3d at 107 (quoting extensively from American Bar Association Standard for Criminal Justice describing considerable advantage of having one attorney throughout trial proceedings).

*Third*, any prejudice to Mr. Bornstein can be limited by a CJA appointment and should take into account his initial duty to make sure that his representation of a client would not create an unreasonable financial burden on him. *Id.* at 108-109 (citing Gerald F. Uelman*, Converting Retained Lawyers into Appointed Lawyer: The Ethical and Tactical Implications*, 27 Santa Clara L. Rev. 1, 4 (1987).

*Fourth*, substituting counsel without also taking into account the pending

motions risks further delay and prejudice.  For example, the Court has ordered the government to produce a *James* log by January 6, 2023.  An orderly process would normally contemplate providing defense counsel with a copy of that log in advance so that the parties can jointly narrow any disputes to be brought before the district court and otherwise limit their consumption of judicial resources.  The current state of affairs — where Mr. Bornstein is allowed to withdraw without any consideration of pending motions and without consideration of whether any newly appointed lawyer would be able to accomplish this task — risks unnecessarily prolonging litigation or, even worse: it is possible that new counsel could decide the *James* log is not necessary at all, which would fail to promote the defendants' rights.

*Fifth*, the discovery in this case is complex, involving the search and seizure of gigabytes of electronic information.  Legal issues also abound, not the least of which is the evaluation of what kinds of defenses the defendants can present given the procedural posture and history of the case. Mr. Bornstein has acknowledged these risks. New counsel may, however, open the door to the  confessions' admission.

*Finally*, the Tews' ability to investigate the facts and present claims on their own is particularly difficult in this matter given their insistence on joint representation, despite having potentially divergent interests.

All of these factors militate against allowing withdrawal in this case and, instead, favor the conclusion that extraordinary circumstances warrant appointing

Mr. Bornstein pursuant to the CJA.

The Court should also consider the prejudice to the government and the public that will necessarily arise from precipitous withdrawal of defense counsel here. Another appointment will inevitably result in another delay. The defendants carried on their fraud against the out-of-state victim for many years. *See* ECF No. 1 (Indictment). There are over a dozen of witnesses to the scheme, many of which reside outside of Colorado. Further continuances and uncertainty regarding the trial date places burdens on their schedules, compounds the inherent risks associated with fading memories, and, ultimately, delays restitution and peace of mind to the victim.

### III.   If there is good cause, the Court should hold an immediate hearing and vacate the existing deadlines until new counsel is appointed

The Court has ordered the government to submit a *James* log on or before January 6, 2023 and a response on or before January 23, 2022. ECF No. 263. If new counsel is appointed, it is exceedingly unlikely that the new lawyer will be able to comply with the January 23rd response deadline given the volume of discovery and the upcoming holidays. Ideally, well before those dates, the government and defense counsel would be able to confer and avoid unnecessarily burdening the court with issues that it can resolve. But such a process is impossible when it is unclear whether the Tews are represented and by whom. Furthermore, once the government has completed its *James* log, it has essentially finished preparing for

trial and will not be in a position to offer either any plea disposition or the final point for acceptance of responsibility designed to prevent unnecessary consumption of scarce resources.  U.S.S.G. § 3E1.1(b).  For these reasons, to avoid prejudice to the government, the court, and the defendants, the Court should also issue an order vacating the current deadlines and, instead, order a status conference to discuss scheduling with any newly appointed counsel.

In addition, Mr. Bornstein recently filed a motion for a trial subpoena *duces tecum*, which was granted.  But the Court also asked Mr. Bornstein to file a revised subpoena, which he has not done, and also contemplated a process in which the parties would review any documents provided in response.  ECF No. 272. Assuming that this subpoena seeks important information to the defense, the follow up revisions requested by the Court are likely to be missed by any new defense counsel attempting to get up to speed on the case.

Finally, the government notes that the last time the Court asked the Tews to submit affidavits, it took approximately 60 days to have the issue of representation resolved. ECF Nos. 166, 167, 175, 177 and 178.  If the Court denies the motion for reconsideration of the underlying issue regarding withdrawal of counsel, the government respectfully moves for an expedited in-person hearing requiring that Tews to submit their affidavits to the Court this week.  If the Tews are determined to qualify, the government requests an order appointing such counsel as soon as possible to avoid any delays.  Such a procedure will also give new counsel time, if

necessary, to submit a new subpoena pursuant to the Court's order, ECF No. 272, and to consider whether the deadline for the subpoena should be extended and how, if at all, the provision of documents related to that subpoena might impact the current trial date of March 7, 2023.  The subpoena contemplates potentially thousands of documents, which would need to be reviewed in addition to the thousands that are already part of the discovery in this case.

To the extent the parties once again seek appointment of one attorney to represent them both, the government notes its continued opposition.  Allowing one attorney to represent two co-conspirators with different legal defenses, different legal options, and distinct interests is legally inadvisable for the reasons set forth at ECF No. 108 and at the hearing regarding the motion for severance.

Respectfully submitted this 5th day of December, 2022.

COLE FINEGAN
United States Attorney

By:  */s/ Bryan Fields*
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By:  */s/ Albert Buchman*
Albert Buchman
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Al.Buchman@usdoj.gov
Attorney for the Government

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Bryan Fields*
Bryan Fields

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because any resolution of it will be within the period within which the Court is evaluating the defendants' motion for a *James* log, ECF No. 263.

*/s/ Bryan Fields*
Bryan Fields

## **<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on December 5, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which system automatically provides a copy to defense counsel of record.

*<u>/s/ Bryan Fields</u>*
Bryan Fields
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Phone: (303) 454-0100
Fax: (303) 454-0403
E-mail: Bryan.Fields3@usdoj.gov
Attorney for the United States
