hibitIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **MICHAEL AARON TEW, and**
2. **KIMBERLEY ANN TEW,** a/k/a Kimberley Vertanen,

    Defendants.

## GOVERNMENT'S MOTION *IN LIMINE* FOR RULING THAT CERTAIN EXHIBITS ARE AUTHENTIC AND COVERED BY BUSINESS-RECORDS EXCEPTION TO THE HEARSAY RULE

The Federal Rules of Evidence are designed "eliminate unjustifiable expense and delay." Fed. R. Evid. 102. *See United States v. Komasa*, 767 F.3d 151, 155 (2d Cir. 2014) (describing procedure created as a result of 2000 amendments to the Rules of Evidence with goal of avoiding "the expense and inconvenience of producing time-consuming foundation witnesses"). The Court can do both in this case by making two pretrial rulings that are already appurtenant to the finding it has been asked to make about the statements listed in the *James* log. First, while evaluating whether the texts and emails in the *James* proffer and log are non-hearsay under Rule 801(d)(2)(E) it can make explicit what would already be implicit in any ruling that the messages are between and among conspirators who are conspiring: it can rule that the texts and emails are authentic business records from

1

Apple and Google and eliminate the need to hear testimony from two unnecessary witnesses at the upcoming trial. Second, because the Court will already be looking at other business records that corroborate the events being discussed by the conspirators (and that are, in turn, cross-corroborated by them), it can also rule that documents kept in the course of the regularly conducted activity of large American corporations and financial institutions whose regular practice of keeping such records is well-known and uncontroversial meet the *prima facie* threshold of authenticity set forth in Federal Rule of Evidence 901 and are sufficiently reliable to fall within the business records exception to the hearsay rule set forth in Federal Rule of Evidence 803(6). *See, e.g., United States v. Arrington*, 2022 WL 4077685, at *5 (W.D.N.Y. 2002) (granting motion in limine to admit business records).

Absent such a ruling, the Court and a jury will be forced to listen to testimony from approximately 19 or more custodian-of-records witnesses in the middle of a jury trial that should be focused on underlying issues related to the charges. The government has consulted with defense counsel, who have each advised that they do not stipulate at this time to the authenticity or business-records status of the items referenced in the *James* log. The government moves *in limine* pursuant to Federal Rules of Evidence 103 and 104 for a ruling that the highlighted exhibits in attachment 1, referenced in its *James* proffer and log, ECF Nos. 341 and 341-1, are authentic under Rule 901 and admissible non-hearsay under Rules 803(6) or 801(d)(2)(E).[1]

---

[1] Documents with the Bates prefix "NAC" or "NAC_E" were produced by NAC

### I. The *James* Hearing is an opportunity efficiently and effectively make pre-trial rulings *in limine* that will substantially streamline the upcoming trial

The government's *James* proffer and log describe in exhaustive detail the types of evidence the government will offer at the upcoming trial: mostly, records created and relied upon by venerable domestic corporations whose services are used without issue by Americans every day for prosaic and routine functions like banking, calling, texting, car-buying, and web hosting. All of those records were provided to defense counsel shortly after their appointment in this case. None are particularly controversial or exotic. Most are accompanied by affidavits submitted under oath pursuant to Rules 902 and 803(6).[2] They comprise the kinds of records and information that jurors and the Court are already very familiar with: bank signature cards, bank statements, deposit slips, telephone billing records, receipts, text messages, photographs, and emails. The government requests formal rulings

---

and will be authenticated by witnesses who worked or currently work for National Air Cargo, which was the victim of the Tews' fraud. Many can also be authenticated by Jonathan Yioulos, a coconspirator who worked at NAC during the time period of the conspiracy. They can also be authenticated under Rule 901(b)(4). Where the relevant declaration refers in the exhibit list refers to "SIG" the government can also authenticate the records pursuant to 901(b)(3) because the records of ACH transactions provided by NAC are corroborated by independently certified records from Signature Bank.

[2] NFCU provided a certification for the records related to exhibits 231-232, 236, 239, 240, 303, 304, 318 – 323, 333, and 393 but the PDF file is corrupted. The government expects another certificate to be provided soon.  NFCU ATM and bank lobby photographs will be authenticated by a witness who can explain what everyone who has been to a bank or an ATM already knows: banks take pictures of the people withdrawing money. AT&T provided a declaration of its records today, which will be produced to defense counsel.  Declarations for other custodians are likely to be received in the coming days and will be offered at the upcoming hearing.

from the Court that the records meeting thresholds of authenticity and reliability necessary to overcome objections raised under Rules 901, 801(d)(2)(E), and 803(6).

The entire purpose behind the *James* process is to obtain a pre-trial ruling on an evidentiary issue — the application of the co-conspirator exception to the hearsay rule under Rule 801(d)(2)(E) — so as to avoid wasting time and effort resolving those issues in front of a jury. In the process of developing the record necessary to make that ruling, the government's *James* proffer and log cites and describes the types of documents that prove the conspiracy. Those documents overlap in large part with the exhibits the government will offer at trial.

This means that the Court can use the *James* process to vastly simplify the upcoming trial in an extremely efficient manner. To the extent that the defendants have a good-faith objection to the admissibility of any of these records on the basis of Rules 901, 803(6) or 801(d)(2)(E), they can raise it at the *James* hearing and cross-examine one of the agents tasked with gathering them. The Court can then use the record developed at the *James* hearing to resolve several overlapping evidentiary issues all at once, instead of piecemeal in the weeks to come or in time-consuming and unnecessary sidebars at trial. *See United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002) ("Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues.")

## II. The Federal Rules of Evidence create a framework that encourages pre-trial rulings related to authenticity and the applicability of the business records exception to the hearsay rule

Questions about whether evidence is authentic under Rule 901 can be resolved outside the presence of the jury under the "preliminary questions" rubric of Rules 103, without regard to the rules of evidence or the formalities and requirements of a trial. Fed. R. Evid. 104(a) (noting that court is not bound by evidence rules, except rules on privilege); *See Lorraine v. Markel American Ins. Co.*, 241 F.R.D. 534, 539 (D. Md. 2007) (setting forth comprehensive analysis for evaluating admissibility of electronic evidence under the Federal Rules of Evidence).

Answering these questions is usually not difficult because the rules set a low bar for evaluating authenticity. *United States v. Dhinsa*, 243 F.3d 635, 658 (2d Cir. 2001). The proponent of the evidence just has to show that it seems reasonably probable the item being presented is what he says it is — a so called "prima facie" showing. *United States v. Fluker*, 698 F.3d 988, 999 (7th Cir. 2012); *United States v. Ortiz*, 966 F.2d 707, 716 (1st Cir. 1992). Any concerns beyond that threshold go not to admissibility but to the weight the jury should give to that item of evidence. *See Dorador-Martinez v. CoreCivic Inc*, 2019 WL 2232630, at *2 (S.D. Cal. May 23, 2019) (describing "textbook law" related to issues of authentication)). As one judge has explained, "[t]he Court need not find that the evidence is necessarily what the proponent claims, but only that there is sufficient evidence that the *jury* ultimately might do so." *United States v. Safavian*, 435 F. supp. 2d 36, 38 D.C. 2006) (emphasis

5

in original).

The Rules provide useful examples of ways in which evidence can be authenticated. One of the most common codifies common sense: evidence can be authenticated based on its "appearance, contents, substance, internal patterns and other distinctive characteristics." Fed. R. Evid. 901(b)(4). Electronic evidence, no less than documents, often contains these kinds of distinctive characteristics: names typed into the emails themselves, content likely to be known only by the sender, and "header" information noting the date, time, and destination of a message. *Fluker*, 698 F.3d at 999 (explaining that circumstantial evidence can authenticate emails).

Sometimes, evidence is self-authenticating. Rules 902(11), (13) and (14) are archetypes of the Rules' modern efforts to accomplish the purposes of efficiency and truth-seeking in Rule 102. These rules encourage the parties to avoid unnecessary disputes over particular categories of evidence that are self-evidently "what they purport to be" and thus presumably capable of meeting the *prima facie* showing of genuineness required to meet the requirement of authenticity in Rule 901. *See United States v. Komasa*, 767 F.3d 151, 155 (2d Cir. 2014) (describing procedure created as a result of 2000 amendments to the Rules of Evidence with goal of avoiding "the expense and inconvenience of producing time-consuming foundation witnesses").

These principles coalesce around the conclusion that business records are rarely the kind of evidence whose admissibility is subject to reasonable dispute. The entire basis behind the business records exception to the hearsay rule, Federal Rule

6

of Evidence 803(6), is that they are uniquely likely to be reliable. *United States v. Banks,* 514 F.3d 769, 778 (8th Cir. 2008) ("Business records are admissible despite being hearsay because of their unusual reliability, which includes 'systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying on them, or by a duty to make an accurate report as part of a continuing job or occupation."). Rules 902(11) and (13) build on this well-recognized legal principle and allow the court to consider affidavits from records custodians stating, under oath, that records are authentic precisely because circumstances make it highly likely that businesses will keep reliable records. *See United States v. Johnson*, 971 F.2d 562, 571 (10th Cir. 1992) (noting that the authenticity and admission of bank records, in particular, can be predicated on judicial notice of nature of businesses and stringent need to maintain reliable records).

In the modern age, legal experts have recognized that corporations in the business of brokering data and information, no less than banks brokering financial transactions, have similar incentives to maintain reliable records. In 2017 the Rules were amended to clarify that digital records and data and also be self-authenticating. In enacting FRE 902(13) and (14), the Rules Committee noted that "as with the provisions on business records in Rules 902(11) and (12), the Committee has found that the expense and inconvenience of producing a witness to authenticate an item of electronic evidence is often unnecessary." Fed. R. Evid. 902(13) Advisory Committee's Note (2017). "It is often the case that a party goes to

7

the expense of producing an authentication witness, and then the adversary either stipulates authenticity before the witness is called or fails to challenge the authentication testimony once it is presented." *Id.* "The amendment provides a procedure under which the parties can determine in advance of trial whether a real challenge to authenticity will be made, and can then plan accordingly." *Id.*

Finally, there is no confrontation clause problem with relying on declarations from the relevant records custodians because the declarations are not testimonial. *United States v. Brinson*, 772 F.3d 1314, 1322-1323 (10th Cir. 2014) (explaining that declarations from records custodians prepared pursuant to Rule 902(11) do not violation confrontation clause because they are designed merely to authenticate, not to prove some other fact at trial).

### III. There is no real basis for challenging the authenticity of records kept in the course of regularly conducted business activity made as part of regular practices in pursuit of that activity

This is not a case involving dusty old documents of uncertain origin, concerns about forgery, or other disputes over whether records are what is readily apparent on their face. It involves bank records, *see, e.g., United States v. Lewis*, 594 F.3d 1270, 1279 (10th Cir. 2010); texts, s*ee e.g., United States v. Kilpatrick*, 2012 WL 3236727, at \*4-5 (E.D. Mich. Aug. 7, 21012); emails, *see, e.g., United States v. Shults*, 730 F. App'x 421, 423-24 (9th Cir. 2018); telephone toll records, *see, e.g., United States v. Yeley-Davis*, 632 F.3d 673, 678-79 (10th Cir. 2011); and receipts, *see, e.g., United States v. MacIntyre*, 997 F.2d 687, 701 (10th Cir. 1993), that are routinely found to be admissible in courts all around the country.

8

Exhibit 1 notes the discovery "Bates stamp" corresponding to the item the government seeks to admit and, where applicable, the declaration from the relevant custodian establishing that the record is self-authenticating. For all of the reasons set forth throughout this motion, the government will ask the Court at the upcoming *James* hearing to enter an order finding that each of the highlighted exhibits is authentic under Rules 901 and 902 and that they fall within either the coconspirator or business records exceptions to the hearsay rule.

### IV. The texts and emails the government will offer can be authenticated at the *James* hearing using the same means and methods the Court will already use to determine whether those texts and emails fall within the coconspirator exception to the hearsay rule.

The texts and emails offered by the government do not present particularly novel evidentiary issues. In this case, Apple and Google submitted declarations certifying that the records they produced in response to the court-ordered search warrants meet the requirements of Rule 803(6). That is, Apple and Google created and maintained the texts and emails, they were kept by Apple or Google as part of their regular business activities, and they were made as part of Apple's and Google's respective business.  This tells the world what every user of an electronic communications provider or remote computing service already knows: digital providers fastidiously keep and maintain user-generated content. The declarations from Google and Apple  are thus sufficient to show that the texts and emails are authentic copies of records created and maintained by Apple and Google. *See United States v. Ayelotan*, 917 F.3d 394, 402 (5th Cir. 2019) (finding that emails obtained from Google and Yahoo! accompanied by certification were admissible under Rule

9

803(6)).

Of course, neither Apple nor Google creates the *content* of the texts or emails they maintain in their businesses. So while the fact that exact copies of emails and texts are maintained by Apple and Google is one piece of the authentication puzzle, it is not by itself sufficient for admission as a business record. *See, e.g., United States v. Gal*, 606 F. App'x 868, 874-75 (9th Cir. 2015 (affirming trial court ruling admitting emails where certification showed that Yahoo made record of email and other evidence established that defendant sent them); *Cf. United States v. Penn*, 568 F. Supp. 3d 1135, 1141-42 (D. Colo. 2012) (finding that rules 902(11) and (13) by themselves were not sufficient by themselves to authenticate emails in case where government did not also present evidence and arguments under 901(b)(4)).

The content has to be authenticated using Rule 901(b)(3) or 901(b)(4). *See, e.g., Fluker*, 698 F.3d 999 (noting that in case where emails are between defendants it is impossible to authenticate using witness with knowledge under Rule 901(b)(1) and that, instead, such electronic communications can be authenticated based on circumstantial evidence under Rule 901(b)(4)); *United States v. Tank*, 200 F.3d 627, 630-31 & n.5 (9th Cir. 2000) (concluding that there was sufficient evidence to authenticate emails under Rule 901, that any concerns about alteration or deletion were introduced by the defendant himself, and that such deletions would go to weight of the evidence, not its admissibility); *United States v. Bertram*, 259 F. Supp. 3d 638, 642-644 (E.D. Ky. 2017 ("After considering the characteristics of the numerous emails at issue in this case as well as the context and background

10

testimony provided by the authenticating witnesses, the Court has little doubt that the emails are exactly what they purport to be, and this remains true regardless of whether the authenticating witness was a sender or recipient.").

The texts and emails here can be authenticated using the means and methods provided for in Rules 901(b)(3) and 901(b)(4). *Fluker* provides a good example. In that case email addresses indicated that an email was sent by a member of "MTE," which was a business organization used by the alleged conspirators. And the contents of those emails demonstrated that whoever sent the email had information that would only be known by a scheme "insider." 698 F.3d at 999-1000. This was sufficient for the items to be authenticated and other rules of evidence — like the one providing an exception to the hearsay rule for co-conspirator statements, provided a basis for admission. *Id.* at 1000. *See also* ; *Safavian*, 435 F. supp. 2d at 40 (D.C. 2006) ("The Court notes that it is possible to authenticate these e-mails through examination of the contents, distinctive characteristics, and appearance, and others by comparison to authenticated e-mails, and the jury is free to make its own examinations and conclusions.")

The rules of evidence do not apply at the upcoming *James* hearing. Fed. R. Evid. 104. The Court can consider the government's proffer, the testimony of the testifying agent, as well as all of the exhibits that will be presented, to consider whether the records the government will seek to admit are authentic under Rule 901(a) and admissible under exceptions to the hearsay rule set forth in 81(d)(2)(E) and 803(6). Just as in *Shults, Fluker*, *Bertram, Safavian* and *Kilpatrick* there is

11

overwhelming circumstantial evidence under 901(b)(4). that the texts and emails in the government's *James* proffer are authentic. The messages themselves include content that only "insiders" would know, such as the names of NAC's owners and employees, *see, e.g., James* log, ECF No. 341-1, # 20, 33, 36, 39, 73; background information related to Michael Tew's termination, *id.* # 23, 37, 108; references to specific bank account numbers, *id.* # 1, 196, 213, 216, 220, 288; references to financial information that could only reasonably be known by the Tews, *id.* # 278, 283, 295;  references to sham companies used to further the scheme, *id.* 199, 232, 253, 292; references to people involved in the scheme, *id.* #59, 212, 292;  texts that include business records related to the accounts being used, *id.* # 184, 267 and, in some cases, specific instructions to contact Kimberley at specific emails and phone numbers, *id.* # 160, 184, 270. As if this weren't sufficient enough, the "additional context" column provides other corroborating evidence that is independently self-authenticating and thus capable of being part of a 901(b)93) analysis.  Often, messages asking about fraud payments and invoices were sent and received right around the time other documents and records how that payments were, in fact, made. *Id.* # 282. Just as frequently, the messages would reference financial transactions that are independently corroborated in bank records or literally photographed by an ATM or a bank surveillance camera. *Id.* #284, 296, 315, 329, 332. All of this evidence makes it more than apparent that the texts and messages are what they purport to be: communications between and among Michael Tew, Kimberley Tew, and Jonathan Yioulos about their efforts to fleece NAC out of

millions.

In many cases, the government took spreadsheets from Apple and used Cellebrite software to render them in a more visually appealing way. An agent submitted an affidavit explaining that Cellebrite uses an electronic process that produces an accurate result under Rule 902(13).  The use of Cellebrite does not affect the underlying authenticity of the messages.  *See, e.g.,* Order, *United States v. Judkins*, 1:21-cr-00055-WJM, ECF No. 113 (Oct. 18, 2022) (concluding that data copied from an electronic devices is self-authenticating if accompanied by certification and citing cases from First, Second and Ninth Circuits).  The government could also just manually cut and paste the relevant texts from the spreadsheet and put them into a word file.  *See, e.g., Kilpatrick*, 2012 WL 3236727, at *6 (noting that government could take texts produced by cell phone company in excel file and extract them into WordPerfect to make them more readable). Using reliable software just saves time and makes everything look nicer for the Court and the jury.

### V.     Formal notice of intent to authenticate under Rule 902(11)

To the extent this motion does not already make it obvious, The government hereby provides formal written notice of its intent to offer the business records highlighted in the attached exhibit list under Rules 902(11) and/or 902(13). In some cases, the custodian provided a declaration for part of a production, but not for later productions.  The government intends to obtain 902 certifications for all of the relevant productions and intends to use these to-be-obtained certifications.

## VI.     Conclusion

This is not a situation where an *in limine* ruling will require speculation about what the evidence might be: the *James* hearing will make it very clear. Using the time spent on the *James* hearing to resolve as many legal issues as possible is the most efficient use of the Court's time and will ensure that the upcoming trial is not consumed with unnecessary interruptions related to evidentiary issues. *See* For all of the reasons set forth above, the government requests that in addition to a ruling on whether the statements in the *James* log are admissible under Rule 801(d)(2)(E), the Court also make rulings that government exhibits are authentic under Rule 901 and admissible under Rule 80-3(6).

<div style="margin-left: 50%">

COLE FINEGAN  
United States Attorney

By:     */s/ Bryan Fields*  
Bryan Fields  
Assistant United States Attorney  
U.S. Attorney's Office  
1801 California St. Suite 1600  
Denver, CO 80202  
(303) 454-0100  
Bryan.Fields3@usdoj.gov  
Attorney for the Government

</div>

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

<div style="margin-left: 50%">

*/s/ Bryan Fields*  
Bryan Fields

</div>

14

15

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because any resolution of it will be within the already-granted ends-of-justice continuances granted on March 17, 2023 ECF Nos. 317 and 318.

/s/ Bryan Fields
Bryan Fields

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 12th day of December, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to counsel of record in this case.

      s/ *Bryan Fields*
Bryan Fields
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
Bryan.Fields3@usdoj.gov