IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **MICHAEL AARON TEW, and**
2. **KIMBERLEY ANN TEW,** a/k/a Kimberley Vertanen,

    Defendants.

## GOVERNMENT'S RESPONSE TO ATLANTIC UNION BANK'S MOTION TO QUASH SUBPOENA

Last night, the defendants provided final notice that they intend to exercise their right to trial. Moreover, they confirmed that they remain uncompromising in their refusal to stipulate or otherwise productively confer regarding the government's Motion in Limine seeking a finding that certain business records the government intends to offer at the upcoming trial (a) are authentic under Rules 902(11) and 902(13), and (b) are admissible non-hearsay under Rule 803(6) of the Federal Rules of Evidence. *See* ECF No. 344.

As previously argued, the government's request for an order *in limine* is consistent with the Federal Rules, which expressly designed these certifications around the need to "eliminate unjustifiable expense and delay" at trial. Fed. R. Evid. 102. *See United States v. Komasa*, 767 F.3d 151, 155 (2d Cir. 2014) (describing procedure created as a result of 2000 amendments to the Rules of Evidence with goal

1

of avoiding "the expense and inconvenience of producing time-consuming foundation witnesses").

After the government filed its Motion in Limine (which remains pending), one of the subpoenaed custodians of records, Atlantic Union Bank (AUB), filed its own Motion to Quash. ECF No. 363. AUB argues that the law does not require live, in-person testimony from them (and, by extension, any of the total of the 20 custodians who will otherwise need to testify), absent either (a) a stipulation from the defense or (b) a ruling from the Court regarding the admissibility of business records.

As to this argument, the government agrees. It respectfully renews its plea for an order *in limine* making a finding that the business records the government intends to offer at the upcoming trial are authentic under Rules 902(11) and 902(13) and admissible non-hearsay under Rule 803(6). ECF No. 344.[1] Entering the requested order—one that is authorized and encouraged by the Federal Rules and the relevant caselaw—would in no way prejudice the defendants, who retain the right to issue their own subpoenas to any custodians they seek to examine or otherwise use to rebut the government's offers of proof.

The government has tendered or will tender shortly Rule 902(11)/902(13) declarations for all of the respective records it intends to offer under Rule 803(6) at

---

[1] As previously briefed, the government understands that it needs to lay proper foundation for the <u>content</u> of communications contained within certain business records, such as text messaging and email records. *See* Ex. 344 at 10. However, this concept does not stand in the way of the Court ruling that such records are, in and of themselves, certified business records for the purposes of that part of their foundation.

the upcoming trial. With three exceptions,[2] those declarations were previously entered into the record on December 19, 2024. *See* ECF No. 350 (Gov't Ex. List at *James* hearing).

For ease of reference, the custodians and a general description of the types of records at issue are as follows:

|  | Custodian Name | Exhibit Nos. & Corresponding Bates No. | Type of Record |
|---|---|---|---|
| 1. | **American Express** | 1129 (AMEX_00001) | Account Records |
| 2. | **Apple** | 1115 (SW_FIL_342321-22) | Subscriber Information & Other Messaging-Service Related Records |
| 3. | **ANB Bank** | 1101 (ANB_00002) <br> 1102 (ANB_00035) | Bank Records |
| 4. | **Atlantic Union Bank** | 1100 (ACNB_00101) | Bank Records |
| 5. | **AT&T** | 1127 (ORD_20003-04) | Subscriber Information & Other Messaging-Service Related Records |
| 6. | **BBVA** | 1103 (BBVA_00002) <br> 1104 (BBVA_00280) | Bank Records |
| 7. | **GoDaddy** | 1108 (ORD_19742) | Account Records |

---

[2]   Exs. 1100-1128 constitute declarations that the government had received as of the date of the *James* hearing. Since then, the government has received three additional declarations, from American Express (Ex. 1129); National Air Cargo (Ex. 1130); and McDonald Automotive Group (Ex. 1131). These declarations are of a similar format to the others and have been provided in discovery to the defense.

|  | Custodian Name | Exhibit Nos. & Corresponding Bates No. | Type of Record |
|---|---|---|---|
| 8. | **Google** | 1109 (ORD_17711)<br>1114 (SW_FIL_00094-99)<br>1116 (SW_FIL_11402-07)<br>1117 (SW_FIL_11557-61)<br>1122 (ORD_19955-61)<br>1123 (ORD_19962-76)<br>1124 (ORD_19977-91)<br>1125 (ORD_19992-96)<br>1126 (ORD_19997-20002) | Subscriber Information & Other Messaging-Service Related Records |
| 9. | **Guaranty Bank & Trust Company** | 1105 (GUAR_00001) | Bank Records |
| 10. | **Kraken** | 1106 (KRKN_00001) | Know Your Customer, Account, & Transaction Records |
| 11. | **McDonald Automotive Group (Audi)** | 1131 (AUDI_00042) | Account & Transaction Records |
| 12. | **National Air Cargo** | 1130 (NAC_E_204515-16) | Email Records |
| 13. | **Navy Federal Credit Union** | 1107 (NAVY_00002-03)<br>1128 (NAVY_02211-12) | Bank Records |
| 14. | **Regions Bank** | 1111 (REG_00001) | Bank Records |
| 15. | **Simple Finance Technology Corp.** | 1112 (SFT_00001) | Account Records |
| 16. | **Signature Bank** | 1113 (SIG_0678) | Bank Records |
| 17. | **Vcorp** | 1118 (VCORP_00001) | Account Records & Emails |

|     | Custodian Name  | Exhibit Nos. & Corresponding Bates No. | Type of Record |
| --- | --- | --- | --- |
| 18. | **Verizon** | 1110 (ORD_19935) | Subscriber Information & Other Messaging-Service Related Records |
| 19. | **Wells Fargo Bank** | 1119 (WFB_00144-46) <br> 1120 (WFB_01054-58) | Bank Records |
| 20. | **Wynn Las Vegas** | 1121 (WYNN_00002) | Account & Business Records |

If the Court agrees that those declarations are sufficient, then the government will withdraw its subpoena to AUB, and to the other custodians covered by a court ruling. That withdrawal will render AUB's present motion to quash—and any other motions to quash that have been or may be filed by other custodians—moot.

As to AUB's other arguments, however, the motion to quash should be denied. *First*, the business records are the best evidence of Michael Tew's receipt of thousands of dollars in fraud proceeds. The government must prove its case beyond a reasonable doubt, and its presentation should not be hampered by AUB's protestations. Moreover, to the extent the defendants can raise a genuine challenge to the authenticity of those records (and, to be clear, the government believes they cannot), they should be entitled to cross-examine the custodians of those records at trial. *Second*, it is not "abusive" to gently serve legal counsel with a subpoena by mail rather than in person. *And finally*, to the best of its ability within the relevant statutes and regulations, the government will alleviate the burdens of in-person testimony by paying for all of the witness's travel and expenses as the statutes provide.

Ultimately, it is not too much to ask a corporate citizen to take a small amount of time to provide testimony in a case involving a victim who lost more than $5 million dollars. Should the Court deny the government's Motion in Limine, AUB's Motion to Quash also should be denied.

**I.  If deemed necessary, it is not unreasonable or oppressive to send a live witness to authenticate records showing how Michael and Kimberley Tew used sophisticated means to siphon ill-gotten fraud proceeds.**

As an initial matter, the government agrees that live testimony should not be required, and that the rules of evidence allow for the admission of business records using appropriate declarations. ECF No. 344 (articulating government's position regarding admissibility and authentication of business records). But the government has the burden of proving its case beyond a reasonable doubt and, until it receives a ruling that declarations provided are sufficient, it must take steps to ensure it can lay an appropriate foundation for its exhibits.

As sometimes happens in the run-up to trial, the government is moving as quickly as it can to identify the necessary exhibits. Initially, the government inadvertently provided AUB with two copies of the same exhibit, rather than the two correct, distinct exhibits it intends to offer at trial. For clarity, the two exhibits the government intends to admit (currently designated as Exhibits 312 and 363), are the best and only evidence showing the Tews' deployment of one particular artifice for advancing their fraud. In this instance, that artifice employed AUB as one of the facilities of the fraud.

More specifically, the Tews are accused of fraudulently obtaining NAC's money

under the false pretense that it was being used to pay vendors (including, *inter alia*, PM). In many cases, the Tews simply had co-conspirator Jonathan Yioulos send the money for fake invoices directly to their personal bank accounts. But in the two incidents involved with Exhibits 312 and 363, the Tews used a more sophisticated technique: They had Yioulos send the money to a friend at PM, who then transferred it back to them. Those transfers are documented in AUB's certified documents, specifically PM's bank records. *See* Ex. 312, page 3; Ex. 363, page 4. Without this evidence, the jury may be left under the misimpression that PM—which was a real company—actually received and kept substantial fraud proceeds, rather than the Tews.

The government must be granted the ability to meet its evidentiary burden. Without these particular exhibits, which clearly show how the money moved in and out of PM's bank accounts to the Tews' profit, the jury might be left with some doubt as to whether PM actually provided services for NAC or otherwise was entitled to the money. But the records show that the "real" PM did not have expenses associated with the provision of "consulting services" to NAC, and that, indeed, the Tews were the substantial and ultimate beneficiaries of the fraud. No other exhibits can show this component of the fraud as clearly. The records are thus not cumulative of any other exhibits or testimony.

Testimony from AUB also is not cumulative simply because it duly provided the requested declaration to the government. Yes, the government agrees that such a declaration should be sufficient, and yes, the government believes that a proper

7

declaration allows for the admission of the records without live testimony.[3] But this is not the government's call to make. The Court may disagree with the government's position, and if so, only a witness who can provide live foundation testimony can satisfy the government's burden. And the only entity that can provide that live testimony is AUB. To borrow defendant Kimberley Tew's example, no other witness can talk about AUB's own record-keeping system, rendering such testimony neither cumulative nor duplicative. *See* ECF No. 360 at 3.

AUB's response is that the exhibits do not relate to charged counts. But the government is not required to bring *pro forma* charges related to every single fraudulent transaction before evidence related to a larger scheme can be admitted. Moreover, the records unquestionably fall within the conduct described in the conspiracy counts. As described above, the records illuminate one particularly important facet of the scheme—the laundering of fraud proceeds through a real company—as a means of further distancing the Tews from their criminal acts.

Moreover, offering the records for a pre-trial ruling is not only necessary to dispel any reasonable doubt: it will actually *save* judicial resources over the long term by creating a trial record of sophisticated means so that the Court does not need to sift through that evidence again at sentencing. If the Tews are indeed convicted, this

---

[3] This is all the more true where, as here, the defense has raised no credible argument as to the authenticity of these records. *See* ECF No. 359 at 1 (apparently conceding the authenticity and non-testimonial nature of the non-cell-phone business records) and ECF No. 360 (generally raising the specter of wanting additional foundation, without elaboration or specificity as to what foundation it believes it needs to explore).

same issue will arise when the government needs to prove its burden at the sentencing. As such, taking "thirty seconds" now, ECF No. 363 at 5, at this stage, to help establish a clear record on losses may save hours of litigation time later wrangling over these numbers later on.

## II. The government's service of AUB was appropriate; to the extent AUB complains service was defective, the government will cure; and this dispute should not be decided on procedural technicalities.

Prior to attempting service, the FBI contacted AUB's legal department about the best way to serve a subpoena and was told to send it via mail. This response made sense at the time, given that it is precisely what Federal Rule of Criminal Procedure 49 contemplates. Now, AUB—which clearly has actual notice of the subpoena—claims that service by mail was somehow "abusive." How, precisely, it is abusive for the government to send a subpoena by mail instead of sending agents to serve corporate officers in-person is never stated.

In any case, service by mail is appropriate. Rule 17(d) simply says that that a subpoena must be "delivered." True, some courts and treatises have declared that use of this word, as cross-referenced to Federal Rule of Civil Procedure 45(b), requires that litigants stalk their quarry and physically put paper in their hands. But those courts and treatises don't typically engage in any kind of textual legal analysis. *See Doe v. Hersemann*, 155 F.R.D. 630, 631 (N.D. Ind. 1994 (surveying cases requiring personal service and then noting "not one of these cases explains its conclusion, however; each simply refers to the text of Rule 45, which, as noted, does not command personal service. The persuasive authority of these cases is, accordingly, de minimis,"

9

and then lamenting that the treatises are no better: "the primary civil procedure treatises assert without explanation that personal service of a subpoena is required by Rule 45. Like the district court opinions cited above, the failure of these otherwise persuasive texts to explain their conclusions severely undermines their usefulness here.").

The government has not identified any direct Tenth Circuit precedent as to this dispute. However, the government encourages the tools of statutory interpretation and the deployment of simple common-sense to reach a reasoned conclusion. As one court has persuasively reasoned, the word "delivery" simply means "'the act by which the res or substance thereof is placed within the actual ... possession or control of another.'" *Id.* at 630 (quoting Black's Law Dictionary). And as the Seventh Circuit has explained, "we see no reason to inflate the costs of litigation by ruling out this sensible option for serving a subpoena (along with the necessary fees) and requiring parties to hire a second person for service, at least in the absence of any language in the Rule that compels such a result." *Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir. 2012).

There is no question here that AUB has actually received the subpoena: They attached it to their motion. *See* ECF No. 363-1. Quashing the subpoena on exceedingly persnickety grounds would do nothing to efficiently resolve this litigation and would, instead, simply impose <u>more</u> costs on all of the parties and on the Court down the line. In any event, given AUB's complaints, the government dutifully sent an FBI special agent down to AUB's headquarters today (January 18, 2024) to provide

10

in-person service. This argument is now moot, and puts the substance of AUB's argument squarely before the Court without impediment.[4]

### III. To the extent that the subpoena burdens AUB, the government promises to alleviate that burden to fullest extent possible available under the law.

Finally, AUB has submitted a declaration stating that the travel and time incurred by requiring in-person testimony will cause a "significant burden to AUB's Regulatory Processing-Subpoenas Team." 363-3. On one hand, and as repeatedly expressed to AUB and to the total of 20 custodians of record involved, the government is sympathetic to these burdens and has sought to alleviate such burdens via its pending Motion in Limine.

Apart from the obvious, however, the supposed burden to AUB is unidentified and the description of how such a burden would be uniquely significant to AUB is unexplained. The declaration also appears to over-inflate such burden, claiming that it will take 2-3 days for someone to travel from Richmond to Denver. A quick look at widely-available websites for booking travel shows that both United Airlines and Southwest offer convenient non-stop flights between Richmond and Denver. The government can and will do everything it can to schedule witnesses to limit overnight stays (it is, after all, picking up the tab and conscious of the costs).[5] In the alternative,

---

[4]  *See, e.g.*, *United States v. Sandoval*, No. 10-20243-CR, 2010 WL 2757188, at *3 (S.D. Fla. July 13, 2010) (electing to reach the merits of a custodians motion to quash over ruling on argument regarding defective service, in recognition of interests of justice and judicial economy).

[5]  *See* 28 U.S.C. § 1825 (requiring payment of fees).

11

should the Court require testimony, the parties can work with defense counsel to determine whether they would object to what is clearly non-testimonial evidence being presented by video.

### IV. Conclusion

AUB is right to declare that it is a waste of time and resources to provide testimony *where not required.* ECF No. 363. But the government does not know and will not know whether the testimony is required until it knows whether its declarations provide a sufficient foundation to satisfy the Court. If the Court concludes that the declarations are insufficient, or that live testimony is otherwise necessary, then, by legal definition, the testimony is required and the government would respectfully request that the Court enforce the subpoena. One would hope that AUB would expect and appreciate the same should it ever be the victim of a crime. Justice for victims demands proof beyond a reasonable doubt and proving restitution will often require the use of bank records. Indeed, compliance with such subpoenas should be a natural and expected ancillary responsibility of AUB's business, something that AUB's establishment of a dedicated "Regulatory Processing-Subpoenas Team" tacitly acknowledges.

The Tews are entitled to a jury trial. But they are not entitled to needlessly and unnecessarily burden third-party custodians and the Court by obstinately demanding in-person testimony that is not required by the Federal Rules, caselaw, or the U.S. Constitution. To ensure that the upcoming trial is focused and efficient, the government would ask that the Court review Exhibits 1100-1128 offered at the James Hearing and, for all of the reasons previously articulated in the government's

Motion in Limine, issue a ruling making the preliminary finding under Federal Rule of Evidence 104(a) that the government's proposed exhibits are authentic business records. By extension, the government also requests that the new declarations (related to Amex, Audi, and NAC's email records) be similarly declared certified and authentic non-hearsay records. The defendants can challenge the exhibits on any other ground and, should they believe there are real issues of authenticity, can issue their own subpoenas to records custodians. Proceeding otherwise simply encourages additional litigation over motions to quash from AUB and other custodians and unnecessarily consumes judicial resources.

COLE FINEGAN
United States Attorney

By:   */s/ Bryan Fields*
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By:   */s/ Sarah H. Weiss*
Sarah H. Weiss
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Sarah.Weiss@usdoj.gov
Attorney for the Government

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Bryan Fields*
Bryan Fields

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because any resolution of it will be within the already-granted ends-of-justice continuances granted on March 17, 2023. ECF Nos. 317 and 318.

*/s/ Bryan Fields*
Bryan Fields

14

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of January, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to counsel of record in this case.

s/ *Sarah H. Weiss*
Sarah H. Weiss
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
Sarah.Weiss@usdoj.gov