IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Civil Action No. 1:20-cr-00305-DDD

UNITED STATES,

    Plaintiff,

v.

**MICHAEL AARON TEW**;
**KIMBERLEY ANN TEW**; and
JONATHAN K. YIOULOS,

    Defendants.

## ORDER REGARDING AUTHENTICATION OF EXHIBITS

The government has asked the court to find, prior to trial, that approximately 900 exhibits—primarily texts, emails, and instant messages shared among the defendants; bank records; account and subscriber records; and surveillance photographs—are authentic, subject to the business-records hearsay exception, and therefore presumptively admissible. Doc. 344; Doc. 344–1 (highlighted list of exhibits subject to the government's motion). The government moves *in limine* to admit these documents, arguing that requiring custodial witnesses to authenticate these exhibits at trial would be burdensome and tedious. But Defendants Mr. and Mrs. Tew contest, at least in part, the authentication of these exhibits. The government's motion is granted in part and denied in part as described below.

## BACKGROUND

The facts of this case are well known to the parties, so the court will only recite them briefly. On February 3, 2021, a grand jury indicted

- 1 -

Defendants Michael Tew, Kimberley Tew, and Jonathan Yioulos on dozens of counts for various offenses including wire fraud, conspiracy to commit wire fraud, and conspiracy to commit money laundering. Doc. 83. The government alleges that the defendants defrauded various entities affiliated with N.A.C. Inc. (collectively, "NAC") that provided "freight forwarding solutions, to include by charter and airlift." *Id.* at 1. NAC also operates as an airline. *Id.* Mr. Yioulos has pleaded guilty, Doc. 154, and only Mr. and Mrs. Tew intend to go to trial at this time.

The court recently held a *James* hearing addressing several hundred statements that the government sought to admit under the co-conspirator hearsay exclusion pursuant to Federal Rule of Evidence 801(d)(2)(E). Doc. 355. The court found that most of the proffered statements were not hearsay while reserving potential rulings on other admissibility issues. Doc. 361. The government docketed the *James* hearing statements themselves, Doc. 341–1, and separately submitted the exhibits for the hearing to the court.

The government has also separately moved to admit, for purposes of trial, the approximately 900 exhibits submitted prior to the *James* hearing. Doc. 344. Both Mr. and Mrs. Tew filed responses opposing the government's motion at least in part. Docs. 359, 360. During the pendency of that motion, the government sent at least one subpoena to a third-party bank to provide live testimony at trial from a custodian of records regarding two such exhibits. *See* Doc. 363. That bank has moved to quash the subpoena, arguing that its submitted declaration renders the bank-record exhibits admissible and that requiring live testimony would unduly burden it. *Id.* The government has since filed a response to that motion to quash which also included updates on several custodial declarations that had not yet been received as of the *James* hearing. Doc. 366.

## APPLICABLE LAW

Under Federal Rule of Evidence 803(6), certain "business records" are not hearsay. Such records of "an act, event, condition, opinion, or diagnosis" are generally not excluded as hearsay if (1) they were made at or near the time by someone with knowledge; (2) "the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;" (3) "making the record was a regular practice of that activity;" (4) and the offeror provides either testimony or a certification from a custodian of records showing all of the above. Fed. R. Evid. 803(6). Even if those conditions are met, however, the exception does not apply if the opponent shows "that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." *Id.*

Under Federal Rule of Evidence 902(11), if a business record falls within Rule 803(6)'s exception—and when supported by a sufficient declaration from a custodian of records—it is self-authenticating as well. *United States v. Ayelotan*, 917 F.3d 394, 402 (5th Cir. 2019). Certain records "generated by an electronic process or system that produces an accurate result" similarly may be self-authenticating if supported by an appropriate declaration from a custodian of records. Fed. R. Evid. 902(13).

Authentication of documents that are not self-authenticating can be achieved in a variety of ways, including through witness testimony. Fed. R. Evid. 901. Such authentication requires "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). But "the bar for authentication of evidence is not particularly high." *United States v. Isabella*, 918 F.3d 816, 843 (10th Cir. 2019); *see also* 31 Charles Alan Wright & Arthur R. Miller, Federal Practice

and Procedure, § 7104 (2d ed.) (characterizing this standard as "not exacting" and that courts generally emphasize "the minimal nature of the showing required").

## DISCUSSION

The government's motion addresses about 900 exhibits from at least twenty custodians. *See* Doc. 366 at 4–5. These exhibits tend to fall into one of two general categories: (1) bank, credit-card, and other business records; and (2) subscriber and messaging records related to various communications, mostly attributable to the defendants. *Id.*

Mr. Tew does not contest the authenticity of the vast majority of these exhibits. Doc. 359 at 1. Instead, he lodged a targeted objection to the government's proffer to authenticate certain messages and emails modified with "Cellebrite" software. *Id.* at 1–4. Mrs. Tew, on the other hand, seems to object more broadly to the government's proposal to not have custodians testify at trial, at least based on the evidence presented as of December 22, 2023 when she filed her response. Doc. 360.

### I.     Bank and Business Records

Much, if not all, of the proposed bank records appear to fall neatly within the business records exception of Rule 803(6) and the self-authentication provision of Rule 902(11). Indeed, certificates from custodians that "track the language of Rule 803(6) nearly word for word" tend to render such records self-authenticating. *See Ayelotan*, 917 F.3d at 402 (admitting email records based on custodial certificates from Google and Yahoo!).

Mr. Tew does not contest the authenticity of these documents, and Mrs. Tew fails to meaningfully contest the authenticity of such documents assuming that the appropriate certificates are made available.

- 4 -

Docs. 359, 360. Mrs. Tew is correct, however, that it remains somewhat unclear if, when, and how the various declarations have been disclosed to the defendants, let alone the court. While the government submitted *some* of the relevant custodial declarations for purposes of the *James* hearing, almost none of them have been docketed, and the government seems to admit that it has not even provided the court with at least three of them. *See* Doc. 366 at 3 n.2 (describing purported declarations from American Express, National Air Cargo, and McDonald Automotive Group that the government had not received prior to the *James* hearing and that the government still appears not to have filed or provided to the court).

Given this piecemeal approach, the court cannot give the government a definitive ruling on all of the bank records at this time. But the court is confident that the bank records in this case—if accompanied with an appropriate declaration mirroring the one provided by Atlantic Union Bank, as an example, *see* Doc. 363–2—are authentic, non-hearsay business records and will *not* require live testimony from a custodian of records for purposes of authentication. Assuming that all of the declarations meet the requirements of Rule 803(6) and 902(11), it therefore appears that most if not all of the records from entities such as American Express, Atlantic Union Bank, BBVA, Guaranty Bank & Trust Company, Regions Bank, Signature Bank, and Wells Fargo Bank are authentic and non-hearsay. But given that the court lacks a complete record to rule on all of these exhibits, it withholds a final ruling at this time.

Nevertheless, given third-party Atlantic Union Bank's pending motion to quash, the court does find, at this time, that exhibits 312 and 363 are authentic, non-hearsay business records that are presumptively admissible. Atlantic Union's custodial declaration, Doc. 363–2, meets the requirements of Rules 803(6) and 902(11), and the court sees no basis

for finding—nor have defendants attempted to show—that the source of these exhibits or the circumstances of their preparation lack trustworthiness under Rule 803(6)(E). Given the government's promise to withdraw the witness subpoena sent to Atlantic Union if the court deemed the relevant exhibits admitted, Atlantic Union's motion to quash is denied as moot with leave to re-file if necessary.

## II.     Account, Subscriber, and Messaging/Email Records

The government also seeks to admit various subscriber and account records and messaging records, such as those obtained from Google and Apple. Much, but not all, of these exhibits seem to relate to communications involving the defendants, including the statements addressed at the *James* hearing. The more straightforward account and subscription records, it seems, qualify as business records subject to self-authentication, like the bank records discussed above. But the messaging records, including those extracted from accounts purportedly owned by the defendants, present a double hearsay issue:

> Here, each email represented two "statements" for purposes of the Federal Rules of Evidence. First was the transmittal certificate—effectively, the email provider's statement that one user wrote and sent a message to another user at the recorded time. Second, the content of each email is also a statement. We take them in that order.

*Ayelotan*, 917 F.3d at 402.

As to the first hearsay and authentication layer—*e.g.*, that a certain message was associated with a certain account or that a certain messaging account transmitted a certain message—the government's proffered declarations appear to meet the business-record exception. *See id.* (finding that certificates from Google and Yahoo custodians rendered "statement that one user wrote and sent a message to another user at the

recorded time" non-hearsay and authentic). The court therefore does not see a need for custodians from Apple or Google, for example, to testify at trial. Their declarations, so long as they meet the requirements of Rules 803 and 902, are sufficient.

The content of the emails is another matter—something the government appears to concede. *See* Doc. 344 at 10–13 (noting that the certification from custodians is just "one piece of the authentication puzzle"). Indeed, "Rule 902(11) would not apply if the email was offered to prove the content of the email was accurate unless the email was itself created in the regular course of business and it was the regular practice of the business to create such items." 31 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 7145 (3d ed.). For this second hearsay layer, the government suggests that authentication of the substance of the emails may be achieved via Rule 901. Assuming the defendants themselves will not authenticate these emails at trial, such authentication may be accomplished through a review of circumstantial evidence like the characteristics and contents of the messages which suggest that the content of those messages were, in fact, sent from one person to another. *See, e.g.*, United States v. Fluker, 698 F.3d 988, 999 (7th Cir. 2012) (affirming authentication of defendants' emails based on context clues in email address and substance of the emails themselves).

The court agrees that—at least for the statements addressed in the court's *James* order[1]—the context clues and other characteristics of various messages are sufficient to deem those messages authentic under Rule 901. But the court is not able to grant a blanket admissibility ruling as to *all* of those hundreds of messages at this time. It remains unclear

---

[1] With the exception of certain messages created using Cellebrite software as addressed below.

how many of those messages the government will actually introduce at trial. And given the variety of different messages and accounts at issue (including the possibility that certain individuals used *other* individuals' accounts to send messages), a blanket ruling would be inappropriate at this time. Nevertheless, based on the review made for purposes of the *James* order, the court notes that a large majority of the messages will not be kept out on authenticity grounds. And the court supposes that the government will put on a witness or witnesses, such as the IRS agent who testified at the *James* hearing, who can not only help authenticate the messages at trial prior to their introduction into evidence but also provide context to the jury regarding those messages' content.

### III.  Cellebrite-Created Messages

Mr. Tew's objection on authenticity grounds relates to certain exhibits created with Cellebrite software that extracts raw data from cell phones.[2] Mr. Tew argues that this software does not merely "copy" data from a cell phone but instead involves some discretion on the part of a forensic examiner using the software to determine what data to include or exclude from a forensic image of the phone. Because of this, Mr. Tew argues, any Cellebrite-created exhibits are not business records and therefore not self-authenticating. The government counters that the software merely copies and renders the underlying data in a more aesthetic way—such as by converting messages listed in a spreadsheet into a more readable format. Given this, the government argues that Cellebrite generates a record "that produces an accurate result" pursuant to Rule 902(13). The government therefore seeks to authenticate Cellebrite reports with a declaration only. Doc. 344 at 13.

---

[2] Mrs. Tew does not raise a specific objection regarding Cellebrite exhibits.

In support of its argument, the government cites an unpublished decision from this district purportedly citing authority "from [the] First, Second and Ninth Circuits." Doc. 344 at 13. In that case, Judge Martinez cited Rule 902(14)—a rule allowing authentication of data "copies" from an electronic device as opposed to a process that generates "accurate results"—as the basis for authenticating Cellebrite data while addressing a separate issue regarding expert witness testimony. *United States v. Judkins*, 1:21-cr-00055-WJM, ECF No. 113 (Oct. 18, 2022).[3] And all of the out-of-circuit authority cited in that case addressed whether certain testimony about cell phone extractions amounted to expert testimony rather than lay testimony—not whether Cellebrite extractions themselves were self-authenticating. *United States v. Montijo-Maysonet*, 974 F.3d 34, 48 n.12 (1st Cir. 2020) (addressing police officer who *testified at trial*, subject to cross-examination, on extracted cell phone data yet "offered no assurances about how well the extraction software performed" and noting that defendant did not lodge authentication challenge); *United States v. Seugasala*, 702 F. App'x 572, 575 (9th Cir. 2017) (similar); *United States v. Marsh*, 568 F. App'x 15, 16 (2d Cir. 2014) (addressing live testimony from FBI agent regarding extraction process for Cellebrite reports).

The government has provided no specific authority for finding that the Cellebrite-produced reports in this case are self-authenticating under Rule 902(13). As Mr. Tew suggests in his motion, it appears that

---

[3] While the government suggests that Cellebrite merely "copies" data from cell phones or is equivalent to copy-pasting the raw data into a text editor, it relies on Rule 902(13) (addressing processes generating an "accurate result") instead of Rule 902(14) (addressing copying of data). The government has not met its burden to show that the Cellebrite-created reports are mere copies, perhaps as partly evidenced on its failure to rely on Rule 902(14).

- 9 -

Cellebrite is a tool that allows users to create a variety of reports or documents—possibly ranging from mere copies of raw data to selective copies of raw data, or even to exhibits incorporating external information inputted by the Cellebrite user. It remains unclear in this case where, on that spectrum, the proffered exhibits fall (or whether there is variance among the exhibits). Nor has the government fully explained the process by which the exhibits at issue were generated. So the court finds that, for Cellebrite exhibits, the government must provide a competent witness or other sufficient evidence at trial to address authenticity and/or a foundational basis before those exhibits will be admitted into evidence. *See United States v. Buyer*, No. 22 CR. 397 (RMB), 2023 WL 6805821, at *3 (S.D.N.Y. Oct. 16, 2023) (addressing authentication of Cellebrite reports under Rule 901 via introduction of live testimony of agent subject to cross examination and introduction of supporting exhibit regarding extraction process). As Mr. Tew suggests, it seems that the forensic examiner who extracted the data would be an appropriate witness for this purpose. And the introduction of one witness on this discrete issue will not meaningfully burden the government or unnecessarily extend the trial.

## CONCLUSION

The government's Motion in Limine, **Doc. 344**, is **GRANTED IN PART** and **DENIED IN PART** as outlined above.

The court has provided its presumptive rulings on authenticity above, subject to further discussion at the Trial Preparation Conference on January 30. As described above, a large majority of the 900 exhibits at issue are likely authentic, non-hearsay business records that will not require authenticating live witnesses at trial. But to simplify and organize the authentication process, the government **must file on the**

**docket, on or before January 24, 2024**, all custodial declarations it intends to use to support authentication of trial exhibits. Defendants **may file any *specific* objections to those declarations on or before January 29, 2024**. And the court will address any remaining authentication issues at the Trial Preparation Conference on January 30.

Also, as discussed above, Atlantic Union Bank's Motion to Quash, **Doc. 363**, is **DENIED AS MOOT** given the court's ruling that exhibits 312 and 363 are authentic, non-hearsay business records. Atlantic Union may re-file a motion to quash if necessary.

DATED: January 19, 2024        BY THE COURT:

~~Daniel D.~~ Domenico
United States District Judge