IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Criminal Action No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**MICHAEL AARON TEW**,
**KIMBERLEY ANN TEW**, and
JONATHAN K. YIOULOS

      Defendants.

---

## ORDER REGARDING MOTIONS IN LIMINE AND PRE-TRIAL ISSUES

---

The court held a Trial Preparation Conference in this case on Tuesday, January 30, 2024. At the conference, the Court provided several presumptive orders on pre-trial issues from the bench. This written order memorializes those orders and clarifies a few remaining issues. If there is any conflict between the Court's oral orders made at the Trial Preparation Conference and this written order, this written order will control.

## I. Admissibility of Proffer Statements

Mr. and Ms. Tew challenge the admissibility of statements they made in proffers to the government in 2020. Docs. 370, 373.

The relevant language in the proffer agreements (styled as letters to defense counsel) reads as follows:

The government may also use any statements made by your client during the proffer either as evidence or for cross-examination, at trial or any other stage of the criminal prosecution, if your client later testifies, offers other evidence, or presents a position (including through affidavit or in argument) that contradicts statements made by your client during the proffer. By signing this letter, you and your client specifically agree that the government may use your client's statements or information in the circumstances described above. *See United States v. Mezzanatto*, 513 U.S. 196 (1995).

Docs. 370-1 at 2, 373-1 at 2.

As noted at the conference, there is nothing inherently unconstitutional about even more extensive waivers to Rule 410's general excludability of plea-bargaining discussions. *See United States v. Mitchell*, 633 F.3d 997, 999 (10th Cir. 2011) (allowing government to introduce proffer statements in its case-in-chief based on broader waiver agreement). Defendants' more generic arguments that such a waiver *per se* violates their Fifth and Sixth Amendment rights, therefore, are unpersuasive.

Nor have the defendants[1] met their burden to show that their entry into these agreements was not knowing and voluntary. *U.S. v. Smith*, 770 F.3d 628, 638 (7th Cir. 2014) (defense has burden to show waiver not voluntary and knowing and citing *Mezzanato*, 513 U.S. at 210); *U.S. v. Nelson*, 732 F.3d 504, 516 (5th Cir. 2013) (holding similarly). While Ms. Tew has made vague assertions that her agreement was not entered into "knowingly," it became clear at the conference that this was actually a dispute about the scope of the agreement's terms. Because these agreements are treated as contracts, the court sees no reason to hold an evidentiary hearing to interpret their scope, and Ms. Tew has provided no specific authority for doing so here.

---

[1] It appears that only Ms. Tew raises such an argument.

As to scope, the government appears to take a very expansive reading of this waiver, suggesting that counsel—through argument or cross-examination questions—may trigger the waiver in many ways, all as discussed at the conference. On the other end, defendants say that *nothing* counsel does can trigger this waiver and that only testimony from one of the defendants could trigger the waiver.

Neither position is quite correct. It is true that most of the cases cited by the government focus on impeachment though contrary statements made by defendants themselves (*Mezzanato*) or introduction of contradictory evidence (*Krilich*). But the defendants' view that no attorney argument could trigger the waiver provision is not a fair reading of the waiver agreement (particularly its reference to taking a position or presenting an argument, which are generally things that a client does through an attorney). The government's apparent reading, on the other hand, seeks too much and may preclude the defendants from attacking the sufficiency of the evidence presented and putting the government to its burden of proving their guilt without allowing the proffer statements into evidence. *See United States v. Oluwanisola*, 605 F.3d 124, 133 (2d Cir. 2010) (vacating guilty verdict where court allowed proffer statements into evidence based on similar waiver agreement after defense counsel challenged witness's credibility and presented opening argument challenging the sufficiency of the evidence).[2]

---

[2] As an initial matter, the government has cited no Tenth Circuit authority on a sufficiently similar waiver provision. As discussed above, *Mitchell* addressed a much broader waiver that included no similar "trigger" provision and instead amounted to a flat waiver of objecting to the entire proffer being admitted if the defendant withdrew his guilty plea. 633 F.3d at 999. *United States v. Jim* dealt with a similarly broad waiver that does not match the facts at issue here. 786 F.3d 801, 806 (10th Cir. 2015).

The government relies on *United States v. Krilich* for the proposition that an attorney's cross-examination of a government witness can amount to "taking a position" contrary to proffer testimony, therefore invoking a similar waiver to the one seen here. 159 F.3d 1020, 1024-25 (7th Cir. 1998). As noted above, the court agrees, as a general principle, that cross-examination alone *could* trigger the waiver at issue here. But the devil is in the details. The waiver should not be implicated lightly; instead, the proffer statements should only come into evidence if counsel elicits a specific, direct, factual contradiction by a witness of what was said in the proffers.  *See id.* at 1025 (noting that the prosecutor's position was "as unrealistic as" the defendant's but affirming inclusion of the proffer statements where defense counsel elicited a specific, contradictory factual statement from a witness).

Indeed, the *Krilich* court held that, "statements are inconsistent only if the truth of one implies the falsity of the other" and provided several examples of both consistent and inconsistent statements. *Id.* at 1025-26. Those examples are useful and should serve as a general guide for the parties during trial on what may and what may not trigger admission of certain proffer statements. And the *Krilich* court's reasoning and examples match closely with the reasoning and examples provided in *Olu-wanisola. See* 605 F.3d at 133 (noting, as an example, that "there is no inconsistency or contradiction between a defendant's admission that he robbed the bank and his challenge to a witness's testimony that the witness saw the defendant rob the bank and recognizes the defendant.").

Given this, the court will adhere to a few principles in policing this issue at trial. First, the most likely reason that proffer statements would be admitted would be if either defendant testifies and makes a

statement contrary to either of their proffers. Second, as a general matter, attorney argument or questioning could trigger the waiver provision here if it clearly seeks to introduce evidence that is contrary to the proffer statements. But in gray areas, the court will view the scope of this waiver narrowly in the context of argument or questioning by attorneys, particularly for purposes of opening and closing arguments. As discussed in *Krilich* and *Oluwanisola*, any contradictions here must be specific, fact-based, and truly inconsistent. Merely questioning a witness's credibility or perception of certain events, attacking the sufficiency of the evidence, or more generally claiming innocence (even on an element-by-element basis) will not trigger the waiver provision. *See Oluwanisola*, 605 F.3d at 132 (holding that defense counsel should have been able to reference certain elements and attack the sufficiency of the evidence as to those elements in opening statement without triggering proffer waiver provision).

In this case like every other, counsel, of course, may not make materially false statements of fact or law or offer evidence that they know to be false. Colo. Rules of Professional Conduct 3.3. Adhering to this ethical boundary seems likely to eliminate much of the possibility that defendants' counsel might introduce evidence or argument contradicted by their own clients' sworn proffer statements. Arguing that their clients are not guilty or that the government's evidence does not prove particular facts or elements of the charges is well on the safe side of both this ethical rule and the proffer agreement. But eliciting truly inconsistent factual statements from a witness, or making arguments that are known to be false, will open the door to admitting contradictory statements made during the proffers.

Given all this, Defendants' motions, **Docs. 370 and 373**, are **GRANTED IN PART** and **DENIED IN PART** as outlined above.

## II.     Admissibility of Business Records

At the conference, the government sought a more final ruling on its motion in limine regarding business records. *See* Docs. 344 (motion in limine), 367 (order granting in part and denying in part that motion). As outlined in the court's order on that motion, bank and subscriber records that are accompanied by an appropriate custodial declaration are admissible. The court gave the defendants an opportunity to object to the authentication of those records on or before January 29, and neither defendant did. *See* Doc. 378 (government's filing of custodian declarations). The court therefore will admit those records as non-hearsay business records barring some other evidentiary objection not implicating hearsay or authentication, such as Rule 403, all subject to the caveats outlined in the prior order (including as to Cellebrite exhibits). *See* Doc. 367.

## III.     Motion in Limine Regarding Mr. Tew's Firing

Ms. Tew filed a motion in limine to exclude the basis for Mr. Tew's firing from NAC. As discussed at the conference, this issue also seemed to implicate Ms. Tew's gambling and her use of Mr. Tew's company credit card.

As discussed at the conference, the court finds that this evidence, as a general matter, is intrinsic to the alleged fraud and therefore not excludable under Rule 404(b) and otherwise will be admissible to prove motive. *United States v. Kupfer*, 797 F.3d 1233, 1238 (10th Cir. 2015). There may be some outliers, and some of this evidence could conceivably run afoul of Rule 403, particularly if it becomes cumulative. The government stated that it would not venture too far afield with this evidence, and the court will hold the government to that.

Ms. Tew's motion, **Doc. 399**, is therefore **DENIED**.

### IV.    Redactions to the Indictment

Mr. Tew argues that references to the term "fraudulently" should be removed from the indictment if it is given to the jurors. As discussed at the conference, the court's instructions regarding the indictment will reiterate that it is not evidence and cannot form the basis of a guilty verdict. In any event, the references to fraudulent behavior derives from the criminal statutes themselves and is not improper. Mr. Tew's request therefore will be denied, and the indictment will be provided to the jurors in the form it was handed down.

### V.    The Government's Rule 1006 Exhibits

As addressed at the conference, the court will evaluate the government's exhibits on a case-by-case basis to ensure that they meet Rule 1006's requirements. But as to presentation in the courtroom, the government generally will be free to use highlighting and zoom tools when presenting exhibits on monitors displayed to the jury, regardless of the testifying witness or their affiliation with the government. *See* Rule 611.

Also, as discussed at the conference, the parties must confer each night prior to the next day of trial and share proposed exhibits (except for exhibits used solely for impeachment) and demonstratives intended to be used the next day. The court suggests conferring and sharing exhibits and demonstratives by 7 p.m. each evening but leaves the exact timing up to the parties.

### VI.    "Overview" or "Summary" Evidence and the Admission of Co-Conspirator Statements

The court will not allow government witnesses to provide *improper* "overview" evidence as outlined in *United States v. Brooks*, 736 F.3d 921,

930-33 (10th Cir. 2013) (rejecting arguments that certain testimony was improper "overview" evidence regarding conspiracy).

But the court will allow government witnesses, such as Ms. Palmer, to read, for example, co-conspirator text or email messages that have been admitted into evidence, generally consistent with how testimony was elicited at the *James* hearing. The court will limit government agents from improperly "opining" on such messages or providing "spin" on them. *See Brooks*, 736 F.3d at 930. But such witnesses may provide context such as that necessary to lay a foundation or, perhaps, to authenticate certain exhibits, like Cellebrite reports.

## VII.   Use of Suppression Hearing "Testimony" on Cross-Examination of Defendants

The government seeks to use "testimony" from the suppression hearing to impeach either defendant if they testify at trial. The government acknowledges that the Tenth Circuit has not necessarily blessed such a maneuver, although other circuits may have. In any event, this alleged "testimony" appears to be representations made by prior defense counsel of what defendants *would* say at the hearing if called to testify. *See* Doc. 226 at 7-16. Particularly because the court did not rule on the specific argument that the proposed testimony sought to support, Doc. 262 at 9, the court fails to see how impeaching defendants with this material would be appropriate. But if the defendants testify and make statements contrary to prior counsel's representations, the government may re-raise this issue at that time.

## VIII.  Evidence of Duress and a Duress Instruction

The government seeks to preclude the defendants from "presenting" a "factually baseless" duress defense related to Ms. Tew's gambling or cryptocurrency activities. *See* Doc. 379 at 3-4. At the conference, the

government seemed to be arguing more narrowly that a duress instruction should not be given to the jury.

The Tenth Circuit recognizes duress as a defense and has a pattern instruction for it. *United States v. Dixon*, 901 F.3d 1170, 1176 (10th Cir. 2018). But to obtain such an instruction, the defendant must make a "threshold showing" of duress as to each element of the defense. *Id.* at 1177. As a general matter, the court will not exclude relevant evidence that might bear on this defense, if it exists, particularly where the government seeks to introduce related evidence of gambling and alleged cryptocurrency scams. And if either defendant seeks to put this defense to the jury, the court will evaluate whether they have made a sufficient showing to warrant a duress instruction prior to reciting the final instructions.

## IX.     Additional Co-Conspirator Statement Issues

As discussed at the conference, the government seeks to admit *James* log entry #37, which the court previously excluded. Upon reconsideration, the court finds that the martial privilege does not preclude admission of that conversation and that the message was in furtherance of a conspiracy for purposes of Rule 801(d)(2)(E). As to the other two messages or statements not addressed at the *James* hearing, the court will evaluate those statements at trial before admitting them. And the court reiterates that the government must warn the court and the defendants

prior to seeking to admit these statements, preferably in the morning prior to the arrival of the jury on the relevant day.

DATED: February 1, 2024          BY THE COURT:

Daniel D. Domenico
United States District Judge