IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **MICHAEL AARON TEW** and
2. KIMBERLEY ANN TEW,
   a/ka Kimberley Vertanen,

    Defendants.

---

### RESPONSE TO DEFENDANT MICHAEL TEW'S MOTION FOR VARIANT SENTENCE

---

The government respectfully requests that this Court deny Michael Tew's motion for a variance. Consistent with its view that a guideline sentence provides a "rough approximation" of sentences that will achieve all of § 3553(a)'s objectives, *Rita v. United States,* 551 U.S. 338, 350 (2007), the government recommends a middle-of-the range sentence of 110 months. This sentence takes into account the final offense level calculated by the Probation Office as well as all of the arguments articulated in the government's sentencing statement.[1] *See* ECF No. 458 (Government's Sentencing Statement).

---

[1] The government also asks for a fine of $250,000 and full restitution of the $5,023,878.50 he conspired to steal.

1

While the government maintains that a sentence of 110 months is appropriate, the government understands, acknowledges, and respects the Court's rulings regarding Kimberley Tew's sentence, which reflected a downward variance of approximately 49%. If the Court is inclined to grant a similar variance here, it would result in Michael Tew receiving the same sentence as Kimberley Tew: 48 months. But the government argued at Kimberley's sentencing that she was the most culpable actor and concedes here that Michael Tew's sentence should be lower to reflect relative levels of culpability. Under that reasoning, a sentence of 42 months would incorporate the factors behind the variance while also balancing relative culpability against the defendant's brazen misconduct.

Nothing in the defendant's filing justifies a greater variance.

**The statement deflects responsibility instead of accepting it**. The defendant blames Kimberley Tew for the fraud and suggests that he was under her complete control.[2] But this is inconsistent with the evidence at trial, which showed

---

[2] The rules of evidence do not apply at sentencing.  Fed. R. Evid. 1101. But the defendant has the burden of proving any facts relevant to securing his preferred sentencing outcome by a preponderance of the evidence, *United States v. Olsen*, 519 F.3d 1096, 1105 (10th Cir. 2008), and there must be *some* basis in the record for that particular fact. Michael Tew's lawyer is not a witness in this case. The Court should thus ignore and not consider the quoted remark emphasized on page 2 of his filing. If the defendant wants the Court to consider this statement, there must be some source — aside from a lawyer who cannot be cross examined and who cannot be a witness in this case — and the government should be permitted to cross-examine or otherwise interrogate its foundation. *See United States v. Jones*, 640 F.2d 284, 286 (10th Cir. 1981) (acknowledging that courts may consider all information, but also explaining that sentencing should be based on *accurate* information and that facts "must be verified if necessary").

2

that Michael Tew was not a passive vessel. He was an active architect of the ongoing fraud, making creative decisions about how to conjure new shell companies, how to conceal the fraud from auditors, bank compliance programs, and law enforcement, and how best to manipulate Yioulos into remaining in the conspiracy. The deflection of responsibility in his sentencing brief is another reason to deny him the credit for acceptance of responsibility he seeks as part of his objections to the presentence report. *See* ECF No. 573 at 3 (citing *United States v. Deppe*, 509 F.3d 54, 61 (1st Cir. 2007) for principle that shifting blame is a reason to deny credit for acceptance).

The defendant claims he is remorseful for the damage he has caused and cites his letter. But that letter says absolutely nothing about his victims and reflects only on how his crimes will affect his own personal circumstances and interests. The record continues to support the conclusion that Michael Tew has nothing but contempt for his victim and disrespect for the legal system that led to accountability for his actions. As the government noted in its sentencing statement, the fact that he was willing to pay for the costs of his crime with the wellbeing of his children and family makes the defendant more blameworthy, less deterrable, and more deserving of punishment. ECF No. 458 at 2 and 46 (noting that defendant committed his crime undeterred by prospect of being incarcerated during childhoods of his two daughters).

**Specific Deterrence requires a higher sentence.** The defendant's acquiescence to Kimberley is a reason to vary *upwards* rather than downwards: the punishment should be high enough to reinforce the conclusion that choosing a greed

3

and love-inspired-crime is worse than all of the possible alternative decisions. "Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime can therefore be affected and reduced with serious punishment." *United States v. Sample*, 901 F.3d 1196, 1200 (10th Cir. 2018) (citing cases and Congressional findings supporting the deterrent effect of prison on white collar crime); *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006); *Loughran et al., Can Rational Choice Theory Be Considered a General Theory of Crime? Evidence from Individual-Level Panel Data*, 54 Criminology 86, 107 (2016) (finding that criminals "act in accordance with anticipated rewards and costs of offending").

**Testimony from a psychologist should be rejected**.  To the extent the defendant's proposed expert psychologist will simply serve as a vehicle for unexamined and unexaminable statements made by the defendant, the Court should reject the testimony as lacking any indicia of reliability. *United States v. Jones*, 640 F.2d 284, 286 (10th Cir. 1981). The defendant has a right to maintain his silence, but he does not have a right to testify through a third party and thereby avoid scrutiny. *Cf. Kansas v. Cheever*, 571 U.S. 87, 94 (2013) ("Any other rule would undermine the adversarial process, allowing a defendant to provide the jury, through an expert operating as proxy, with a one-sided and potentially inaccurate view of his mental state at the time of the alleged crime); *United States v. Byers*, 740 F.2d 1104, 1114 (D.C. Cir. 1984) (Scalia, J.) (explaining that where defendant seeks to use expert to admit his own statements via psychiatric expert testimony the defendant must

4

submit himself to examination by government expert). If the Court is inclined to consider this testimony it should first order the defendant to provide the government with any relevant reports or opinions and the government should be permitted time to hire its own expert — and the defendant ordered to submit to an examination — so that the court can be fully advised and ensure that it is relying on accurate information. *Byers*, 740 F.2d at 1114 (noting that practical considerations of "fair but effective criminal process" requires application of principle that a defendant cannot take the stand on his own behalf through a psychiatrist and then refuse to consent to cross-examination).

**The law does not permit a defendant to buy himself a lower prison sentence**.  The defendant should not be able to buy himself a lower sentence by promising to work to pay it off through restitution. *See, e.g., United States v. Crisp*, 454 F.3d 1287, 1290 (11th Cir. 2006) (noting that a lower sentence for a fraud defendant on the theory that the defendant will pay restitution "essentially converts a theft by fraud into a loan that is unlikely to ever be repaid."); *see also* U.S.S.G. § 5K2.0(d)(5) (noting that fulfillment of restitution obligations should not be basis for departure).

**It is not unwarranted for cooperating defendants to get lower sentences**. The defendant asserts that it would create an unwarranted sentencing disparity for his sentence to be substantially higher than Jonathan Yioulos's. But Courts have repeatedly stressed the opposite. *See, e.g., United States v. Boscarino*,

5

437 F.3d 634, 638 (7th Cir. 2006) (explaining that "[a] sentencing difference based on one culprit's assistance to the prosecution is legally appropriate" and noting that without such differences there "would be considerably less cooperation — and thus more crime"). Jonathan Yioulos pled guilty and cooperated with law enforcement and the prosecution at all stages of this case. Michael Tew did not. The two are not comparable and their sentences appropriately should reflect that.

**The defendant should report for his sentence promptly upon designation.** The defendant asks the court to "consider staggering his sentence to begin once his wife is released from custodial confinement" but he cites to no authority or precedent that would authorize this relief.

As far as the government can tell, there is no authority. *Ex Parte United States*, 242 U.S. 27 (1916) (rejecting four proposed authorities for federal courts to suspend sentences and concluding that courts lack inherent authority). Initially after the Supreme Court's ruling in that case, Congress specifically gave courts the power to suspend sentences as part of the Probation Act of 1925. And in *United States v. Murray*, the Supreme Court construed the text of that act to permit district courts to essentially grant probation while a sentence was suspended for a period of time. 275 U.S. § 347 (1928). But then, in 1984, Congress repealed the relevant provision of the Probation Act as part of the Sentencing Reform Act. Pub. L. 98-473, Section, 212 28 Stat. 1987.

The Sentencing Reform Act is silent on any authority to suspend imposed but

6

unexecuted sentences. Instead, it commands that Courts "shall" sentence defendants in accordance with Chapter 227, 18 U.S.C. § 3551; "shall" impose sentences sufficient but not greater than necessary to comply with the purposes listed in 18 U.S.C. § 3553(a), 18 U.S.C. § 3582(a); "may not" modify a sentence once it has been imposed except in specific circumstances that do not apply here, 18 U.S.C. 3582(c); and that a person who has been sentenced "shall be committed to the custody of the Bureau of Prisons." 18 U.S.C. § 3621(a). To the extent these provisions are ambiguous or unclear as to whether the court has authority to suspend a sentence so that it can be staggered vis-à-vis another defendant's, *Ex Parte United States* is the controlling authority. Absent an express grant from Congress, the Court does not have inherent authority to suspend or otherwise change how its judgments are executed by the Executive Branch.[3] To the contrary, the existing positive authority and sound public policy suggests that sentences should be imposed without "unnecessary delay," Fed. R. Crim. P. 32.1. *Cf. United States v. Jones*, 2016 WL 335102, at *5 (D.N.M. Jan. 15, 2016) (describing unfairness of allowing some defendants to delay sentences but not others, the harm to the public interest in speedy justice, and the ways in which delay defeats the goals of deterrence and retribution).

---

[3] Some courts have granted this relief. But none explain the rationale in more than conclusory terms or describe the underlying authority for doing so. *See, e.g., United States v. Gary*, 613 F.3d 706 (7th Cir. 2010); *United States v. Agnew*, 147 F. App'x 347, 351 (4th Cir. 2005); U*nited States v. Khachtryan*, 2021 WL 1110269, *1 (N.D. Cal. Mar. 23, 2021).

7

The Court should require that the defendant satisfy the burden of persuasion on this legal point. But even if he is able to articulate the legal bases for his request, the Court should exercise its discretion to deny it. First, the Court has already explained that whether or not Michael Tew should remain on bond following his conviction was a "close call." And the Court already offered for one of the defendants to report for immediate sentencing to mitigate the overlap of their sentences. Michael Tew declined that offer and, instead, appears to have done exactly what he told the Court he would do when he asked for adjournments of his sentencing: arrange for his children's wellbeing while their parents are incarcerated.

Allowing Michael Tew to remain free for nearly four more years, all while the certainty of a sentence hangs over his head, extends and compounds all of the risks of flight the government raised in its motion for detention, docketed at ECF No. 450. It also creates practical administrative problems. Who will pay for his supervision over that period of time? What happens if the defendant violates the terms of his bond during the nearly four year period his sentence is suspended? Does any time of detention count for serving his sentence or is it, instead, a separate matter? If it does count, what authority would BOP use to make that determination? The relief Michael Tew requests is extraordinary. The government's survey of relevant precedents shows that district courts who have "staggered" sentences have done so for only a few months, not for several years.[4] This all counsels against granting the defendant his

---

[4] *United States v. Collins*, 2020 WL 6546544, *1 (D. Utah Nov. 6, 2020); *United*

requested relief.

## CONCLUSION

The defendant cites to no cases or legal principles suggesting that a defendant who loves his coconspirator should be treated more leniently. Or that one spouse in a marriage should receive a lower sentence for agreeing to commit a crime as the price of staying married. Michael Tew had the education, wealth, resources, and power to make different decisions. But, at the behest of his wife and ignoring the risk to the wellbeing of his children, he chose to enrich himself through fraud. The defendant has not even attempted to respond to many of the arguments and authorities

---

*States v. Tartareanu*, 2020 WL 5576730, at *5 (N.D. Ind. Sept. 17, 2020); *United States v. Gasich*, 2019 WL 4261614, at *1 (N.D. Ind. Sept. 9, 2019);*Wright v. United States*, 2018 WL 6601891, at *1 (M.D. Fla. Dec. 17, 2018); *United States v. Tartareanu*, 2018 WL 6583909, at *1 (N.D. Ind. Dec. 14, 2018); *United States v. Lanier*, 2016 WL 8710017, at *5 (E.D. Tenn. Dec. 16, 2016); *United States v. Chen*, 2016 WL 5573026, *4 (S.D.N.Y. Sept. 29, 2016); *United States v. McKinney*, 2014 WL 37307, at *1 (S.D. Ill. Jan. 6, 2014); *United States v. Marsh*, 820 F. Supp. 2d 320, 351 (E.D.N.Y. 2011), as amended (Nov. 3, 2011); *Gao v. United States*, 375 F. Supp. 2d 456, 461 (E.D. Va. 2005); *Smith v. United States*, 277 F. Supp. 2d 100, 103 (D.D.C. 2003)..

9

catalogued in the government's sentencing statement. ECF No. 458. All of the reasoning in that statement supports the government's recommended sentence.

Dated this 5th day of November, 2024.

Respectfully submitted,

MATTHEW T. KIRSCH
Acting United States Attorney

By:   /s/ Bryan Fields
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By:   /s/ Sarah H. Weiss
Sarah H. Weiss
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Sarah.Weiss@usdoj.gov
Attorney for the Government

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s Bryan Fields*
Bryan Fields

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because trial has already occurred within the Speedy Trial Act deadline.

## CERTIFICATE OF SERVICE

I certify that on this 5th day of November, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case

<u>s/ *Bryan Fields*</u>
Bryan Fields
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
Bryan.Fields3@usdoj.gov