1    IN THE UNITED STATES DISTRICT COURT
2         FOR THE DISTRICT OF COLORADO

3    Criminal Action No. 20-CR-00305-DDD

4    UNITED STATES OF AMERICA,

5         Plaintiff,

6    vs.

7    MICHAEL AARON TEW, KIMBERLY TEW, and JONATHON YIOULOS,

8         Defendants.

9    _____

    **REPORTER'S TRANSCRIPT**
10             (Motions Hearing)

11   _____

12         Proceedings before the HONORABLE DANIEL D. DOMENICO,

13   Judge, United States District Court for the District of

14   Colorado, commencing at 10:40 a.m., on the 18th day of March,

15   2021, in Courtroom A702 via video teleconference, United States

16   Courthouse, Denver, Colorado.

24   Proceeding Recorded by Mechanical Stenography, Transcription
         Produced via Computer by Tracy Weir, 901 19th Street,
25       Room A259, Denver, Colorado, 80294, (303) 335-2358

1        **APPEARANCES**

2            HETAL DOSHI, MATTHEW KIRSCH, and ANDREA SURRATT,

3    Assistant U.S. Attorneys, 1801 California Street, Suite 1600,

4    Denver, Colorado 80202, appearing for the plaintiff.

5            TOR EKELAND, Attorney at Law, Tor Ekeland Law, PLLC,

6    30 Wall Street, 8th Floor, New York, New York, 10005, appearing

7    for the defendants Michael and Kimberly Tew.

8            THOMAS RICHARD WARD, Attorney at Law, Stuart & Ward,

9    LLP, 140 East 19th Avenue, Suite 300, Denver, Colorado, 80203,

10   appearing for the defendant Michael Tew.

11                    *   *   *   *   *

12                       **PROCEEDINGS**

13           (In open court at 10:40 a.m.)

14           *COURTROOM DEPUTY CLERK:*  Court is now in session.

15           *THE COURT:*  Good morning.  This is a motions hearing

16   in case 20-cr-00305, captioned United States of America versus

17   Michael Aaron Tew, et al.

18           We are proceeding today by video teleconference.  I'm

19   the only one here in the courtroom.  So I'd like to begin by

20   getting everyone's appearances and make sure we can all see and

21   hear each other.

22           On behalf of the Government.

23           *MS. DOSHI:*  Good morning, Your Honor.  Hetal Doshi,

24   Matthew Kirsch, and Andrea Surratt for the United States.

25   Since the filing of the Government's motion for an inquiry

1   under Rule 44, Mr. Kirsch's title in the office has changed.

2   Ms. Surratt has graciously agreed to step in.  All three

3   counsel are present today.

4        *THE COURT:*  Thank you.  Welcome.

5        Mr. Ekeland.

6        *MR. EKELAND:*  Yes.  Good morning, Your Honor.  Tor

7   Ekeland for defendants Michael and Kimberly Tew.

8        *THE COURT:*  All right.  Welcome.

9        Mr. Ward, are you here?  I think I saw you, but you

10  may have been muted.

11       *MR. WARD:*  I think I failed to click the red button.

12  Good morning, Your Honor.  Tom Ward appearing as CJA counsel

13  for Michael Tew.

14       *THE COURT:*  All right.  Welcome.  Thank you.

15       Mr. and Mrs. Tew, are you able to see and hear?

16       *MR. TEW:*  Yes, Your Honor.

17       *MRS. TEW:*  Yes, Your Honor.

18       *THE COURT:*  All right.  Welcome.  Thank you.  I note

19  there is a third defendant in this case, Jonathan Yioulos.  I

20  may be mispronouncing that.  His counsel is not present.

21       I don't believe it's necessary for -- I intend to deal

22  with three motions, I guess, today -- well, two motions.  One,

23  the Government's inquiry into joint representation by

24  Mr. Ekeland, and then Mr. Ward's motion to withdraw, and then

25  the motion for 180-day continuance.

1          Ms. Doshi, is there any reason you think we should not

2    proceed without Mr. Tallon?

3          *MS. DOSHI:*  With respect to the motion to withdraw and

4    the Rule 44 motion, no, Your Honor.  With respect to the ends

5    of justice motion, I note Mr. Tallon does not oppose the relief

6    sought in the motion.  I think it is probably fine to also

7    proceed on that motion as well.

8          *THE COURT:*  That's my understanding.  I often rule on

9    those without a hearing at all.  So I think we can probably

10   proceed that way.

11         Mr. Ekeland, Mr. Ward, does either of you disagree?

12   Mr. Ekeland?

13         *MR. EKELAND:*  No, Your Honor.  We're in agreement with

14   the Government on that point.

15         *THE COURT:*  All right.  Thank you.

16         *MR. WARD:*  I agree, Your Honor.

17         *THE COURT:*  Thank you.  We'll go ahead and proceed

18   then.

19         I, as I said, intend to deal with these three matters

20   today.  It seems to me that the first -- before we deal with

21   the others, we should deal with the joint representation issue,

22   and then we can make sure, once we've resolved that, the other

23   two we can make sure we have the correct counsel making those

24   arguments.

25         So I will begin with the Government's motion regarding

1  Mr. Ekeland's representation of both Mr. and Mrs. Tew, which is

2  document 108 on the docket.

3          Mr. and Mrs. Tew, the Federal Rules of Criminal

4  Procedure require in these circumstances that I advise you and

5  make sure you understand the potential implications of having

6  joint counsel.  So I'm going to go through kind of a series of

7  questions, both with each of you, with counsel, to make sure

8  that this is, in fact, what you want to do and that you

9  understand the potential pitfalls of one attorney trying to

10  represent two people.

11          I'm going to begin just by making sure and asking you

12  some basic questions and make sure you're competent and

13  understand what's going on and are able to make those sorts of

14  decisions before we proceed.

15          I'll start with Mr. Tew since he's the first defendant

16  listed.

17          Mr. Tew, how old are you?

18          *MR. TEW:*  41 years old, Your Honor.

19          *THE COURT:*  How much school have you completed?

20          *MR. TEW:*  I have my MBA.

21          *THE COURT:*  Do you have any difficulty understanding,

22  reading, or writing in English?

23          *MR. TEW:*  No.

24          *THE COURT:*  Have you taken any substance, drugs,

25  medicine, alcohol in the last 24 hours?

1          *MR. TEW:*  Small alcohol.

2          *THE COURT:*  Anything that would affect your ability to

3     understand what's going on today?

4          *MR. TEW:*  No, Your Honor.

5          *THE COURT:*  All right.  Do you understand the basic

6     process we're going through today?

7          *MR. TEW:*  Yes, Your Honor.

8          *THE COURT:*  All right.

9          Mr. Ekeland, is there any reason you know of that

10    Mr. Tew is not competent to proceed today?

11         *MR. EKELAND:*  No, Your Honor.

12         *THE COURT:*  Mr. Ward, any reason you know of?  Your

13    button one more time, I think.

14         *MR. WARD:*  No.  I don't know any reason why he would

15    not be competent.

16         *THE COURT:*  All right.  Thank you.

17         Mrs. Tew, I'm going to ask you essentially the same

18    questions.  How old are you?

19         *MRS. TEW:*  I'm -- I'm 40 years old, Your Honor.

20         *THE COURT:*  All right.  How much school have you

21    completed?

22         *MRS. TEW:*  I have a bachelor of science.

23         *THE COURT:*  Do you have any difficulty understanding,

24    reading, writing in English?

25         *MRS. TEW:*  No, I do not, Your Honor.

1          *THE COURT:*  Have you taken any substance, drugs,

2    medicine, alcohol in the last 24 hours?

3          *MRS. TEW:*  No, Your Honor.

4          *THE COURT:*  Okay.  Thank you.

5          Do you understand the basic process we're going

6    through today?

7          *MRS. TEW:*  Yes, Your Honor.

8          *THE COURT:*  All right.

9          Mr. Ekeland, is there any reason you know of to doubt

10   Mrs. Tew's competence at this time?  I think that's on mute.

11   You didn't get your button unmuted.

12         *MR. EKELAND:*  Can you hear me now, Your Honor?

13         *THE COURT:*  Yes.

14         *MR. EKELAND:*  No.  I know of no reason why she's not

15   competent right now.

16         *THE COURT:*  Okay.  Thank you.

17         Based on those responses and my observation of Mr. and

18   Mrs. Tew, I find they're both alert, sober, competent, and

19   understand the nature of this hearing.

20         Mr. and Mrs. Tew, the record reflects that you and

21   your co-defendant were charged in a 60-count Indictment

22   alleging a conspiracy to commit wire fraud, a scheme to

23   defraud, and money laundering.  These are very serious charges

24   that can carry very long terms of imprisonment.  If you're

25   convicted, say, of the first count of the Indictment violating

1    18 U.S. Code Section 1343, you can face just for that count up

2    to 20 years of imprisonment and maybe up to 30 if the fraud

3    affected a financial institution.  There are monetary fines

4    that could be levied in these instances.

5         Mr. Tew, are you aware of the serious penalties that

6    you could face for those charges?

7         MR. TEW:  Yes, Your Honor.

8         THE COURT:  Mrs. Tew, are you aware of these potential

9    penalties?

10        MRS. TEW:  Yes, Your Honor.

11        THE COURT:  All right.  Thank you.  So the Sixth

12   Amendment of the U.S. Constitution guarantees you and every

13   defendant the right to effective assistance of counsel.  In

14   general, our system respects a defendant's right to choose the

15   lawyer as they please, but when two co-defendants propose to

16   retain the same counsel, it's important to make sure you

17   understand the risks posed and that there is a strong

18   possibility that at some point, at least, Mr. Ekeland may

19   encounter a conflict of interest between the two of you which

20   could result in his having to withdraw from representing either

21   of you.

22        So the point of what we're doing at this stage in this

23   hearing is to make sure I'm satisfied you understand those

24   risks and that I'm satisfied that Mr. Ekeland can proceed

25   without a conflict at this point in which case we will allow

1    you to be -- to retain him.

2         If I believe there is a conflict of interest, I can

3    refuse to allow him to represent you both and would require you

4    to retain separate counsel.

5         Do you understand that, Mr. Tew?

6         *MR. TEW:*  Yes, Your Honor.

7         *THE COURT:*  Mrs. Tew, do you understand?

8         *MRS. TEW:*  Yes, Your Honor.

9         *THE COURT:*  All right.  So I'm going to go through

10   sort of some potential issues that could arise in the course of

11   this case.  Just to make sure you understand, if any of these

12   things come up, it could result in you losing the ability to

13   retain Mr. Ekeland.

14         Dual representation may inhibit or prevent Mr. Ekeland

15   from conducting an independent investigation.  For example,

16   attorney-client privilege may prevent him from communicating

17   information to one of you, the information he gathered about

18   another defendant.

19         The Government may offer immunity or recommend --

20   offer to recommend a lesser sentence to one defendant for

21   cooperation.

22         If you receive an offer like that, Mr. Ekeland should

23   advise you whether to accept it or not, but if he advises one

24   of you to accept it, it could potentially harm the other

25   co-defendant.

10

1          The Government, likewise, may allow one of you to

2    plead guilty to lesser charges, but as a condition of a Plea

3    Agreement, the Government may require testimony against

4    remaining defendants.

5          Mr. Ekeland then might recommend against the plea deal

6    to protect the other defendant, or he might recommend the

7    defendant plead guilty which could harm the other one.  That is

8    a potential conflict.

9          During jury selection at a trial, the defense has a

10   limited number of what we call peremptory strikes where he can

11   exclude a potential juror for any reason at all.  Depending how

12   this case turns out, representing two of you may lead him to

13   want to strike a juror on behalf of one or both of you, but

14   that same juror might be beneficial to one another.  That would

15   be a conflict of interest, and Mr. Ekeland would be required to

16   no longer represent you.

17         One of you at trial could decide to testify on your

18   own behalf.  If that happens, Mr. Ekeland would be required to

19   prepare you as best he can using all the information at his

20   disposal, but he might not be able to do so if, for example,

21   the other defendant has information that would harm that

22   person.  So that would be yet another conflict of interest.

23         The best defense for one defendant sometimes can be to

24   say that while the other defendants were guilty, I didn't do

25   it.  A lawyer representing two defendants can't effectively

1   make that sort of argument.

2         Likewise, evidence that helps one defendant may harm

3   another, and a lawyer representing two defendants would be

4   conflicted in that circumstance about whether or not to offer

5   that sort of evidence.

6         At sentencing, dual representation could prohibit the

7   lawyer from engaging in negotiations with the Government as to

8   disclosure of information by one defendant about the other and

9   arguing about the relative culpability between two defendants.

10         So these are all some of the fairly common and,

11   frankly, likely conflicts that can come up in any criminal

12   case, including this one.

13         Mr. Tew, do you understand all of these sorts of

14   potential conflicts and the implication that if any of them

15   arise, Mr. Ekeland would have a conflict that, in general,

16   couldn't be waived and he would have to withdraw from

17   representing you?

18         *MR. TEW:*  Yes, Your Honor.

19         *THE COURT:*  All right.

20         Mrs. Tew, do you have any questions about what I just

21   said?

22         *MRS. TEW:*  No, Your Honor.  Thank you for explaining

23   all that.

24         *THE COURT:*  Do you understand if these sorts of

25   conflicts arise, Mr. Ekeland would no longer be able to

1    represent you?

2            *MRS. TEW:*  Yes, I do, Your Honor.

3            *THE COURT:*  Thank you.

4            Mr. Ekeland, how is it that you believe you are able

5    to represent each of these defendants effectively given the

6    potential for these sorts of common conflicts to arise?

7            *MR. EKELAND:*  Well, Your Honor, first they're husband

8    and wife, and they share a sacred bond of love for each other.

9    I, after looking at this case, think that I can effectively

10   represent them without these types of conflicts occurring.

11           I can't go deep into that without revealing, you know,

12   the defense's strategy which, of course, at this point in time

13   we can keep to ourselves and will be revealed as it unfolds.

14           I think mainly because they're husband and wife in

15   this story and up until this point it seems to me everything

16   that the system has been essentially trying to do is split them

17   up.

18           I think the stronger defense here, without saying

19   more, is they stand as husband and wife.  I've discussed it

20   extensively with my clients.  We've talked to them about the

21   law and potential conflicts and, you know, I've explained to

22   them what would happen here today.  I'm confident that we can

23   move forward with a strong defense with this married couple who

24   love each other and without these conflicts arising.

25           *THE COURT:*  All right.  Thank you, Mr. Ekeland.  I do

1   recognize that the fact they are husband and wife is a

2   distinguishing factor, and I don't want you to reveal anything

3   you don't have to.  I just want to make sure you understand

4   each of these potential conflicts could still arise even in

5   that circumstance and that, if it does arise, you'll have an

6   obligation to withdraw; that these are not the sort of waivable

7   conflicts, if it ever reaches a point where your strategy no

8   longer works in either of their best interests, that you have a

9   professional obligation to no longer represent either of them.

10  Do you understand that?

11          *MR. EKELAND:*  Absolutely, Your Honor.  I understand my

12  professional obligation there, and I will meet my professional

13  obligation immediately should that occur.

14          *THE COURT:*  All right.  I appreciate that.

15          Your response, I think, addressed some of this, but

16  you may know one of Mr. Tew's prior counsel withdrew partly on

17  the basis he found it difficult to deal with Mr. Tew given his

18  wife's potential involvement.

19          How do you address that, and why do you believe you

20  don't have the same difficulty that prior counsel had?

21          *MR. EKELAND:*  Well, Your Honor, because we're not

22  telling the same story and we're not implementing the same

23  defense.  This goes back to what the Court referenced before

24  about a criminal defendant's Sixth Amendment right about

25  choosing counsel which, as you pointed out, is limited by these

 1  nonwaivable conflicts of interest.

 2         I just have never felt like them being apart is a

 3  strong defense.  I think there's a lot of defenses that we

 4  don't necessarily need to go near these conflicts.

 5         Again, I'm a little hesitant this early on to reveal

 6  my strategy, but, essentially, to sum up what I just said, I

 7  think my defense is different than the prior attorney's

 8  approach.  That's not to say mine is necessarily better.

 9         *THE COURT:*  We lost him there.  Let's see if we can

10  get him back.

11         *MR. EKELAND:*  Can you guys hear me now?  Just to sum

12  up, essentially whatever the merits of the way I am approaching

13  the defense, I think my approach to the defense is different

14  and is, you know, based on their strong love and unity and

15  telling the story of what actually happened here instead of

16  them being splintered and being forced to turn against each

17  other and destroy this family or whatever.  I have a different

18  approach to defense than prior counsel, and that's no judgment

19  or comment on what prior counsel was doing, Your Honor.

20         *THE COURT:*  All right.  Thank you, Mr. Ekeland.

21         Ms. Doshi, is there anything you would like to add to

22  this discussion?

23         *MS. DOSHI:*  Yes, Your Honor.  Thank you for the

24  opportunity.  There are a couple of points that I'd like to

25  bring to the Court's attention.  The first is -- and this may

1    be a formality.  I would respectfully ask that pursuant to the

2    commentary to Rule 44, that if the Court finds that the

3    defendants have knowingly, voluntarily, and intentionally

4    waived any potential conflicts, that they provide a narrative

5    explanation of understanding the conflicts and their waiver.

6            There's two other areas I wanted to flag for the

7    Court.  The first is as the Court may be aware, Mr. Tew's third

8    lawyer and fourth lawyer are court-appointed lawyers by virtue

9    of financial affidavits Mr. Tew filed with the Court that

10   qualified for appointment of counsel.

11           In this circumstance, we're not inquiring about the

12   providence of money or anything like that with respect to

13   payment of counsel.  There is a unique issue that arises when

14   not only are the two co-defendants in this circumstance, who

15   based on the face of the Indictment alone, facing different

16   scope of charges, when one of these defendants -- there's the

17   marital relationship layered on top of that.  I agree with

18   Mr. Ekeland there is something unique about the marital

19   relationship that can inure to the benefit of a joint defense

20   as proposed here.  It can also undercut the ability of either

21   party to that relationship feeling comfortable in voicing and

22   vindicating their own rights given they're co-parents, they're

23   spouses, that they live together.

24           That's complicated by the fact it's not entirely

25   clear, nor am I asking, who's paying for what counsel, but that

1  can also put Mr. Tew potentially in a different situation with

2  respect to vindication of his rights.

3          As an officer of the Court, I'm flagging that for the

4  Court's attention, and perhaps the Court may wish to engage in

5  colloquy with Mr. and Mrs. Tew on that point.

6          The last thing I wanted to flag for the Court is, as

7  the Court is aware, Rule 44 imposes a continuing obligation of

8  this sort.  The Government appreciates that the Court has asked

9  and believes Mr. Ekeland, should conflict arise, promptly

10 notify the Court.

11         The problem is the Supreme Court case *wheat*

12 contemplates it is not just an actual conflict that's a

13 problem.  It is the potential for conflict that's also a

14 problem.  It can arise in a variety of places in this case.  So

15 the Court has gone through some of those.  You know, we can't

16 unring the bell after we provide discovery to Mr. Ekeland with

17 respect to privileged materials that may be Mr. Tew's

18 privileged materials.

19         To the Court's point, that may be Mr. Ekeland has to

20 withdraw entirely.

21         Let's take that a step further.  Mr. and Mrs. Tew have

22 separately provided information that inculpate the other

23 previously, and that complicates the situation that Mr. Ekeland

24 is in with respect to advising them how to proceed through

25 motions practice and at trial.

1          Even if there is a witness on the stand that's

2     neither -- putting aside the question whether Mr. or Mrs. Tew

3     wants to testify, which, as the Court pointed out, is a

4     complicated one with respect to this issue.  Putting that

5     aside, even if there is a third-party witness on the stand, it

6     may be that pointing out, for example, X witness, you didn't

7     have any communications with Mrs. Tew, highlighting that fact

8     may implicitly inculpate Mr. Tew.

9          Those are the types of eventualities that can come up.

10    Should those issues arise at trial, the remedy, potentially, or

11    issue is a mistrial and we start over again, which implicates

12    the Court's interest and a system and a process that's full of

13    fair and integrity.

14         Significantly, we may go through all this and it may

15    be Mr. and Mrs. Tew, let's say, if there is a conviction or one

16    of them pleads or both plead guilty.  Then later collaterally

17    attacks this proceeding because of the many stages along the

18    way in which potential conflicts could arise, and that puts the

19    Court and the Government in a difficult position because we

20    don't know what we don't know with respect to what's to come

21    and what the potential land mines are.

22         That's why *wheat* cautioned at the early stages of a

23    proceeding a simple I'll flag the conflicts as they come up may

24    still be fraught because things can pivot in a criminal

25    prosecution on a dime.

1          Relatedly on that point, it becomes incumbent on the

2   Government to point out that while it is true that right now

3   there is an all for one, one for all defense, the real problem

4   can be summed up, which is why we raise it with the Court is,

5   number one, the options Mr. Ekeland can pursue out of the gate

6   based on this potential, this tension, this conflict, the

7   options he can pursue are limited.  It seems to the Government

8   under the Sixth Amendment that limitation of options right out

9   of the gate may not be wise.  That's why we've asked for this

10  hearing.

11         The second thing is that we really believe there's an

12  inevitability that things will come to a pass.  We've seen that

13  happen in this case already where they've taken different

14  positions at various points in time.  It may be that this is

15  behind us and they're on the same path moving forward.  I don't

16  know what they know.  The Government would be remiss if we

17  didn't point out those two issues, the limitations of options

18  right out of the gate, and the seeming inevitability,

19  potentially, of conflicts, and then ending up at the start

20  again where we have to bring in new counsel for both Mr. and

21  Mrs. Tew.

22         *THE COURT:*  Thank you, Ms. Doshi.  I do appreciate all

23  of those things and don't necessarily disagree with any of it.

24  I have not been a judge all that long.  This is the first time

25  I've confronted defendants seeking to have the same counsel.

1    I've spoken with a few of my colleagues, and even those who

2    have been on the bench a lot longer see it very rarely,

3    precisely for the reasons you laid out.  It is fraught.

4             On the other hand, if we were to refuse to allow it

5    because of these potential problems, essentially that would be

6    a de facto rule that it's never permitted, which would

7    certainly be simpler but is not the actual rule.

8             So far everything I've heard satisfies me that at this

9    point, at least, is one of those cases where it may make sense.

10   It's based, as I understand it, on an actual strategy and

11   thought-through decision making.

12            I do, though, agree with Ms. Doshi we're supposed to

13   get, from each defendant, what's called an explanation of why

14   they wish to waive their right to have separate counsel in a

15   narrative form.

16            I don't want you to feel like you have to reveal any

17   privileged information at this point, but I am going to ask

18   each of you, Mr. and Mrs. Tew, to explain to us in your own

19   words why you wish to proceed in this way and why you think the

20   potential conflicts are not a problem.  It may be worth

21   explaining -- making sure you explain in there why financial

22   considerations are not driving this because, as I believe you

23   know, if hiring separate counsel is a problem, we can -- the

24   Court -- as a financial problem, the Court will appoint counsel

25   for you.

1          If you would just give us sort of a brief narrative

2   explaining why you understand all these things and,

3   nevertheless, wish to proceed with single counsel, I will then

4   make a decision.

5          Mr. Tew, would you give your explanation.

6          *MR. TEW:*  Yes, Your Honor.  I'm just going to be

7   brief.  I wasn't prepared to make remarks.  After having

8   several other counsel in this case so far, it's been a very

9   confusing process.  I have found that the only way for me -- I

10  apologize.  Our daughter is right here.  The only way for me to

11  effectively communicate what has occurred here is with my wife

12  by my side, and that's something we found uniquely with

13  Mr. Ekeland.

14         *THE COURT:*  All right.  Thank you.  Do you understand,

15  though, that it may be one of these things could come up down

16  the road, in which case Mr. Ekeland won't be able to, even if

17  you want to and he wants to, won't be able to continue

18  representing both of you?

19         *MR. TEW:*  I do understand that, yes.

20         *THE COURT:*  Mrs. Tew, what is your explanation for why

21  you're willing to run these risks and proceed with one counsel

22  rather than having one attorney whose only job would be looking

23  out for you?

24         *MRS. TEW:*  I believe that --

25         *MR. TEW:*  Excuse us.

1          *THE COURT:*  That's okay.

2              *MRS. TEW:*  I apologize, Your Honor.

3              *MR. TEW:*  Your Honor, one moment.  Our daughter needs

4     one of our attention.  Since I spoke, may I give her attention

5     for a moment?

6              *THE COURT:*  Of course.  Please do.

7              *MRS. TEW:*  She has special needs, and she is

8     homeschooled.  I apologize.  I appreciate your understanding.

9              *THE COURT:*  That's okay.

10             *MRS. TEW:*  Thank you, Your Honor.  I feel that this is

11    the best representation available at the moment, and I think it

12    outweighs any potential conflicts in the future.  I believe in

13    the Sixth Amendment.

14             *THE COURT:*  Okay.  You understand, though, it's not a

15    question necessarily of balancing conflicts with the benefits.

16    At some point if the conflicts actually arise or get to the

17    point where they're truly inevitable, Mr. Ekeland won't be able

18    to proceed representing you, whether or not you want him to.

19    You're still willing to proceed with this arrangement?

20             *MRS. TEW:*  Absolutely, Your Honor.

21             *THE COURT:*  Okay.

22        Mr. Ekeland, is there anything else you wish to add

23    before I formally ask for whether they waive their right --

24    waive any potential conflict, any existing conflicts, and

25    proceed this way?  I don't think -- I think you were muted,

1  Mr. Ekeland.

2          *MR. EKELAND:*  No, Your Honor.  I have nothing further

3  at the moment.

4          *THE COURT:*  All right.  Thank you.

5          Ms. Doshi, is there anything else?  I know you made a

6  strong record, both in writing and here.  Is there anything

7  else you wish to add?

8          *MS. DOSHI:*  Nothing that I wish to add, Your Honor.

9  Thank you.

10         *THE COURT:*  All right.  Thank you.  I'm now, Mr. and

11 Mrs. Tew, going to ask formally, knowing all this, if you still

12 wish, Mr. Tew, to waive any potential conflicts that exist

13 right now and that might arise, to the extent it's possible to

14 waive them, and proceed with Mr. Ekeland representing you and

15 your wife.

16         *MR. TEW:*  Yes, Your Honor.

17         *THE COURT:*  Thank you.

18         Mrs. Tew, do you make that same waiver of any

19 conflicts of interest that are waivable that might arise in

20 Mr. Ekeland's joint representation of you and your husband?

21         *MRS. TEW:*  Yes, Your Honor.

22         *THE COURT:*  All right.  Thank you.

23         Okay.  Given all that, I already found that the

24 defendants are alert, sober, and competent.  I also find that

25 they understand the inherent risks associated with dual

1  representation, and they understand that there's a strong

2  likelihood that a conflict of interest may arise if they choose

3  to jointly retain Mr. Ekeland.

4      I find they have knowingly and intentionally waived

5  any conflicts present or in the future in Mr. Ekeland's joint

6  representation of them.

7      So I will allow that arrangement to proceed at this

8  time.

9      Okay.  So that leads me, then, to Mr. Ward's motion to

10  withdraw as counsel for Mr. Tew in light of Mr. Tew now having

11  retained Mr. Ekeland and his waiver of the conflicts inherent

12  in that situation.

13      I don't believe I have any reason not to grant

14  Mr. Ward's motion.

15      Mr. Ward, do you have anything to add?

16      *MR. WARD:*  No.  Nothing to add.  Thank you.

17      *THE COURT:*  All right.  Thank you.  Ms. Doshi?

18      *MS. DOSHI:*  No.  Thank you, Your Honor.

19      *THE COURT:*  All right.  Mr. Ekeland?

20      *MR. EKELAND:*  No, Your Honor.

21      *THE COURT:*  All right.

22      So Mr. Ward's motion to withdraw is granted, and he is

23  terminated from any further obligations in this case.

24      Thank you, Mr. Ward.  You may hang up, if you wish,

25  and we will proceed to the last motion I've got on my list for

1  today, which is Mr. and Mrs. Tew's motion for a 180-day ends of

2  justice continuance, which is document 115 on the docket.

3          Mr. Ekeland, you don't need to go into every detail of

4  your motion since I've read it.  I note neither the Government

5  nor the third defendant opposes it.

6          If you quickly make a record of why you believe this

7  meets the requirements of *United States v. West*, and then I'll

8  address it.

9          Mr. Ekeland.

10          *MR. EKELAND:*  Yes, Your Honor.  The obvious fact is

11  I'm new counsel.  We now officially know I can proceed

12  representing them jointly.

13          Also, in discussions with the Government and Mr. Tew's

14  prior counsel and as the Government, I believe, has noticed or

15  acknowledged, this is a document intensive case.  There's a lot

16  of data.  There's 60 counts of both wire fraud and, I believe,

17  failure to file tax returns as well as I believe some money

18  laundering counts split between three defendants.

19          An ends of justice matter, being able to review that

20  discovery which the Government, in good-faith negotiations,

21  have a protective order right now.  We expect to resolve that

22  shortly.  I believe I owe Ms. Doshi an e-mail on that front.

23          With a case like this with such extensive discovery

24  and complex facts and multiple counts in order to put on a

25  complete defense, I think we need that time to diligently

1    review.  I can assure the Court we will diligently review.

2          At this point, we just received his former attorney's

3    file, and we're loading that on to our E-discovery system.

4          As, of course, Your Honor knows, a federal criminal

5    trial is no simple matter, and we just think the time is

6    appropriate, and we've spoken with all other parties, and

7    they've concurred on that front.

8          *THE COURT:*  All right.  Thank you, Mr. Ekeland.

9          Ms. Doshi, is there anything you wish to add?

10         *MS. DOSHI:*  No, Your Honor.  We think six months is

11   appropriate in light of the volume of the discovery.  Counsel

12   has been diligent from the entry of appearance in contacting us

13   in trying to negotiate the parameters of discovery.  Under *U.S.*

14   *v. West* and *Toombs*, a six-month continuance is justified.

15         *THE COURT:*  All right.  Thank you.

16         I agree.  Based on the volume of discovery, the fairly

17   significant charges and fairly complex nature of the case and

18   Mr. Ekeland's recent entry into the case, that a 180-day

19   continuance meets all of the factors laid out in *United States*

20   *v. West*.

21         I do believe the continuance will serve the purposes

22   articulated by Mr. Ekeland in his motion, and that, without a

23   continuance, the defendants would be prejudiced in the defense

24   of their case.

25         I find that under the Speedy Trial Act, the ends of

1    justice will be served by excluding 180 days and that that

2    extension outweighs the defendants' and the public's interest

3    in a speedy trial.

4         Without a continuance, the defense will be unable to

5    prepare its case and put its best foot forward.

6         Failure to grant a continuance beyond the time

7    prescribed by 18 U.S. Code Section 3161(c)(1) would likely

8    result in a miscarriage of justice.

9         Even taken into account the exercise of due diligence,

10   I find that failure to grant the continuance would deny counsel

11   for the defendants the reasonable time necessary for effective

12   pretrial and trial preparation.

13        I find that the ends of justice, therefore, are served

14   by granting the requested continuance, and that it outweighs

15   the interests of the public and the defendants.

16        Therefore, the defendants' unopposed motion for a

17   continuance is granted, and 180 days are excluded from the

18   speedy trial clock for all the defendants in this case.

19        The speedy trial clock deadline, then, is reset to

20   October 19, 2021.  An eight-day trial in this matter is reset

21   to commence on October 12, 2021, at 9:00 a.m.

22        Trial Preparation Conference is reset for

23   September 27, 2021, at 10:30 a.m.

24        Pretrial motions are due August 30, 2021.  Responses

25   are due on September 6, 2021.

1          Any other deadlines remain as set in the Court's

2    Pretrial Order, which is document 101 on the docket.

3          If there is nothing else -- Mr. Ekeland, do you have

4    anything else?

5          *MR. EKELAND:*  Nothing else, Your Honor.  Thank you.

6          *THE COURT:*  Thank you.  Ms. Doshi, anything else on

7    behalf of the Government?

8          *MS. DOSHI:*  Just a ministerial matter, Your Honor.

9    With respect to the Rule 44 inquiry, as it is the Government's

10   continuing duty, with respect to raising this issue again,

11   would it be the Court's preference for the Government to file

12   the full motion or an abbreviated version?  Is there some other

13   paradigm in which the Court wishes we could operate should this

14   issue arise again, we can promptly address it?

15         *THE COURT:*  Well, as I said, this is my first time

16   with this issue coming up.  So I'm willing to accept whatever

17   you think adequately explains the issue should it come up.  I

18   don't need everything reiterated necessarily, but whatever you

19   feel is adequate to present the issue and satisfy everyone's

20   obligations I will accept.

21         *MS. DOSHI:*  Understood.  Thank you, Your Honor.

22         *THE COURT:*  Thank you.  If there's nothing else, then,

23   the Court will be in recess.  Thank you, everyone.

24         *COURTROOM DEPUTY CLERK:*  Court is in recess.

25         (Court stood in recess at 11:22 a.m.)

1                              * * * * *

2                        REPORTER'S CERTIFICATE

3          I certify that the foregoing is a correct transcript from

4    the record of proceedings in the above-entitled matter.  Dated

5    at Denver, Colorado, this 11th day of January, 2025.

6

7                                        *S/Tracy Weir*
                                         Tracy Weir
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25