IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-305-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

1. MICHAEL AARON TEW

    Defendant.

_____

**REPORTER'S TRANSCRIPT**
Sentencing Hearing

_____

    Proceedings before the HONORABLE DANIEL D. DOMENICO, Judge, United States District Court for the District of Colorado, occurring at 1:30 p.m., on the 12th day of November, 2024, in Courtroom A1002, United States Courthouse, Denver, Colorado.

**APPEARANCES**

    Bryan Fields and Sarah Weiss, Assistant U.S. Attorneys, 1225 17th Street, Suite 700, Denver, Colorado, 80202, appearing for the Government.

    Jason Dale Schall, Bowlin & Schall Law LLC, 7350 East Progress Place, Suite 100, Greenwood Village, CO 80111, and Kristen M. Frost, Ridley McGreevy & Winocur PC, 303 16th Street, Suite 200, appearing for the Defendant, Michael Aaron Tew.

1   Proceeding Recorded by Mechanical Stenography, Transcription
    Produced via Computer by Tammy Hoffschildt, 901 19th Street,
2       Room A251, Denver, Colorado, 80294, (303) 947-1905

3                              **PROCEEDINGS**

4      (In open court at 1:36 p.m.)

5          *THE COURT:*  Good afternoon.  Please take your seats.

6   We're here for sentencing hearing in case number 20-cr-305-1.

7   United States versus Michael Tew.

8          Why don't I ask everyone to introduce themselves for

9   the record.  For the government?

10         *MR. FIELDS:*  Good afternoon, Your Honor.

11  Bryan Fields.  I'm joined by co-counsel, Sarah Weiss, and

12  I.R.S. Special Agent Lisa Palmer.

13         *THE COURT:*  Welcome.  Thank you.

14         *MR. SCHALL:*  Good afternoon.  Jason Schall and

15  Kristen Frost on behalf of Mr. Tew, who is present on bond.

16         *THE COURT:*  And from probation?

17         *PROBATION:*  Good afternoon, Your Honor.  Josh Roth, on

18  behalf of probation.

19         *THE COURT:*  All right.  Thank you all for being here.

20  As you know, the defendant was convicted, after a jury trial,

21  of one count of Conspiracy To Commit Wire Fraud, 39 counts of

22  Wire Fraud, one count of Conspiracy To Commit Money Laundering,

23  14 counts of Engaging In Monetary Transactions Derived From

24  Specified Unlawful Activity, and four counts of Failure To File

25  An Income Tax Return.

 1             In preparation for today's sentencing, I reviewed a

 2    number of documents, including the government's sentencing

 3    statement, the objections to the original presentence

 4    investigation report and the government's response to that.

 5    The government's Motion For A Preliminary Order Of Forfeiture.

 6    The defendant's Motion For A Variant Sentence.  The

 7    government's response to that.  The revised presentence

 8    investigation report nd its addendum.

 9             Is there anything else I didn't mention that I should

10    have reviewed, Mr. Fields?

11             *MR. FIELDS:*  No, Your Honor.

12             *THE COURT:*  Mr. Schall?

13             *MR. SCHALL:*  Your Honor, you should not have reviewed

14    it yet, but we do have, at least, one document that we would

15    like to present to the Court before sentencing.

16             *THE COURT:*  Okay.  Why don't you go ahead, if you have

17    a copy for the government and for me, if you could give it to

18    Mr. Keech.

19             *MR. SCHALL:*  He has it, Your Honor.

20             *THE COURT:*  He already has a copy.  Mr. Keech, would

21    you just give me that, so I have got everything I need?

22             *MR. SCHALL:*  There's actually two documents there,

23    Your Honor.

24             *THE COURT:*  Okay.  Thank you.  All right.  Thank you.

25    So, I assume you will tell me when we get there --

1          MR. SCHALL:  I promise.

2          THE COURT:  -- what to look for in those?  Thank you.

3          All right.  Mr. Schall, have you had enough time to

4    review and discuss these various documents with your client?

5          MR. SCHALL:  Yes, Your Honor.

6          THE COURT:  Do you have any concerns about his ability

7    to understand these documents and what we're doing today?

8          MR. SCHALL:  None, Your Honor.

9          THE COURT:  Mr. Tew, did you review the presentence

10   investigation report and these other documents?

11         THE DEFENDANT:  Yes.  Yes, Your Honor.

12         THE COURT:  Did you ask your attorneys any questions

13   you had about those documents or about the process we're going

14   through?

15         THE DEFENDANT:  We discussed it, Your Honor.

16         THE COURT:  Do you feel you understand those documents

17   and this process?

18         THE DEFENDANT:  Yes.

19         THE COURT:  All right.  Thank you.  Why don't we turn

20   then to the objections.

21         Mr. Schall, I will give you a chance to lay out your

22   position.  Based on what I have read, I'm not inclined to

23   sustain those objections, but I will let you make your case, to

24   the extent you think it's necessary.

25         MR. SCHALL:  Thank you.  From the podium, Your Honor?

1      *THE COURT:*  Sure.

2           *MR. SCHALL:*  Your Honor, I will first say that in a

3      manner of speaking that our objections to the presentence

4      report are, in some ways, speaking objections, made to make the

5      objection obvious, but also to discuss the underlying basis for

6      that objection.

7           We objected to the presentence report's failure to

8      give Mr. Tew acceptance of responsibility, and, Your Honor, we

9      know that's not an argument that is likely to pass muster, but

10     this case, Your Honor, is unique, and there are unique facts

11     here and unique facts made unique law, and if ever there was a

12     case where I could, with a straight face, argue that a client

13     went to trial and still yet deserves credit for acceptance of

14     responsibility, I believe that that's this case.

15          Is blackletter law on Mr. Tew's side?  Probably not,

16     Your Honor.  He went to trial.  The reduction is meant for

17     people that don't go to trial.  I get that.  Everybody gets

18     that; that is as to the first objection.

19          As to the leader/organizer objection, Your Honor, I

20     think it's commingled with the acceptance of responsibility

21     objection, and with our motion for a variance sentence, and

22     that is something that I was going to articulate in allocution,

23     but it's just as meaningful here, which is, the evidence

24     against Michael Tew's involvement in the conspiracy and the

25     substantive counts of wire fraud, money laundering and failure

1   to file income taxes is voluminous, is substantial, and yet

2   Mr. Tew went to trial; and this, after proffering multiple

3   times; this, after meeting with federal authorities and

4   explaining his recollections, the scope of everything, he still

5   went to trial, and I think somewhere therein lies the reality

6   of this case, which I have seen firsthand in my representation

7   of Mr. Tew, and that if a leader organizer is someone who is

8   calling the shots, that's not him, Your Honor.  And while he

9   might be the functionary who put those processes and decisions

10  into motion, everything I have seen, everything presented at

11  trial and, quite candidly, everything that Michael Tew wanted

12  the Court to hear at trial, shows that his wife was directing

13  him, and, Your Honor, that didn't stop when Mr. Tew got

14  convicted, and it didn't even stop when Mrs. Tew went to

15  prison.

16         It is beyond my limited comprehension how or why.  One

17  of the documents we have provided to the Court is a letter from

18  Dr. Scott Humphreys, a psychiatrist, who we had hoped would be

19  able to come testify today, but his letter says what he would

20  have said, Your Honor, which is that something is wrong here,

21  and it's so clearly is to me, Your Honor, based on the

22  evidence, based on where this case has evolved from in 2020,

23  when Mr. Tew was first arrested on a criminal complaint, with a

24  different host of prosecutors.  He was the top dog.  He was the

25  head of the conspiracy.  He was the aggrieved former employee,

1    with an MBA, who was out to get his former employer, and now,

2    Your Honor, as we sit here, having heard the evidence at trial,

3    having digested it, even the government agrees that Michael

4    Tew's role in this deserves less punishment than his wife, and

5    I just don't understand how you can be a leader/organizer, when

6    you're taking directions, so clearly, from someone else, and

7    sure, there are different elements to this.  There's the money

8    laundering leader/organizer, there's the wire fraud

9    leader/organizer, there's failure to file taxes,

10   leader/organizer even, but it's the same people working

11   together, and someone, who the evidence showed, was taking my

12   client's phone and sending messages to the codefendant,

13   Mr. Yioulos, did it in 2018, it shouldn't be a surprise that

14   she would do it 2023, 2024, to communicate with his lawyers,

15   make them think that they are talking to their client, when

16   actually it's not their client communicating with them.

17          The insidiousness of it knew no bounds, and I don't

18   mean to claim that Mr. Tew didn't know what he was doing or

19   wasn't making choices that were contrary to the law, only that

20   there was... an elephant in the room, Your Honor, that could

21   not be ignored, that I have witnessed firsthand, and the

22   arguments against the leader/organizer enhancement are the same

23   as the arguments in the Motion For Variant Sentence.

24          It's the -- there's something in this sauce, Your

25   Honor, that has driven an otherwise accomplished citizen, like

1    Mr. Tew, to diverge from his prior life and be found guilty of

2    59 counts.

3        *THE COURT:*  Thank you, Mr. Schall.  And I don't want

4    to make you use your entire argument, because they do overlap,

5    but my inclination, and still my belief, is that as you make

6    points that I think are worth considering, particularly as to

7    the ultimate sentence in your motion for a variant sentence,

8    but I think as to the enhancements and the objections, in

9    particular, that I want to resolve, before I get too deep into

10   the contours of the sentence, I still think that the probation

11   office correctly applied those enhancements.

12       I understand the point, but I think, as you

13   acknowledged, particularly as to the acceptance of

14   responsibility, what happened here, while I agree strange and

15   driven by odd motives that don't typically -- and dynamics that

16   is don't typically appear in a case like this, at least in my

17   experience.  The fact is that Mr. Tew didn't do what is

18   required to be eligible, in my view, for that adjustment.

19       Likewise, while I understand the argument you are

20   making as to the -- as to the leader/organizer enhancement, in

21   my view I do think some of that is worth considering as to the

22   ultimate sentence, but, the fact of the matter is, whether

23   Mrs. Tew, sort of, drove him or motivated him to engage in

24   criminal activity, he, ultimately, was the one who led and

25   organized the wire fraud part of the case, at least.  He

1    developed the system and executed it, for the most part, and so

2    I'm going to overrule those objections.

3            And do you have other objections that we need to

4    address?  Because otherwise, I would just accept the probation

5    officer's calculation of the guidelines.

6            MR. SCHALL:  Your Honor, our other objections, if you

7    stretch to call them that, about the presentence report was

8    just a generalized note that the recitation of government's

9    position in the presentence report was at times we disagreed

10    with it, but it's their position and it's in there as such, so.

11            THE COURT:  Okay.  And I understand that and

12    appreciate that it was somewhat strident, but I will overrule

13    that objection.

14            Does the government have anything to add regarding

15    just the objections and the calculation of the guidelines?

16            MR. FIELDS:  Very briefly, Your Honor.

17            THE COURT:  Go ahead.

18            MR. FIELDS:  Your Honor, this is a minor point, but

19    just for purposes of the record, to make it clear, you

20    mentioned the wire fraud, how he is the leader/organizer of the

21    wire fraud, but for purposes of this enhancement we're actually

22    talking about the money laundering guideline.  So I want

23    Your Honor's ruling and finding to be clear that he is an

24    organizer of the money laundering for all of the reasons set

25    forth in the government's brief and from the probation office.

1          THE COURT:  Fair.  So I think the -- Mrs. Tew I didn't

2    think was probably an organizer of the wire fraud portion.  I

3    understand your point.  But I do think that there can be

4    multiple leaders of the money laundering, and I think that both

5    of the Tews would qualify.  So, you are right about that.  I do

6    think, while Mr. Schall is right, that the driver, in terms of

7    the motivation, at least, was probably Mrs. Tew, the execution

8    of it was shared by both of them, organized both aspects of

9    that.

10         MR. FIELDS:  Thank you, Your Honor.  With that, I have

11   nothing further.

12         THE COURT:  Thank you.  So, that will be my finding as

13   to the calculation of the guidelines, that yields a Total

14   Offense Level of 30, the defendant's Criminal History Category

15   is I.  The guideline range for the sentence would be 97 to 120

16   months of imprisonment, zero to three years of supervised

17   release, as to Counts 1 through 42 and 44 through 56, and zero

18   to one year on Counts 57 to 60.  The fine guideline range is

19   30,000 to $250,000.

20         The motion -- the defendant's motion seeks a variant

21   sentence of 36 months.  The government's, I guess, initial

22   position is that a middle of the guideline sentence of 110

23   months is appropriate, but given what I already did in

24   Mrs. Tew's case, I believe the government's position would be

25   42 months would be appropriate, if I find similar factors at

1   play here, and at this point, I think I do find similar factors

2   at play here.  I'm inclined to agree with the government's

3   recommendation, perhaps with the caveat that I may be inclined

4   to impose a larger fine on Mr. Tew, given his apparent ability

5   to continue to earn money, and so as a tradeoff -- a bit of a

6   tradeoff, I guess, for the slightly lower sentence, I might be

7   inclined to impose a slightly larger fine of something like a

8   hundred thousand dollars.

9         I know that one request that the defense has made is

10  to try to delay his reporting until after Mrs. Tew's sentence

11  is completed.  I'm sympathetic to that, but not likely to grant

12  such an extensive one.  A couple of months I might be willing

13  to do to help Mr. Tew get things in order, but I don't think

14  it's appropriate to delay his -- the beginning of a sentence

15  that long.  So, just so you know kind of where I'm thinking,

16  based on everything I have reviewed so far, that's where I'm

17  headed.

18        I would like, I guess, to hear, first, from the

19  government, then Mr. Schall will have an opportunity, and then

20  Mr. Tew will be permitted to speak if he chooses.

21        I understand, Mr. Fields, there may be a victim who

22  wishes to be heard, as well.  If you would like to do that as

23  part of your -- or at the end of your statement I think that

24  would work.

25            MR. FIELDS:  Thank you, Your Honor.  In that regard,

1    the victim did reach out to our office about the opportunity to

2    speak, being inclined maybe to do so.  But upon further

3    reflection, after communicating with his attorney, my

4    understanding is he has agreed not to speak at the sentencing

5    today.

6          THE COURT:  Okay.  All right.  As long as you and they

7    know that that opportunity was available.

8          MR. FIELDS:  Yes.  And thank you so much, Your Honor,

9    especially for the last-minute consideration.

10          THE COURT:  Okay.  Well, then why don't you go ahead.

11          MR. FIELDS:  Thank you, Your Honor.  For the most part

12    I will rest on the pleadings.  I think the government's

13    sentencing statement lays out our views regarding, sort of,

14    deterrence, all of the 3553(a) factors.  I won't repeat them

15    here.  I will focus a little bit on the issue of fine, because

16    it's not addressed in any detail in our pleadings.

17          We are seeking a fine of $250,000, and the reason for

18    that is if you look at the guideline that governs fines, which

19    tracks the statute pretty closely, is Section 5E1.2.  So, under

20    that guideline, you look at a lot of the 3553(a) factors,

21    including the seriousness of the crime, the need to promote

22    respect for the law, all of those arguments were already set

23    forth in our briefing.  Then you have the evidence presented as

24    to the defendant's ability to pay the fine, in light of his

25    earning capacity and financial resources.  And there, as the

 1   Court is aware, from our briefing regarding his flight risk,

 2   the defendant has continued to receive very well-paying jobs,

 3   sometimes paying him tens of thousands of dollars a month.  In

 4   fact, during the pendency of these proceedings, he has made

 5   over a million dollars.  So I don't think there's any doubt in

 6   the record that he has the ability to pay a fine, and certainly

 7   the capacity to do so.

 8        The other thing you have to look at is the burden it

 9   would place on the defendant and his dependents relative to

10   alternative punishments.  But again, I think that goes to the

11   defendant's sort of extraordinary ability to generate money,

12   and why a fine here, especially one of you know only $250,000,

13   when we're talking about having made millions-- over a million

14   in the pendency of these proceedings, isn't likely to impose

15   that sort of burden.  A fine here, also, would not necessarily

16   interfere with restitution for that same reason, Your Honor.

17        So, the restitution would take precedence, in terms of

18   its collection.  So any fine can be paid after he has already

19   paid that restitution to the victims, and again, the

20   defendant's extraordinary ability to make money, I think weighs

21   is favor of the fine.

22        Collateral consequences of conviction.  We lay that

23   out a little bit.  The defendant's ability to earn money, and

24   to continue to serve as a CFO, hasn't been one of the

25   collateral consequences, and we don't foresee it being the

1    case, especially given the letters of almost recommendations

2    that are in the file.

3          Expected cost to the government or the term of

4    imprisonment, that's laid out in BOP regulations.  The fine

5    here would, essentially, pay for about two years of

6    imprisonment, and that's one of the things that the Court can

7    and should take into account.

8          Finally end up with equitable considerations.  For the

9    reasons laid out in the government's brief, we don't see a lot

10   of other equitable considerations or mitigating circumstances

11   here.  Probation has recommended a top of the guidelines

12   sentence.  They recommended a lower fine in this case, but a

13   fine is intended to be punitive, Your Honor, and unlike, sort

14   of, the argument we made about paying restitution shouldn't

15   lower your sentence, the Court can and should consider a fine

16   as an alternative to prison, and there's nothing, sort of,

17   untoward or inappropriate about that.  In fact, the statutes

18   and the guidelines ask the Court to do so.

19         So, for all of those reasons we would ask the Court to

20   impose the sentence that the government recommends, as well as

21   to impose a substantial monetary fine.

22         *THE COURT:*  All right.  Thank you, Mr. Fields.

23   Mr. Schall, if you want, I will look over these while you are

24   coming up.  You can go ahead and come up.  I will -- I do want

25   to give them my attention, though.

1          MR. SCHALL:  I will get some water, Your Honor.

2          THE COURT:  All right.  All right.  You may have to

3     explain one of them a bit to me, but I did read the letter from

4     Dr. Humphreys.

5          MR. SCHALL:  Your Honor, I will explain the second one

6     as best I can.  Although I'm going to lean on my client to do

7     so more.  I understand that to be a printout from the EDGAR

8     System of the United States Securities and Exchange Commission,

9     that, on its face, looks like a dot matrix printer from 1987,

10    but is actually how they still do things, and there's a

11    significance to that document, as part of Mr. Tew's ongoing

12    work, that he can explain, that goes into, predominantly,

13    Your Honor, his request for some time to have a self-report

14    date, so that he can resolve some significant work in the

15    pipeline before he is incarcerated and doesn't have the ability

16    to continue working on it.

17         THE COURT:  Okay.  Thank you.

18         MR. SCHALL:  As to -- let me address the fine portion,

19    Your Honor, because it's on the front of my mind.  All I can

20    say is that there is a distinction, whether right or wrong,

21    after someone has been convicted and sentenced and served time

22    versus pending trial, pending sentencing, nothing has changed,

23    and their ability to get jobs, to get work, to be a trusted

24    member of a team, and it is true that Mr. Tew has earned

25    substantial money since he has been out on bond in this case,

1    which is a remarkable time, four years, but that his -- he has

2    not yet had to pay a professional price for his network, for

3    his job skills, for his ability to earn that money.

4         Just because he was arrested did not short circuit his

5    business, his ability to make legitimate money, and his ability

6    to work with sophisticated organizations and people, to do

7    complicated deals, frankly, and so I want -- and the government

8    is right, yeah, he made a lot of money.  He should pay a fine.

9         But the Mr. Tew who walks out of prison, in however

10   many months, is not the same person.  He is someone who has

11   paper degrees and who has a network and who has proven skills

12   to a certain number of people, but he -- this is not a Martha

13   Stewart situation.  He doesn't have a brand that he can

14   automatically monetize.

15        So in the Court's consideration of how much of a fine

16   is appropriate for Mr. Tew, I would ask you to consider the

17   very pragmatic reality that just because he gets out of prison

18   and has made a lot of money in the past, doesn't mean he is

19   going to make it in the future, and that if it is a condition

20   of his release that he pay his restitution, that he pays a fine

21   afterwards, that it is pegged towards a portion of his income,

22   whatever that may be.

23        Setting aside that, Your Honor, there were many times,

24   in this case, where I did not know if I would be standing here

25   today representing Mr. Tew at sentencing.  This case has been

1    challenging not just for him and his family, but for his

2    counsel, for the Court, for everyone involved.  It is not the

3    norm to have a federal case drag out for four-and-a-half years.

4    The system is not set up for that.  The law is not set up for

5    that, and it echos my observations throughout, Your Honor,

6    which is, this is not normal.  This is bizarre.  And Mr. Tew,

7    in his actions are before the Court to determine what is the

8    appropriate sentence.  But those actions can't be stripped of

9    their context, and their context in this case, Your Honor, that

10   is most salient for me, having been a part of, quite literally,

11   thousands of federal cases, as both a United States Attorney

12   and as a defense counsel, in all of those cases, Your Honor,

13   call it 2,000, this is the only case where I have seen a

14   defendant proffer, give admissions to the government, in their

15   entirety, and then go to trial.  And it didn't make sense to me

16   until that day when I overheard his wife screaming at him on

17   the phone, and I have not been able to forget it, Your Honor.

18   And while it may seem, from other perspectives, that going to

19   trial in this case was fruitless, that it was a waste of

20   judicial resources, government resources, every resource,

21   Mr. Tew's benefit, if there is to be had any from going to

22   trial, is that the Court, and even now the government, is

23   clear-eyed about what happened.  How it happened.  When it

24   happened.  Why it happened.  And now to determine what the

25   result of that should be.  And I said in my briefing, and I

1    stand by it, Mr. Tew's complicity in this, his actions, his

2    choices make it clear that he needs to be punished, but he --

3    well, let me put it this way, Your Honor.  I often perform a

4    mental exercise in cases, and try to ask myself a very peculiar

5    question of, *If I had a time machine, where would I go to*

6    *prevent this crime from happening*?  And for many clients, it

7    starts at a very young age, when their family has fallen apart,

8    where they have been left to the streets, where they don't have

9    soil to grow in.  That's not the case here.  Mr. Tew a graduate

10   of Cherry Creek High School, New York University, he was

11   thriving, Your Honor, and in that time machine, I would go back

12   to decisions that he made about who he was going to partner

13   with in future endeavors, and that set him on a course where he

14   lost control, and that loss of control haunts him to this day,

15   to the point of, Your Honor, impacting his counsel's ability to

16   do its job.

17          And it's crazy.  I don't know how many times I said

18   that at trial, but it wasn't just errant, it was intentional.

19   It was to drive home a point that the behaviors here are

20   consistent, and they have not changed, and the Court should

21   consider that in determining what is the appropriate judgment

22   that is not greater than necessary to punish Mr. Tew.

23          The letter from Dr. Humphreys, you know, echos that,

24   Your Honor.  There's just so many unicorn moments in this case.

25   The proffering defendant who goes to trial.  The defendant who

 1    will not meet with the psychiatrist.  All of these things that

 2    don't happen, ever, all happened here, and there's a compelling

 3    understanding of why, and I just hope that the Court can

 4    consider that.

 5              THE COURT:  Thank you, Mr. Schall.

 6              Mr. Tew, do you wish to make a statement before I make

 7    a final decision about your sentence?

 8              THE DEFENDANT:  Yes, Your Honor.

 9              THE COURT:  Okay.

10              THE DEFENDANT:  Thank you.  Didn't know I was, at this

11    moment, ready.

12              THE COURT:  All right.  Well, if you need to take a

13    drink or catch your breath, go ahead.

14              THE DEFENDANT:  Thank you, Your Honor.  So I was

15    preparing some comments for you, and I have a few points that I

16    think I would like to make, Your Honor.  Losing my voice.

17              First off, what I want to say is, you know, I'm very

18    sorry to my family.  I love my children.  I can't even say --

19    the words don't even express how much I love my children and my

20    family, and I'm sorry that you have some very -- you have some

21    very difficult decisions to make, because of the situation that

22    we're in here today, and I understand that.

23              I think on the second point, you know, something I'm a

24    little bit more -- I'm comfortable speaking of, my work.  You

25    know, I strive to be a productive person, productive member of

20

1    society.  I think I'm here -- I actually, sort of, learned, I'm

2    45 now, that my, sort of, role in this world is to help other

3    people, sort of, achieve certain goals, and in so doing, sort

4    of, I achieve a certain goal alongside with them as a partner,

5    and I guess call that consulting, call that partnership, call

6    that whatever, what you will, and I have gotten quite good at

7    it, maybe I'm accused of working too much.  I bury my head in

8    the sand, so be it.

9         You know, my grandparents came here with nothing, from

10   concentration camps, and built their own businesses, without

11   speaking a word of English.  My grandmother had no teeth.  So

12   they did that through hard work, and I can do the same.

13        You know, and some things that you may not know,

14   although I think some from the government, and also some

15   letters that I received from attorneys and colleagues of mine

16   that I work with, you know, since I was arrested, I worked with

17   a client to underwrite a hundred-million dollars of small

18   business lending.  I helped a lithium company raise capital.  I

19   worked with Dr. Adam Lipson, with his physical therapy

20   business.  You know, I formed this partnership with Seaport,

21   where we've sponsored three IPO's.  We raised $450 million

22   between those three companies, in the -- since my arrest.  And

23   Seaport and I have become these, sort of, partners in ScanTech.

24   That's what this document is here.  I will get to that in just

25   a moment.  I mean, I'm literally on conference calls prior to

1    this.  So, it's crazy.  But ScanTech is, if you go downstairs,

2    you use the baggage equipment, that's what ScanTech is.  It's

3    the fifth company that has approval from the TSA to implement

4    these knew type of baggage scanning equipment.  We have some

5    pretty prominent members of board that I work with, Mike

6    McGarrity would be one of them, who is the former head of

7    counterterrorism with the FBI, things like that, and we've

8    worked with this company to, sort of, take it public, and I

9    have been working on it since March of '23.  We finally reached

10   this point where, you know, when we started, Seaport had $6

11   million invested.  They have invested 14 more million into it.

12   They have $20 million at risk, and we've reached this point

13   where we finally, and this is, I'm getting to this notice of

14   effectiveness, where the SEC has approved the offering, that's

15   what this document is.

16          So we filed eight different registration statements

17   with the SEC, sort of uncanny how hard it was, and this notice

18   of effectiveness means we have gotten clearance to close the

19   transaction, where we plan to raise the money and all of that

20   stuff, to close the IPO of the business.  It's very, very

21   challenging.  And in that transaction, I have, in the very

22   least, I have an agreement here from the company.  I'm happy to

23   share all of this with the Court, with the government, I have

24   copies, it's also, I think, in my PSIR, 200,000 shares.

25          The deal price is at $10, so it's $2 million worth of

1    stock.  I have to get that into a brokerage account and be able

2    to sell it, for me to pay restitution.  I have been working

3    since March of '23 on this, and it would be a shame for that to

4    go to waste.

5           Now, it could sit as a piece of paper until I get out

6    of prison.  Maybe the stock goes to a hundred, and it's worth a

7    hundred times that.  I don't know.  It could go to one penny

8    and be worth nothing.  I don't know either.  I'm not going to

9    be running the company.  But my view of the prudent action

10   would be to be able to facilitate the sale of the shares that I

11   have worked hard for.  I have a handshake agreement with

12   Seaport for several hundred thousand more shares.  I can't

13   say -- I don't have an agreement for that, so I can't speak to

14   that, but that could mean and additional couple more million

15   dollars at the closing.

16          Now, the closing of the transaction, itself,

17   Your Honor, takes 30 to 45 days from notice of effectiveness.

18   Just, you have to mail out voting statements, proxy statements.

19   There's statutory limitations on that --

20          THE COURT:  Yeah.  You are giving me some bad

21   flashbacks of my early days doing IPO work as a lawyer.

22          THE DEFENDANT:  Right.  Exactly.  So, Your Honor, you

23   know about this stuff.  So, mid-December closing is our

24   estimate right now.  I will skip to that part.  And so I'm

25   guessing that I will be able to be able to sell shares -- start

1    selling shares towards the end of the year and in January,

2    right, and would make a commitment towards restitution, fines,

3    things like that, using the proceeds of those shares.

4         You know, I wanted to, sort of, if you could take that

5    into consideration, in terms of I don't know how much time I

6    would need, like you said, maybe several additional months, so

7    I could effectuate that, that would be appreciated.  I think

8    there's some attorneys who are working on the deal that have

9    written letters on my behalf, so at least you know that there's

10   some reality to that.  They've worked very hard along side me.

11   They don't represent me.  They represent the companies, as

12   well, and so perhaps that's something that you might take into

13   consideration Your Honor.

14        There's one additional point, Your Honor, I wanted to

15   make and that is, my children, whom I love very much.  I live

16   for my kids.  I can't imagine a second without them, you know.

17   I spend every waking minute with my one daughter, who is at

18   home 24 hours a day, seven days a week.  My other daughter,

19   Alden, who goes to school here, her whole life is wrapped up in

20   this case, you know, and I'm sorry for what, you know, I

21   brought upon them.  I love them more than anything.  I can't

22   even express it in words.  They are my whole life.  I can't

23   wait to go pick her up from school.  She is waiting to know

24   what happened.  You know, that's the life that I'm living right

25   now.  And, you know, one thing that I will say, is I have been

1    down to visit the facility in Arizona, where Mrs. Tew is

2    currently being held.  It's hard for the kids to visit and the

3    logistics.  It's just a -- there is some ability there to do

4    that, but it's hard to do the visitation.  Okay.  That's one

5    thing.  Then you have to make decisions.  How many hundreds of

6    decisions you make about kids every year?  How many times they

7    go to the dentist?  What are they doing in homework?  Things

8    like that, that they will lose.  And so I would ask you, as I

9    have, to also take that into consideration, please, as I'm

10   working very hard now as a single dad, to raise my two kids, to

11   get them to the airports, to get them to the school events.

12        I was at the school this morning volunteering, you

13   know, for some bird event, or whatever.  So, you know, I know

14   that I actually have been advised that I shouldn't belabor this

15   point too much, because it appears like pandering, but I just

16   can't live with myself, unless I say something.  They are my

17   whole life.  So that -- with that, Your Honor, I have, sort of,

18   said the couple of points that I would like to make, that I

19   would implore you to take into consideration, please, and I am

20   happy to provide any additional information on the stock stuff.

21   You know enough about it, as well as the process concludes.

22        THE COURT:  All right.  Thank you, Mr. Tew.  I

23   appreciate that.  All right.  So having now heard from Mr. Tew

24   and counsels' arguments and reviewing the record in this case,

25   the sentencing guidelines and the statutory sentencing factors

1    set forth in Section 3553(a) of Title 18 of the U.S. Code, my

2    judgment is that the defendant, Michael Tew, be committed to

3    the custody of bureau of prisons for a term of 42 months on

4    each of the fraud and money laundering-related counts, and one

5    year on each of the tax counts.  All of those to run concurrent

6    to one another.  So a total of 42 months.

7        Once he is released from imprisonment, the defendant

8    will be placed on supervised release for a term of three years

9    I guess, technically, on each of the money laundering and fraud

10   counts, all to run concurrently.  I won't impose any additional

11   supervised release for the tax counts.

12       As to the -- well, and the restitution will be imposed

13   as described in the presentence investigation report, and I

14   will impose a hundred-thousand-dollar fine.  As the government

15   explained, and as Mr. Tew has explained, and as the letters

16   show, his ability to continue to earn all this money, under the

17   circumstances, is really extraordinary, and in a lot of ways

18   very impressive, and Mr. Tew must have some pretty exceptional

19   skills to be able to do that with this case, and even with

20   these convictions hanging over his head.

21       On the other hand, I agree with Mr. Schall, that after

22   serving over three years in prison, I'm not sure that the

23   ability to do so will be the same, on top of the amount being

24   required in restitution.  I don't see the additional $150,000

25   as being necessary under the sentencing guidelines.  So that

 1    will be the sentence.

 2            Mr. Schall, did you and your client review the

 3    recommended conditions of supervised release?

 4            *MR. SCHALL:*  We did, Your Honor.  We both reviewed

 5    them and understand that they are pretty standard and don't

 6    have any particular objections.  I can't recall, off the top of

 7    my head, if there was anything in there, the nature of

 8    codefendant spouses and whether that was going to create an

 9    issue or conflict at some point.  So I raise that issue for the

10    Court's judgment.

11            *THE COURT:*  All right.  I don't think there was

12    anything in there that I recall.  The conditions include, of

13    course, the mandatory statutory conditions and the standard

14    conditions adopted by this Court in General Order 2020-20.  All

15    of those will be imposed.  Then the special conditions include

16    a requirement to participate in cognitive behavioral treatment,

17    which, I think, given the issues raised in this letter, and

18    throughout the trial, seems necessary to me, in this case, and

19    helpful to Mr. Tew, who, this does seem out of character, and

20    as Mr. Schall described it, crazy in a lot of ways that someone

21    with his background and abilities and skills got himself in

22    this position and made these decisions, and so that I think

23    will be an important way to help him to move past the

24    decision-making that got him here.

25            Most of the rest of the conditions are financial

1    reporting and restrictions that are necessary, given the

2    financial obligations imposed here.  There's also a search

3    condition, which is a fairly typical condition, necessary to

4    ensure that -- given the facts of this case, including repeated

5    instances of fraud, to ensure that no further violations slip

6    by the probation officers.

7         The special assessment in this case is a hundred

8    dollars for each count of conviction, for a total of $5600.

9    That amount is due and payable immediately.  The balance of the

10   monetary obligations will be paid in monthly installments,

11   calculated as at least 10 percent of the defendant's gross

12   monthly income.  I do think the interest can be paid, and so

13   the interest requirement will not be waived.

14        I do, pursuant to Rule 32.2, require forfeiture of the

15   property described, the money judgment described in the

16   preliminary order of forfeiture.  Obviously, this is a

17   significant variance from the guidelines.  I think everyone

18   seems to understand most of the basis for that.  I will also

19   point out it's important to me that Mr. Tew had no prior

20   criminal history, and while this was a fairly complex fraud

21   scheme, it does not seem to have been driven by the sorts of

22   things that you would normally think this kind of thing would

23   be driven by, and I think Mr. Schall's points about the odd

24   nature of someone like Mr. Tew agreeing and then going through

25   with this for this length of time is quite puzzling and

incredibly disappointing, and it deserves a significant

sentence, and 42 months is obviously quite a bit shorter than

it could have been, and quite a bit shorter than the government

originally sought, and was perfectly entitled to seek.

On the other hand, given all of the facts in this

case, I do think that Mr. Tew could very successfully move

beyond it.  He, obviously, is going to have to make some

serious choices about how he responds to certain pressures in

his life.  I think a significant prison sentence, with

supervised release, having these financial penalties hanging

over him, will help him to ensure that he is not a danger to do

this again, and that he can, after the sentence is complete, go

on to being successful and contribute to society, as well as be

a father that he wants to be.

I do take into account that there are collateral

consequences.  In particular, it saddens me, deeply, the

difficulty this is going to put the Tews' children in.

Unfortunately, that was a decision that Mr. and Mrs. Tew made,

to put themselves and their family in this position, and I do

think that while I take that into account, I can't justify

delaying the sentence much more than -- I'm willing to give a

couple of months.  I was maybe, given what Mr. Tew said here

today, given his pretty exemplary behavior, as far as I know,

after being on bond for so long in this case, I was considering

at the end of January.  A designation date no sooner than the

1    end of January is probably the longest I would be willing to

2    consider.  That might address some of the issues here today, as

3    well as allow Mr. Tew to make firm arrangements for care of his

4    children.

5            So does anybody want to weigh in on that?  Mr. Schall,

6    do you want to weigh in on that, thought?

7            *MR. SCHALL:*  Mr. Tew is grateful for any time you can

8    give him, Your Honor, and that does provide some runway.  In

9    that regard, I neglected to ask for a recommendation within the

10   bureau of prisons, and if the Court would allow me to, I can do

11   that now?

12           *THE COURT:*  Go ahead.

13           *MR. SCHALL:*  The prison camp FSP Duluth, Your Honor.

14   It's in Duluth, Minnesota, I believe, and it is surprisingly

15   close to the upper peninsula home of Mr. Tew's mother-in-law,

16   and sister-in-law, who I understand will be taking care of the

17   children, only a half-hour or so away.  We would ask for a

18   recommendation for a designation to FSP Duluth.

19           *THE COURT:*  All right.  Thank you.  Does the

20   government have a response to any of the designation issues?

21           *MR. FIELDS:*  No, Your Honor.

22           *THE COURT:*  All right.  Thank you, Mr. Fields.  So I

23   will include that recommended designation, as long as Mr. Tew

24   understands that that's only a recommendation I can make.

25   Bureau of prisons will take it into account, but they aren't

1    obligated, and I can't order them to designate you at any

2    particular place.  So that will be the sentence that I impose.

3         Mr. Tew, I hope you take advantage of this to overcome

4    some of the motivations and whatever issues have caused you to

5    get to this point.  As I said, I do think that you're a young

6    man, you will still be a relatively young man when you finish

7    this sentence, and have a real opportunity to make a difference

8    in the rest of your life.  I hope you will do what it takes to

9    do that and overcome the issues that got you to this point.

10        I want to advise you that if you wish to appeal, you

11   must file a notice of appeal with the clerk of the court within

12   14 days after entry of judgment or the right to appeal will be

13   lost.  If you can't afford an attorney for an appeal, the Court

14   will appoint one to represent you, and if you request, the

15   clerk of the court must immediately prepare and file a notice

16   of appeal on your behalf.

17        Officer Roth, is there anything else I need to

18   address, from your perspective?

19        *PROBATION:*  No, Your Honor.

20        *THE COURT:*  Thank you.  Anything else from the

21   government?

22        *MR. FIELDS:*  Does the Court intend to waive interest

23   on the monetary penalties that have been imposed?  You may have

24   said that, but I missed it.

25        *THE COURT:*  No.  My intent is not to do that --

1          MR. FIELDS:  Okay.

2          THE COURT:  -- given the facts of this case.  Anything

3     on behalf of the defendant?

4          MR. SCHALL:  Your Honor, only that I forgot to ask the

5     Court to mark the two submissions as Defense Exhibits A and B,

6     1 and 2, whatever the Court's preference, so they are part of

7     the record.

8          THE COURT:  Okay.  We can mark them.  I think we will

9     mark them 1 and 2.  Mr. Keech, will you mark those and include

10    them in the record?

11         MR. SCHALL:  Other than that, Your Honor, nothing

12    further.

13         THE COURT:  Okay.  Then the Court will be in recess.

14    Thank you.

15         THE COURTROOM DEPUTY:  All rise.  Court is now in

16    recess.

17       (Recess at 2:32 p.m.)

18

19                     REPORTERS' CERTIFICATE

20         I certify that the foregoing is a correct transcript

21    from the record of proceedings in the above-entitled matter.

22         Dated at Denver, Colorado, this 15th day of January,

23    2025.

24

25

1                                    S/ Tamara Hoffschildt

2                         Tamara Hoffschildt, FCRR, CRR, RMR

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25